## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
_____
Ulysses R. Charles,          )
         Plaintiff,          )
                             )
v.                           )                    CIVIL ACTION
                             )                    NO. 04-10986-NG
City of Boston, et al.,      )
         Defendants.         )
_____)
```

### MEMORANDUM OF LAW IN SUPPORT OF
### THE DISTRICT ATTORNEY DEFENDANTS' MOTION TO DISMISS

Defendants John Zanini ("Zanini") and the Office of the District Attorney for the Suffolk

District (the "Suffolk D.A.'s Office") respectfully submit this memorandum of law in support of

their motion to dismiss the plaintiff's complaint. The Complaint must be dismissed against

Zanini and the Suffolk D.A.'s Office (collectively, the "District Attorney Defendants") for

several, mutually-independent reasons.

First, Zanini, an assistant district attorney, is entitled to both absolute and qualified

immunity. Specifically, this case arises out of a Massachusetts Superior Court Justice's

allowance of a motion for a new trial in a rape case after DNA testing cast doubt upon the

plaintiff's guilt, but did not exonerate him.[1] The plaintiff has sued Zanini for: 1) allegedly

---

[1] In a motion to dismiss pursuant to Rule 12(b)(6), a court may consider, in addition to the
pleadings, matters subject to judicial notice and public record. *In re Colonial Mortgage Bankers
Corp.*, 324 F.3d 12, 15-16 (1st Cir. 2003). A motion to dismiss on the basis of sovereign
immunity is properly brought under Rule 12(b)(1), *Edelman v. Dept. of Public Aid of Illinois*,
415 U.S. 651, 677-678 (1974) (the question of sovereign immunity is "in the nature of a
jurisdictional bar"), and thus the Court may consider evidence outside of the complaint. *Aversa
v. United States*, 99 F.3d 1200, 1209-1210 (1st Cir. 1996). As a result, the District Attorney
Defendants have included a copy of the docket sheets from the underlying rape case as well as
the *nolle prosequi* filed in that case. *See* [Supplemental Appendix ("S.A.") 1-135]. The District
Attorney Defendants have also ordered a certified copy of the docket sheets and will make them
available to the Court, should the Court determine they are necessary.

2

participating in an unduly suggestive identification procedure; 2) allegedly conspiring to suppress evidence and deliberately destroying exculpatory evidence; and 3) malicious prosecution, under a state law theory.

Viewing the factual allegations in the light most favorable to the plaintiff, it is clear that Zanini's conduct was intimately associated with his role as an advocate for the Commonwealth and thus is subject to absolutely immunity. Even assuming Zanini were performing a discretionary function when opposing the plaintiff's new trial motions in the Superior Court, the doctrine of qualified immunity bars this suit because Zanini did not violate a clearly established constitutional right of which a reasonable person would have been aware. According to the complaint, Zanini's first involvement in this case occurred in 1995, fifteen years after the rapes, twelve years after the convictions, and nine years after the Supreme Judicial Court for the Commonwealth affirmed the convictions. Compl. ¶ 61; *see Commonwealth v. Charles*, 397 Mass. 1, 489 N.E.2d 679 (1986). And indeed, he was not admitted to the Massachusetts bar until 1993. Thus, each of the plaintiff's claims, all of which relate to his trial, are factual impossibilities with respect to Zanini, and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In addition, the statute of limitations on the plaintiff's civil rights claims against Zanini expired prior to the filing of his complaint.

Finally, the plaintiff has alleged a so-called *Monell* claim against the Office of the District Attorney for the Suffolk District.[2] This claim must be dismissed for several reasons. First, the

---

[2] *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). The complaint asserts a claim against the Suffolk County District Attorney's Office, and identifies it as "a duly designated local government entity in the Commonwealth of Massachusetts." *See* Compl. ¶¶ 18. In fact, the correct name of this state agency is the Office of the District Attorney for the Suffolk District, *see* Mass. G. L. c. 12, § 13, and it is a state agency. *See infra*, Argument

3

Eleventh Amendment bars citizens from suing states, state agencies, and state officials in federal

court. As a state agency, the Office of the District Attorney for the Suffolk District falls squarely

within the parameters of this Amendment. Second, the Office is not a "person" within the

meaning of 42 U.S.C. § 1983, and thus cannot be sued under that statute. Third, the statute of

limitations expired on this claim as well.

## THE ALLEGATIONS IN THE COMPLAINT

The Complaint and Jury Demand (the "Complaint" or "Compl.") alleges the following:

## I.    The Oral, Anal, and Vaginal Rapes

During the evening of December 8, 1980, three women, Karen, Valierie, and Shannon[3]

were violently raped in their Brighton apartment by a black man whom they did not know.

Compl. ¶ 20. The rapist pushed his way into their apartment, menaced Karen with a screwdriver,

and demanded, "Where's the money? Where's the jewelry?" Compl. ¶ 21. Victoria, who had

been sitting in the apartment, screamed when she saw the rapist. Compl. ¶ 22.

The rapist ordered Karen and Valerie to sit on a couch and remain quiet and threatened to

hurt them if they resisted. Compl. ¶ 22. He then put a coat over their heads, but they heard him

rummage through their apartment looking for valuables. Compl. ¶ 22. The rapist then awakened

Shannon, who had been asleep in her bedroom. Compl. ¶ 23. After tying her up and threatening

---

Section "II.A."

[3] The District Attorney Defendants identify the victims in conformity with the Supreme
Judicial Court's published opinion on the underlying rape convictions. This is done for the sake
of consistency, fairness to the victims of these sex crimes, and in accordance with Massachusetts
law. *See* Mass. G. L. c. 265, § 24C (making unlawful the publication, dissemination or
disclosure of the identity of victims of sexual assault).

4

her, the rapist returned to the living room and demanded to know why Karen and Valerie [4] had

not informed him of Shannon's presence.  Compl. ¶ 23.

   During the course of the next two hours, the rapist brutalized the women, raping two of

them vaginally, one anally, and one orally.  Compl. ¶ 24.  When not violating the women, the

rapist took the time to play the guitar and rummage through various drawers.  Compl. ¶ 24.

Immediately prior to departing, he ripped the phone out of the wall.  Compl. ¶ 24.

   After the attacks, Karen, Valerie and Shannon called the police from a neighbor's

apartment.  Compl. ¶ 33.  Detective Johnson of the Boston Police arrived with other officers and

drove the victims to Beth Israel Hospital where personnel collected evidence from Karen and

Shannon for rape kits.  Compl. ¶¶ 33, 44.[5]  The victims described the rapist to Det. Johnson as a

5'10", thin, black man with a beard and medium complexion.  Compl. ¶ 33.  Karen separately

gave a similar description to Dr. Batzofin.[6]  Compl. ¶ 34.  According to the complaint, the

victims did not mention that their attacker had a Caribbean accent or dread-locks in the hours

after they had been attacked.  Compl. ¶ 36.

---

   [4] The complaint alleges he questioned Shannon and Karen who were seated on the livingroom couch.  Presumably, the plaintiff erred here, and intended to state that he returned to the living room and questioned Karen and Valerie.

   [5] The complaint also alleges that Boston Det. William Keogh neglected to collect the vaginal swabs when he collected the rape kits four days later.  Compl. ¶ 45.  Left unexplained is why the vaginal swabs were not included as part of the rape kits, or how Det. Keough would have known that they would be kept separate.  Compl. ¶ 45.  Instead, the complaint baldly asserts, without any modicum of factual support whatsoever, that Det. Keough intentionally destroyed the swabs.  Compl. ¶ 46.

   [6] The complaint does not identify Dr. Batzofin further.  Inferentially, he was the treating physician of at least one of the rape victims.

5

## II.    The Investigation

The next day, Detectives Keough and Rufo of the Boston Police Sexual Assault Unit met with the victims and separately interviewed them.  Compl.  ¶¶ 37-38.  They also tape-recorded these conversations.  Compl. ¶¶ 37-38.  Based upon these interviews, Det. Keough compiled a photo-array containing two-hundred photographs, including the plaintiff.  Compl. ¶ 39.  After both Karen and Shannon separately identified the plaintiff from the hundreds of photographs, the police arrested him on June 1, 1981.  Compl. ¶¶ 39-40.

On December 12, 1980, Det. Keough and Stanley Bogdan, a senior criminalist in the Boston Police Crime Laboratory, went to the victims' apartment and collected a bed sheet upon which two of the rapes occurred, as well as the robe Shannon wore while she was raped.  Compl. ¶ 52.  Mr. Bogdan subsequently determined there were semen stains on the sheet from a "Type O" secretor.  Compl. ¶ 52.  The Commonwealth obtained a court order for the plaintiff's blood sample, and testing determined he was a "Type B" secretor, and therefore, excluded as a depositor of the semen stains.  Compl. ¶¶ 53-54.

## III.    The Pre-Trial Proceedings, Trial, and Direct Appeal

The plaintiff's case was calendared for a probable cause hearing on June 9, 1981, and Karen was in the courthouse that day.  Compl. ¶ 42.  The complaint alleges that while waiting in the corridor, Det. Keough showed Karen a blown-up copy of the plaintiff's booking photograph. Compl. ¶ 42.  The judge remedied this by precluding "any corporeal identification attempt during the hearing."  Compl. ¶ 42.

6

On November 3, 1983, nearly three years after the rapes, the three victims attended a line-up at Boston Police Headquarters.[7]  Neither Shannon nor Valerie identified the plaintiff, but Karen later approached the assistant district attorney then assigned to try the case and identified the plaintiff to him.  Compl. ¶¶ 47, 50.

At trial the evidence against the plaintiff included all three victims' identifications from the photographic array.  Compl. ¶¶ 40, 57.  The Supreme Judicial Court affirmed the plaintiff's convictions on direct appeal.  Compl. ¶ 57.

## IV.    The Post-Appellate Proceedings

In 1995, "a determination was made . . . to DNA test the stains on the bed-sheet and robe."  Compl. ¶ 60.  According to the complaint, Zanini moved in court in opposition to the release of the plaintiff's samples of biological evidence.[8]  Compl. ¶ 61.  The complaint does not allege any involvement of Zanini prior to this date.

In 1999, Cellmark Diagnostic Laboratory ("Cellmark") determined that the stains from the bed sheet were from two different men and that the plaintiff was not the source of either one.  Compl. ¶¶ 62-63.[9]  Zanini continued to object to the plaintiff's motion for a new trial on the ground that Shannon had multiple sexual partners at the time she was raped and that as a result,

---

[7] The complaint does not explain this delay.  The Supreme Judicial Court found that the plaintiff defaulted at his arraignment and was not apprehended until 1983.  *See Charles*, 397 Mass. at 4, 489 N.E.2d at 682.

[8] The complaint does not state the basis for this objection.  Inferentially, the Commonwealth opposed this DNA testing because the plaintiff had been excluded as the source of the semen stains prior to trial.

[9] This testing was possible because the District Attorney and the Boston Police Department voluntarily preserved the few remaining pieces of cloth, from a sheet and a bathrobe, that had DNA material on them, and made these available for testing by Cellmark.  *See* S.A. 1-3.

7

the lack of a DNA match was inconsequential. Compl. ¶ 64. In 2000, the court ordered Zanini to

locate Shannon's boyfriends from twenty years earlier. Compl. ¶ 65. Despite the passage of

time, Zanini was able to locate one of the boyfriends. Compl. ¶ 65. Subsequent testing excluded

him as a source of the semen stains. Compl. ¶ 65. Zanini was unable to locate any other of

Shannon's former boyfriends. Compl. ¶ 66.

On May 14, 2001, the Superior Court ordered a new trial for the plaintiff, but did not

dismiss the indictments. On May 17, 2001, Zanini filed a *nolle prosequi* on the charges. *See*

S.A. 1-3.

### THE CLAIMS AGAINST ZANINI

All three of the claims against Zanini arise from proceedings that took place prior to the

Massachusetts Supreme Judicial Court's 1986 decision on his direct appeal. Compl. ¶¶ 77-81.

Count I alleges the identifications of the plaintiff violated his Fourteenth Amendment right to a

fair trial. Compl. ¶ 81. In Count III, the plaintiff alleges that Zanini conspired with the

investigators, at least one of whom was deceased when Zanini first became involved in 1995, and

trial prosecutor to suppress and destroy exculpatory evidence. Compl. ¶¶ 89-92. Count VIII

sounds in state law, and avers that Zanini, along with the investigators and trial prosecutor,

engaged in a malicious prosecution of him.[10]

---

[10] The plaintiff misnumbers his eighth count as "Count VII." The District Attorney
Defendants refer to the claim alleging a state tort law claim for malicious prosecution as "Count
VIII."

8

### THE SINGLE COUNT AGAINST THE
### OFFICE OF THE DISTRICT ATTORNEY FOR THE SUFFOLK DISTRICT

The plaintiff's single claim against the Office of the District Attorney for the Suffolk District arises under 42 U.S.C. § 1983. Specifically, Count VII[11] alleges that the Office violated his constitutional rights by failing to train and supervise its prosecutors, including Zanini, in conducting proper, constitutional identification procedures. Compl. ¶¶ 107-108.

### ARGUMENT

**I.    THE CLAIMS AGAINST ZANINI MUST BE DISMISSED BECAUSE HE IS ABSOLUTELY IMMUNE FROM SUIT, HE IS ENTITLED TO QUALIFIED IMMUNITY, THE FACTS ALLEGED IN THE COMPLAINT FAIL TO STATE A COGNIZABLE CLAIM, AND THE STATUTE OF LIMITATIONS HAS EXPIRED ON THE CIVIL RIGHTS CLAIMS.**

**A.    Zanini Is Absolutely Immune From Suit.**

To the extent the Complaint can be construed as naming Zanini in his individual capacity, Zanini is entitled to absolute immunity for both the Section 1983 claims and the state-law count for malicious prosecution.

**1.    The Section 1983 Counts (Counts I and III).**

The Supreme Court has long held that prosecutors are absolutely immune from Section 1983 lawsuits arising out of their role as an advocate for the State. *See Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976). "In cases involving prosecutors, legislators, and judges [the Supreme Court has] repeatedly explained that the immunity serves the public interest in enabling such officials to perform their designated functions effectively without fear that a particular decision

---

[11] *See supra*, note 10.

9

may give rise to personal liability." *Clinton v. Jones*, 520 U.S. 681, 693 (1997).  Without such

protection,

> harassment by unfounded litigation would cause a deflection
> of the prosecutor's energies from his public duties, and the
> possibility that he would shade his decisions instead of
> exercising the independence of judgment required by his
> public trust.

*Burns v. Reed*, 500 U.S. 478, 485 (1991) (quoting *Imbler*, 424 U.S. at 423).

Consequently, a state prosecutor has absolute immunity from Section 1983 suits arising

out of the initiation and pursuit of a criminal prosecution, including actions taken in connection

with judicial proceedings.  *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *see also*

*Kalina v. Fletcher*, 522 U.S. 118, 124 (1997) ("a state prosecuting attorney who acted within the

scope of his duties in initiating and pursuing a criminal prosecution was not amenable to suit

under § 1983.") (internal quotations omitted).  This includes tasks attendant with post-conviction

matters, such as a motion for a new trial filed pursuant to Mass. R. Crim. P. 30.  *See Spurlock v.*

*Thompson*, 330 F.3d 791, 799 (6th Cir. 2003); *Houston v. Partee*, 978 F.2d 362, 365-366 (7th

Cir. 1992), *cert. denied*, 507 U.S. 1005 (1993)  (collecting cases).  Moreover, when a government

official is protected by absolute immunity, that protection is not eroded "no matter how

erroneous the act may have been, how injurious its consequences, how informal the proceeding,

or how malicious the motive."  *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (citing *Cleavinger*

*v. Saxner*, 474 U.S. 193, 199-200 (1985)); *see Dennis v. Sparks*, 449 U.S. 24, 25-26, 31 (1980)

(allegations of malice or bad faith in the execution of the officer's duties are insufficient to

sustain the complaint when the officer possesses absolute immunity).

10

Applying these principles, it is evident that Zanini is absolutely immune from the Section 1983 claims in this lawsuit.  To begin with, the complaint indicates that Zanini's first involvement in this case occurred in 1995.  Compl. ¶¶ 60-61.  The identification procedures of which the plaintiff complains in Count I occurred in 1980, Compl. ¶¶ 39-40, 1981, Compl. ¶ 42, and 1983, Compl. ¶ 47.  Zanini was not admitted to the Massachusetts bar until August, 1993. *See* <http://massbbo.org/bbolookup.php> (accessed October 14, 2004).  Thus, this claim is a factual impossibility with respect to Zanini.[12]  Likewise, Count III of the complaint, alleging the Zanini conspired with the remaining defendants to violate the plaintiff's civil rights, is also a factual impossibility.  This is so because, as discussed in greater detail below, *see infra*, section "I.C," Zanini could not have participated in any of the so-called "overt acts" the plaintiff describes because all of them took place in the early 1980s.  Compl. ¶¶ 43-46, 91A-C.[13]  Even if he had, however, he would nevertheless be entitled to absolute immunity.  *Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995), *cert. denied*, 519 U.S. 820 (1996) (prosecutorial immunity applied to prosecutor from liability for allegedly concealing exculpatory evidence from the grand jury and for allegedly manipulating evidence before the grand jury).

Even assuming Zanini had participated in the identification procedures, he would be entitled to absolute immunity.  This is so because "'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'"  *Buckley*, 509 U.S. at 272 (quoting *Imbler*, 424 U.S. at 431, n. 33).

---

[12] For a more detailed discussion concerning the consequences of the plaintiff's factually impossible claim, *see infra*, section "I.C."

[13] It bears noting that one of the co-conspirators that Zanini allegedly conspired with passed away on May 13, 1981.  Compl. ¶ 43.

11

Moreover, even if the plaintiff's allegations in his conspiracy claim (Count III) had any basis in fact, Zanini would nevertheless be absolutely immune from suit. *See Cox*, 876 F.2d at 2; *Burns*, 500 U.S. at 484 ("[I]t is better to leave unredressed the wrongs done by dishonest officers than subject those who try to do their duty to the constant dread of retaliation"); *see also Cleavinger*, 474 U.S. at 199-200; *Dennis*, 449 U.S. at 25-26, 31.

Finally, the actions Zanini did take, *i.e.* filing motions in court opposing the defendant's motions for new trial, *see* Compl. ¶¶ 61, 64-66, were all "intimately associated with the judicial phase of the criminal process" and with Zanini's role as an advocate for the Commonwealth. *Imbler*, 424 U.S. at 430; *Kalina*, 522 U.S. at 131 (in assessing absolute immunity claim, the Supreme Court considers whether the prosecutor was performing the "traditional [role] of an advocate"). Consequently, Zanini is absolutely immune from the Section 1983 claims in this case. *Id.* Counts I and III against Zanini therefore should be dismissed. *Imbler*, 424 U.S. at 416, 430 (affirming dismissal of complaint pursuant to Rule 12(b)(6) where prosecutor was entitled to absolute immunity for the actions alleged in the complaint); *Miller v. City of Boston*, 297 F. Supp. 2d 361, 371 (D. Mass. 2003).

      2.     <u>The State Court Claim (Count VIII)</u>[14]

In addition, state common-law principles bar the plaintiff's tort claim against Zanini. It is well established in Massachusetts that a prosecutor is "absolutely immune from civil liability for the performance of his official duties." *Chicopee Lions Club v. District Attorney for the Hampden Dist.*, 396 Mass. 244, 251-252, 485 N.E.2d 673, 678 (1985); *Miller*, 297 F. Supp. 2d at 371-372; *see also Andersen v. Bishop*, 304 Mass. 396, 400, 23 N.E.2d 1003, 1005 (1939) (the

---

[14] *See supra*, note 10.

12

public interest requires absolute immunity for prosecutors to insure "zealous and fearless

administration of the law").  Absolute immunity extends beyond judges to persons, like

prosecutors, "performing judicial or quasi-judicial functions," because such officials "are

involved in an integral part of the judicial process and thus must be able to act freely without the

threat of a law suit."  *LaLonde v. Eissner*, 405 Mass. 207, 211, 539 N.E.2d 538, 541 (1989).

Further, absolute immunity applies, but is not limited, to prosecutorial activities "closely

related to the judicial phase of a criminal proceeding, or [that] involv[e] the skills or judgment of

an advocate."  *Chicopee Lions Club*, 396 Mass. at 248, 485 N.E.2d at 676.  Absolute immunity

also extends to prosecutors' actions in "conducting an investigation of a particular criminal

suspect for the purpose of gathering evidence in preparation for trial," because such actions

involve "utilizing his skills as an advocate to prepare the State's case against the defendant."  *Id.*

at 250, 485 N.E.2d at 676-677.

Plainly, Zanini is immune from suit on the plaintiff's claim for malicious prosecution.

Compl. at Count VIII.  As previously discussed, the plaintiff's claims with respect to Zanini are

factual impossibilities, and even if Zanini had been involved in the conduct about which the

plaintiff complains, the conduct relates solely to his role in the judicial phase of the plaintiff's

criminal case.  Moreover, by its own terms, "malicious prosecution" is the quintessential tort for

improperly initiating a prosecution.  *See, e.g., Correllas v. Viveiros*, 410 Mass. 314, 318, 572

N.E.2d 7, 10 (1991) (initiation of litigation is an essential element of tort of malicious

prosecution).  Since Zanini's sole role in this matter took place in the post-conviction context,

*see* Compl. ¶¶ 60-66, as a matter of settled state law, absolute immunity bars the plaintiff's cause

of action for malicious prosecution.  *See Chicopee Lions Club*, 396 Mass. at 248-250, 485

13

N.E.2d at 676-677; *Whirty v. Lynch*, 27 Mass. App. Ct. 498, 501, 539 N.E.2d 1064, 1066 (1989)

(absolute immunity barred invasion of privacy claim against prosecutor).

### B.    Zanini Is Also Entitled to Qualified Immunity.

Even if this Court were not to accord Zanini absolute immunity, he nevertheless is

entitled to qualified immunity.  Qualified immunity protects state officials exercising

discretionary authority from civil lawsuits "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified immunity privilege is:

> an entitlement not to stand trial or face the other burdens of
> litigation. . . . [It] is immunity from suit rather than the mere
> defense to liability; and like an absolute immunity, it is
> effectively lost if a case is erroneously permitted to go to trial.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).  Consequently, a court

should rule on a claim of qualified immunity at the outset of a lawsuit.  *Harlow*, 457 U.S. at 818;

*Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (immunity challenge should be decided at beginning

of lawsuit so that a "defendant who rightly claims qualified immunity [need not] engage in

expensive and time-consuming preparation to  defend the suit on its merits").

"[T]he requisites of a qualified immunity defense must be considered in proper

sequence."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  First, the court must ask, "Taken in the

light most favorable to the party asserting the injury, do the facts alleged show the [defendant's]

conduct violated a constitutional right?"  *Id.* at 201.  If no constitutional guarantee has been

infringed, the inquiry ends there and the defendant is entitled to qualified immunity.  *Id.*  If,

however, a violation could be found based on a favorable view of the complaint, "the next,

14

sequential step is to ask whether the right was clearly established." *Id.* Third, if the complaint

clears that hurdle, the court must decide whether a reasonable person would have known his

conduct infringed a clearly-established constitutional right. *Id.* at 202.

A defendant is entitled to qualified immunity if the court finds in his favor at even one

step of the analysis set forth above. *Saucier*, 533 U.S. at 200-201. Here, however, the analysis

cannot proceed past the first inquiry. This is so because, as even the plaintiff's complaint

establishes, Zanini was not involved in the identification procedures and could not have been

involved in a conspiracy that allegedly occurred, and became complete, a decade before he

became involved in the matter. Compl. ¶¶ 60-66. Since Zanini did not partake in the conduct, he

could not have denied the plaintiff any constitutional right. Moreover, Zanini was the prosecutor

who filed the *nolle prosequi* after the Superior Court granted him a new trial. *See* S.A. 1-3. If

there were any basis to join the plaintiff's fantastical conclusions concerning Zanini's alleged

violation of his constitutional rights, one would also presume that Zanini would have continued

the prosecution - an avenue left available by the Superior Court. In short, Zanini is also entitled

to qualified immunity for his role as advocate for the State in the post-appellate proceedings. *See*

*Saucier*, 533 U.S. at 199; *Siegert*, 500 U.S. at 233-234 (defendant is entitled to qualified

immunity where the facts alleged cannot "be held to state a claim for denial of a constitutional

right").

15

**C.    Claims Against Zanini Are Factually and Legally Impossible to Sustain and Therefore, Must Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

      1.    <u>The Section 1983 Claims</u>

In assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court assumes all facts pled in the complaint are true. *Podiatrist Ass'n v. La Cruz Azul de Puerto Rico*, 332 F.3d 6, 18 (1st Cir. 2003). The "plaintiff must allege facts in support of 'each material element necessary to sustain recovery under some actionable legal theory.'" *Campagna v. Massachusetts Dep't. of Environmental Protection*, 334 F.3d 150, 155 (1st Cir. 2003) (quoting *Darmouth Rev. v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989) (*rev'd on other grounds*, *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004)); *see Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). If the facts do not justify recovery on a cognizable legal theory, the claim must be dismissed. *See* Fed. R. Civ. P. 12(b)(6); *Podiatrist Ass'n*, 332 F.3d at 18-19.

In this case, the facts as pled by the plaintiff, taken as true, fail to state a claim against Zanini. According to the plaintiff, Zanini's first involvement with this case took place in 1995. *See* Compl. ¶¶ 60-61. In Count I, the plaintiff presses a Section 1983 claim on the grounds of "unduly suggestive identification procedures." Compl. ¶ 81. Aside from mentioning Zanini in the heading of Count I, the plaintiff alleges absolutely no conduct by Zanini that involved the identification. *See* Compl. ¶¶ 77-81. And indeed, there was none. Since Zanini was not admitted to the Massachusetts bar until August, 1993, *see* <u>http://massbbo.org/bbolookup.php</u> (accessed October 14, 2004), and did not become involved in the case until 1995, Compl. ¶¶ 60-61, and since the identification procedures occurred in 1980, Compl. ¶¶ 39-40, 1981, Compl. ¶

16

42, and 1983, Compl. ¶ 47, the plaintiff's claim against Zanini is a factual impossibility and must be dismissed.  *See* Fed. R. Civ. P. 12(b)(6).

Count III gets the plaintiff no further and must also be dismissed.  In this count, the plaintiff alleges that Zanini was involved in a conspiracy to violate the plaintiff's civil rights.  *See* Compl. ¶ 90.  Specifically, the plaintiff claims the defendants "reached a mutual understanding and acted in concert to violate [the plaintiff's] civil rights."  Compl. ¶ 90.  The plaintiff has offered not one iota of factual support for these claims.  This Court is "not bound to credit 'bald assertions, unsupportable conclusions, and opprobrious epithets.'"  *Campagna*, 334 F.3d at 155 (quoting *Darmouth*, 889 F.2d 13, 16 (1st Cir. 1989)).[15]  It should dismiss this count on this ground alone.

Similarly, there is no factual support for the "overt acts" the plaintiff alleged were undertaken in furtherance of the so-called conspiracy.  *See* Compl. ¶ 91.  Even assuming there were any basis in fact for any of the plaintiff's alleged "overt acts," none of them is applicable to Zanini.  Specifically, the plaintiff does not allege that Zanini suppressed exculpatory evidence.  Rather, Zanini's conduct, as the complaint notes, was limited to filing oppositions to DNA testing on the grounds that the defendant had been excluded as a source, and the jury had been informed of this, during the 1984 trial.  Compl. ¶¶ 60-64; S.A. 1-3.  Thus, Zanini did not, and could not have, suppressed exculpatory evidence.

The plaintiff leaves the parties and this Court to guess as to what evidence was purportedly "fabricated."  Compl. ¶ 91A.  His inability to cite to any concrete evidence leads to

---

[15] It is worth noting that the plaintiff's lawyer has not signed the complaint.

17

the obvious; the allegation is patently untrue.  In any event, nowhere does the plaintiff allege that

Zanini took part in this conduct.

Similarly, the plaintiff's unsupported allegation that the vaginal swabs and tape recorded

statements were deliberately destroyed refer to events that took place prior to the plaintiff's trial

in 1984.  Compl. ¶¶ 43, 46 (witness testifies at trial that he lost tape recordings).  Since Zanini

did not become involved until 1995, the plaintiff is unable to cite any fact in support of his

conspiracy claim against him.  Consequently, this count must also be dismissed against Zanini.

*Campagna*, 334 F.3d at 155; Fed. R. Civ. P. 12(b)(6).

2.    The Malicious Prosecution Claim (Count VIII)

To bring a claim of malicious prosecution under Massachusetts law, a plaintiff must

allege, with a factual basis: (1) the defendant instituted a criminal action; (2) he did so with

malice; (3) he knowingly did so without probable cause; and (4) the criminal proceeding

terminated in favor of the plaintiff.  *Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass.

396, 405, 772 N.E.2d 552, 561 (2002); *Beecy v. Pucciarelli*, 387 Mass. 589, 593, 441 N.E.2d

1035, 1038 (1982) ("To assert a proper claim of malicious prosecution, the [plaintiff] must plead

facts" that support each element of the tort).  The plaintiff has failed to satisfy any of the

elements.

To begin with, Zanini, who first appeared in the case in 1995, *see* Compl. ¶¶ 60-61, did

not institute the criminal action.  *See* S.A. 5, 25, 41, 59-60, 77, 91, 106, 121.  Thus, the plaintiff

has not, and cannot, allege facts to support the first element of his malicious prosecution claim.

This alone suffices to dismiss that claim.  *See Beecy*, 387 Mass. at 593, 441 N.E.2d at 1038.

18

Further, to demonstrate the second element, malice, the plaintiff must show that the defendant acted with an improper motive, such as vexation, harassment, ill will or personal gain. *See, e.g., Pihl v. Morris*, 319 Mass. 577, 580, 66 N.E.2d 804, 806 (1946); *Beecy*, 387 Mass. at 594 n. 9, 441 N.E.2d at 1038 n. 9; *Conway v. Smerling*, 37 Mass. App. Ct. 1, 3, 635 N.E.2d 268, 271 (1994). In the criminal context, the State must have "made perverse use of the litigation process" by pursuing a criminal conviction for some purpose "other than bringing the targeted person to justice. . . ." *Conway*, 37 Mass. App. Ct. at 3, 635 N.E.2d at 271.

Here, there simply are no factual allegations from which the Court could infer that Zanini was driven by personal gain, ill will or any purpose other than "brining [the plaintiff] to justice." *Conway*, 37 Mass. App. Ct. at 3, 635 N.E.2d at 271. Indeed, none of the plaintiff's allegations pertaining to this count has anything to do with Zanini's conduct in the post-conviction proceedings. Compl. ¶¶ 109-110. Further, the results of the DNA testing were made possible by the District Attorney's Office and the Boston Police, who voluntarily preserved the few remaining pieces of cloth, from a sheet and bathrobe, that had DNA material on them. *See* S.A 1-3. Under these circumstances, the plaintiff has failed to offer any evidence concerning the "malice" element. The claim must be dismissed for this reason as well.

Third, the plaintiff cannot demonstrate that Zanini continued the prosecution despite knowing of a lack of probable cause to do so. This can be seen most readily by the trial judge's allowance of the new trial motion. Had there been insufficient probable cause, it is likely that rather than permitting a retrial, the Superior Court judge would have dismissed the indictments.

Finally, the plaintiff cannot demonstrate that the proceedings terminated in his favor. *See Gutierrez*, 437 Mass. at 405, 772 N.E.2d at 561. While the formal abandonment of criminal

19

proceedings may suffice to satisfy this element, "'not all cases where the prosecutor abandons

criminal charges are considered to have terminated favorably.'" *Donahue v. Gavin*, 280 F.3d 371,

383 (3d Cir. 2002) (quoting *Hilfirty v. Shipman*, 91 F.3d 573, 579-580 (3d Cir. 1996). "A *nolle*

*pros* signifies termination of charges in favor of the accused '*only when their final disposition is*

*such as to indicate the innocence of the accused.*'" *Donahue*, 280 F.3d at 383 (quoting

Restatement (Second) of Torts § 660 (1976)) (emphasis in original). Here, the *nol prosequi*

indicates the plaintiff's guilt is still very much in question. Indeed, two of the rape victims were

willing to testify at a new trial, including the victim who identified the plaintiff as her rapist at a

line-up and in court. *See* S.A. 1-3. Further, "[t]he fact that [the plaintiff's] DNA was not on the

cloth was not an unexpected result, as [the plaintiff's] blood type and that of the stains on the

cloth were not the same, as the jury was told at the time of the trial in 1984." S.A. 1-3.

"Whether [the plaintiff] committed these crimes, as the first jury determined beyond a reasonable

doubt, will never be known with certainty. . . . [Nevertheless] [i]n light of the difficulties inherent

in retrying a case 17 years after the first verdict of guilt, and 20 years after the rapes, exacerbated

by the lack of trial exhibits and the current unavailability of at least one witness, it [was] not in

the interests of justice for the Commonwealth to further prosecute the case." S.A. 1-3. In this

case, there is no basis to conclude that the criminal proceedings terminated in the plaintiff's

favor.

       In short, no facts exist to demonstrate the plaintiff can establish any of the four elements

of a malicious prosecution claim against Zanini. This claim must be dismissed. *See* Fed. R. Civ.

P. 12(b)(6).

20

**D.    The Plaintiff's Civil Rights Claims Are Barred By the Statute of Limitations.**

The statute of limitations for claims filed pursuant to 42 U.S.C. § 1983 is the forum

state's statute of limitations for personal injury actions. *Rodriguez-Garcia v. Municipality of*

*Caguas*, 354 F.3d 91, 96 (1st Cir. 2004) (citing *Wilson v. Garcia*, 471 U.S. 261, 277-280 (1985).

In Massachusetts, the statute of limitations for personal injury actions is three years from the date

the cause of action accrues.  Mass. G. L. c. 260, § 2A.  The accrual date of a § 1983 action,

however, is a matter of federal law.  *See Rodriguez-Garcia*, 354 F.3d at 96 (citing *Rivera-*

*Muriente v. Agosto-Alicea*, 959 F.2d 349, 353 (1st Cir. 1992).  "Under federal law, the

limitations period begins to run when the plaintiff 'knows or has reason to know of the injury

which is the basis for his claim.'"  *Rodriguez-Garcia*, 354 F.3d at 96-97 (quoting *Rodriguez*

*Narvaez v. Nazario*, 895 F.2d 38, 41 n. 5 (1st Cir. 1990)).  Determining when a claim accrues is a

matter of judicial interpretation.  *See Cambridge Plating Co., Inc. v. Napco, Inc.*, 991 F.2d 21, 25

(1st Cir. 1993); *Quinn v. Wait*, 49 Mass. App. Ct. 696, 697-698, 732 N.E.2d 330, 332 (2000).

No cause of action arises under Section 1983 "unless and until the conviction or sentence

is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."  *Heck v.*

*Humphrey*, 512 U.S. 477, 489 (1994).  In Massachusetts, a motion filed pursuant to Mass. R.

Crim. P. 30 is the appropriate vehicle to attack the validity of a criminal conviction.  *See*

Reporter's Notes to Mass. R. Crim. P. 30.  In this case, the Superior Court allowed the plaintiff's

motion for a new trial, pursuant to Mass. R. Crim. P. 30, on May 11, 2001.  *See* S.A. 23, 40, 58,

76.  This was the date the plaintiff's Section 1983 cause of action arose.  Moreover, the plaintiff

knew of all the facts he alleges in his complaint by the date his new trial motion was allowed.

*See* G. L. c. 260, § 2A; *see also Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000)

21

(Section 1983 cause of action accrued when conviction vacated by allowance of habeas corpus petition).  Thus, May 11, 2001, was the date the cause of action accrued.  Consequently, the statute of limitations on his claims filed pursuant to 42 U.S.C. § 1983 expired on May 11, 2004.  The complaint, filed in this court on May 17, 2004, is untimely and must be dismissed.  *See* Mass. G. L. c. 260, § 2A.

## II.    THE ELEVENTH AMENDMENT BARS SUIT AGAINST THE OFFICE OF THE DISTRICT ATTORNEY FOR THE SUFFOLK DISTRICT AND ZANINI.

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be
> construed to extend to any suit in law or equity,
> commenced or prosecuted against one of the United States
> by Citizens of another state, or by Citizens or Subjects of
> any Foreign State.

U.S. Const. Amend XI.  By its own terms, the Amendment encompasses only suits brought against a State by citizens of another State, but it has long been established that the Amendment also bars suits against a State brought by citizens of the same State.  *See Papasan v. Allain*, 478 U.S. 265, 276 (1986) ("[I]n the absence of consent, a suit in which that State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Hans v. Louisiana*, 134 U.S. 1 (1890); *see also Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam).  Furthermore, the Supreme Court has specifically held that the Eleventh Amendment bars Section 1983 suits, as well as pendent state-law tort claims.  *See Quern v. Jordan*, 440 U.S. 332, 342-343 (1979) (42 U.S.C. § 1983 does not override the States' Eleventh Amendment immunity); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 106-121).  The bar exists whether the relief sought is legal or equitable.  *Pennhurst*, 465 U.S. at 100-101.

22

**A.    The Office of the District Attorney for the Suffolk District Cannot be Sued in Federal Court.**

A suit against a state agency is the same as a suit against the Commonwealth and is therefore proscribed by the Eleventh Amendment. *See, e.g., Pennhurst*, 465 U.S. at 100; *Papasan*, 478 U.S. at 276 (suits against a "State or one of its agencies of departments . . . [are] proscribed by the Eleventh Amendment") (internal quotations omitted). *Compare Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978) (local government entities may be sued under Section 1983 assuming plaintiff can show that official policy is responsible for deprivation of constitutional rights).

The Office of the District Attorney for the Suffolk District is a state agency. *Miller v. City of Boston*, 297 F. Supp. 2d 361, 368 (D. Mass. 2003); *Lodge v. District Attorney for the Suffolk Dist.*, 21 Mass. App. Ct. 277, 280-283, 486 N.E.2d 764, 766-768 (1985) ("[T]he office of the district attorney for the Suffolk Court District is more properly denominated a State 'agency'"); *Commonwealth v. Gonsalves*, 432 Mass. 613, 618, 739 N.E.2d 1100, 1104 (2000) ("As a representative of the district attorney's office, a prosecutor is an officer of the State"). "Its predominant function is to 'appear for the [C]ommonwealth . . . in all . . . criminal [and] civil' cases that are pending within its district." *Miller*, 297 F. Supp. 2d at 368 (quoting Mass. G. L. c. 12, § 27) (alterations in original). "In addition, the Attorney General has supervisory authority over all district attorneys and can take charge of cases that are being handled by the district attorneys." *Id.* at 368-369 (citing Mass. G. L. c. 12, §§ 3, 6, 27). "What is more, the salaries of the district attorneys, their assistants, and their employees are paid by the Commonwealth [and] [t]he district attorneys must also account to the Commonwealth for their expenses." *Id.* at 369

(citing *Lodge*, 21 Mass. App. Ct. at 283, 486 N.E.2d 764; Mass. G. L. c. 12, §§ 15, 16, 19, 20,

20A, 22, 23, 24, 25, 25A, 29); *see also Commonwealth v. Kozlowsky*, 238 Mass. 379, 387-389,

131 N.E. 207, 210-212 (1921) (recognizing that the district attorney's office is an office of the

Commonwealth; "[a]ny other interpretation would establish the district attorneys as independent

public officers . . . ").

Because the Office of the District Attorney for the Suffolk District is a state agency, the

Eleventh Amendment bars this lawsuit against it. *Pennhurst*, 465 U.S. at 100; *Papasan*, 478

U.S. at 276; *see also Quern*, 440 U.S. at 341-345 (under Eleventh Amendment, state

administrative agency is immune from § 1983 action). This Court therefore should dismiss the

Complaint against the Office.

**B.        Zanini Also Cannot be Sued in Federal Court.**

To the extent that Zanini is being sued in his official capacity, the Eleventh Amendment

also precludes the plaintiff's claim against him. *See Kentucky v. Graham*, 473 U.S. 159, 165

(1985) (official-capacity suit is one against the State). Although the plaintiff named Zanini in his

"individual capacity," it is clear from the pleadings that Zanini was acting in his official capacity.

*See, e.g., Elliot v. Cheshire Cty.*, 940 F.2d 7, 12 (1st Cir. 1991) ("[A]s a state officer" police

trooper "was acting as an arm of the state"; dismissing a § 1983 claim against state trooper); *see

also Edelman v. Dept. of Public Aid of Illinois*, 415 U.S. 651, 663 (1974) (suit "seeking to

impose a liability which must be paid from public funds in the state treasury is barred by the

Eleventh Amendment").

Even viewing this as a personal-capacity lawsuit, the state-law claim against Zanini

(Count VIII) must be dismissed. "[A] claim that state officials violated state law in carrying out

24

their official responsibilities is a claim against the State and is protected by the Eleventh

Amendment." *Pennhurst*, 465 U.S. at 121. The Supreme Court explained:

> it is difficult to think of a greater intrusion on state
> sovereignty than when a federal court instructs state
> officials on how to conform their conduct to state law.

*Id.* at 106. Consequently, the Eleventh Amendment bars the plaintiff's common-law malicious

prosecution claim against Zanini. *Id.*; *see also Sierra Club v. Larson*, 769 F. Supp. 420, 424 (D.

Mass. 1991) (claim alleging that defendants violated state law barred by Eleventh Amendment).

## III. THE OFFICE OF THE DISTRICT ATTORNEY FOR THE SUFFOLK DISTRICT MUST ALSO BE DISMISSED BECAUSE IT IS NOT A "PERSON" SUBJECT TO SUIT UNDER 42 U.S.C. § 1983 AND BECAUSE THE STATUTE OF LIMITATIONS EXPIRED PRIOR TO THE PLAINTIFF'S FILING OF HIS COMPLAINT.

Title 42, Section 1983 provides, in pertinent part:

> Every person who, under color of [state law], subjects or
> causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the
> deprivation of any rights, privileges or immunities secured
> by the Constitution and laws, shall be liable to the party
> injured in any action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983 (emphasis added). The Supreme Court consistently has held that a State is not

a "person" within the meaning of Section 1983. *See, e.g., Will v. Michigan Dept. of State Police*,

491 U.S. 58, 64 (1989); *Lapides v. Board of Regents of Univ. System of Georgia*, 535 U.S. 613,

617 (2002) ("[A] State is not a 'person' against whom a § 1983 claim for money damages might

be asserted"). As a result, Section 1983 claims cannot be maintained against a State or a state

agency. *Id.*; *see also Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991), *cert. denied*, 502

U.S. 1063 (1992) ("It is settled beyond peradventure, however, that neither a state agency nor a

25

state official acting in his official capacity may be sued for damages in a § 19832 action"); *Forte v. Sullivan*, 935 F.2d 1, 2 n. 2 (1st Cir. 1991) ("A State is not considered a 'person'" for Section 1983 purposes) (citing *Will*, 491 U.S. at 64).

Because the Office of the District Attorney for the Suffolk District is a state agency, *see supra* section "II.A.," it is not a "person" subject to suit under Section 1983. *Will*, 491 U.S. at 64. The plaintiff's Section 1983 claim against the Office therefore fails to state a claim upon which relief can be granted and must be dismissed. *See, e.g., Forte*, 935 F.2d at 2 n. 2; *Johnson*, 943 F.2d at 108 (dismissing a § 1983 claim against state agency). Moreover, since the sole claim against the Office arises under Section 1983, the Court must dismiss this defendant from this lawsuit.[16]

**B.    The Statute of Limitations on the Plaintiff's "Monell" Claim Expired Prior to the Plaintiff's Filing of His Complaint.**

As a form of Section 1983 claim, the plaintiff's claim against the Suffolk District Attorney's Office has a three-year statute of limitations. *See Marrapese v. State of Rhode Island*, 500 F. Supp. 1207, 1222 (D.R.I,. 1980); Mass. G. L. c. 260, § 2A. As with the plaintiff's Section 1983 claims against Zanini, the plaintiff's *Monell* claim against the Suffolk District Attorney's Office accrued on May 11, 2001, the day the Superior Court allowed his new trial motion. *See* S.A. 23, 40, 58, 76; *supra* Argument Section "I.D." Since the plaintiff did not file his complaint until May 17, 2004, the statute of limitations had expired. *See* Mass. G.L. c. 260, § 2A. The

---

[16] Similarly, to the extent Zanini is being sued in his official capacity, the Section 1983 claims must be dismissed against him as well. *See, e.g., Elliot*, 940 F.2d at 12 ("[A]s a state officer" police trooper "was acting as an arm of the state, and a State is not a 'person' under § 1983"; dismissing § 1983 claim against state trooper). Counts I and III therefore should be dismissed against Zanini for this reason as well. *Id. See supra*, Argument "II.B."

26

plaintiff's "*Monell*" claim must be dismissed for this reason as well. *Id.; see also Smith v.*

*Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (Section 1983 cause of action accrued when

conviction vacated by allowance of habeas corpus petition).


**CONCLUSION**

For the foregoing reasons, this Court should allow the District Attorney Defendants'

motion to dismiss with prejudice.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL


/s/ Daniel I. Smulow
Daniel I. Smulow, BBO # 641668
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2949

Dated: October 15, 2004

**Certificate of Service**

I hereby certify that a true copy of the above document was served by mailing a copy of
the same by first-class mail, postage prepaid and addressed to counsel for the plaintiff: Kevin
O'Connor, Esq., Paragon Law Group, 184 High Street, Boston, MA 02110.  Counsel for the
remaining defendants have been served electronically.

/s/ Daniel I. Smulow

27

### **Notice of Filing with Clerk's Office**

Notice is hereby given that the District Attorney Defendants' Supplemental Appendix has been manually filed with the Court and is available in paper form only.

<u>/s/ Daniel I. Smulow</u>

Dated: October 15, 2004