**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. 04-10986 NG

ULYSSES RODRIGUEZ CHARLES,
    Plaintiff,

v.

CITY OF BOSTON, et. al.,
    Defendants.

**DEFENDANT, STANLEY BOGDAN'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION TO DISMISS**

I.    INTRODUCTION

The Plaintiff's Complaint directs four counts against Defendant Stanley Bogdan ("Defendant Bogdan"):

1. Count II of the complaint is directed against Defendant Bogdan for federal civil rights violations under 42 U.S.C. §1983 and the Fourteenth Amendment for failing to disclose evidence;

2. Count III of the complaint is directed against Defendant Bogdan for conspiracy to commit wrongful imprisonment under 42 U.S.C. §1983; and

3. Count IV of the complaint is directed against Defendant Bogdan for federal civil rights violations under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments for malicious prosecution; and

4. Count VII of the complaint is directed against Defendant Bogdan for malicious prosecution under state law.

Defendant Bogdan seeks dismissal with prejudice of all four counts of the Plaintiff's Complaint directed against him because qualified immunity entitles him from immunity to suit and because the causes of action alleged are insufficiently plead against him.

A.   Factual Allegations

This lawsuit arises out of Plaintiff's 1980 conviction for unlawful confinement, rape and robbery. Essentially, Plaintiff alleges that he was wrongfully convicted for the crimes as a direct result of the tortious and unconstitutional acts of the defendants, including Defendant Bogdan, a Boston Police Department criminalist.[1] Plaintiff was incarcerated for nineteen years of an eighty year prison sentence, and was released on May 17, 2001, when the District Attorney determined that they were unable to retry the Plaintiff for the crimes. Plaintiff makes numerous allegations against the Defendants, which are briefly described below.

On December 8, 1980, three women were raped and robbed in their Brighton apartment by a black male. The assailant remained in the apartment for approximately two hours, stole jewelry, and raped each of the women. On December 12, 1980, Defendant Bogdan went to the crime scene and collected a bed sheet and robe. Defendant Bogdan conducted tests on the evidence, and determined that the stains were seminal in origin and from a Type "O" secretor. Defendant Bogdan collected the Plaintiff's blood type and compare it to the crime scene evidence. Plaintiff was determined to be a Group B secretor, and therefore excluded as the depositor of the crime scene evidence. Plaintiff alleges that Defendants Campo and Bogdan tested and excluded one of the victim's boyfriends as a depositor of the seminal stains on the bed sheet and robe. Plaintiff alleges Defendant Campo withheld that evidence from Plaintiff.

---

[1] Plaintiff also brings this action against Boston Police officers John Mulligan, William Keough and Paul Rufo, and Kathleen Hanley Johnson. Mulligan, Keough and Rufo are deceased. Plaintiffs' allegations against Defendant Mulligan are primarily based on alleged incidents which occurred prior to the Plaintiff's arrest for the subject crimes.

2

Plaintiff further alleges that Defendant Campo elicited false testimony from Defendant Bogdan that the stains on the bed sheet and robe were not seminal in origin.

Defendant was convicted of the crimes based primarily on the victims' identifications of the Plaintiff. In 1999, DNA tests were done on the crime scene evidence, and it was concluded that the biological stains on the sheet and robe were seminal, and from two different men. The Plaintiff was excluded as the donor of either sample. As a result of this finding, Plaintiff's convictions were vacated, and he was released on May 17, 2001.

### B.   The Plaintiff's Allegations Against Defendant Bogdan

The Plaintiff's Complaint contains the following factual allegations against Defendant Bogdan:

1. On December 12, 1980, Defendant Bogdan went to the crime scene and collected a bed sheet and a maroon robe. Defendant Bogdan was assigned the case, and conducted tests on the sheet and robe. He determined the stains were seminal in origin and from a Type "O" secretor. (Pl.'s Complaint ¶ 52).

2. Defendant Bogdan collected and compared Mr. Charles' blood type with that of the crime scene sheet and robe. (Pl.'s Complaint ¶ 53).

3. Defendant Bogdan also tested and excluded Ms. Streeter's boyfriend as the depositor of the seminal stains, prior to the trial. Defendant Campo withheld that evidence from the Plaintiff. (Pl.'s Complaint ¶ 54).

4. Defendant Bogdan's tests also confirmed stains on the bed sheet and robe were seminal in origin. Defendant Campo elicited false testimony from Defendant Bogdan that the stains on the bed sheet were not seminal in origin, and argued the

3

      rapist did not ejaculate with the sole intent to injure the Plaintiff.  (Pl.'s Complaint ¶ 55).

5.     Defendant Bogdan failed to disclose to defense counsel material information that was favorable to the Plaintiff.  This information included serological evidence that would have presumptively excluded the Plaintiff in the rape.  (Pl.'s Complaint ¶ 84).

The Plaintiff's allegations against Defendant Bogdan all are predicated on the above set of facts, as aside from the testing done by Defendant Bogdan, there are no allegations in the Complaint that he participated in the investigation or prosecution of the Plaintiff.  Because Defendant Bogdan's involvement in the Plaintiff's arrest and conviction was limited to the alleged facts listed above, all counts against him should be dismissed as they are insufficient to sustain a cause of action against him.

## II.    APPLICABLE STANDARD

The purpose of a motion to dismiss "is to determine whether the complaint alleges facts sufficient to state a cause of action."  Alternative Energy, Inc. vs. St. Paul Fire and Marine Ins. Co., 267 F. 3d, 30, 36 (1st Cir.2001).  A motion to dismiss is to be allowed when a Plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 246 (1980); Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir.1998).  In considering a motion to dismiss, the Court is obliged to accept the Plaintiff's well-pleaded facts as they appear, granting every reasonable inference in the Plaintiff's favor.  Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir.1999).  This indulgence, however, does not require the Court to credit bald assertions, unsubstantiated conclusions, or outright vituperation.  Correa-Martinez v. Arrillaya-

Belendez, 903 F.2d 49, 52 (1st Cir.1990).  The demands placed upon Plaintiffs by Rule 12(b)(6) are minimal,

> but minimal requirements are not tantamount to nonexistent requirements.  The threshold may be low, but it is real--and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation.

Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988).

Even under the modern "notice pleading" regime, a plaintiff is "required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir.1996).

III.   ARGUMENT

   A.   Count II Of The Plaintiff's Complaint Must Fail Because There Is No Brady Obligation For Lab Technicians.

It is well established that materially-favorable evidence must be turned over to a Defendant during the course of a criminal case by the prosecution.  Brady v. Maryland, 373 U.S. 83, 87 (1967).  The so-called 'Brady duty' has traditionally been formulated as a prosecuting attorney's duty, and not as a police duty.  Although the First Circuit has noted an evolving trend during the 1990's toward a *police officer's* disclosure duty existing in some circumstances, it is nevertheless a developing area of law which remains undefined, even today.  *See e.g.* Reid v. Simmons, 163 F.Supp. 2d 81, 84 (D.Me. 2001), describing the issue of police officer liability for Brady violations as "a matter of considerable uncertainty" and as "somewhat ill-defined, particularly in [the First] circuit."  Reid, 163 F.Supp.2d at 95.  While the First Circuit has not looked at the Brady duty as to crime lab technicians, it has been analyzed in other jurisdictions.  See Villasana, Jr. v. Wilhoit, et. al., 368 F.3d 976 (8th Cir. 2004); Mowbray v. Cameron County,

5

et. al., 274 F.3d 269 (5th Cir. 2001).  In Villasana, the plaintiff claimed that the crime lab technician provided the crime lab file to the prosecutor, without including underlying notes.  Id. at 977.  The underlying documents were produced after the trial, and based on information contained in the notes, DNA testing was done, and profiles were inconsistent with the plaintiff. Id. The plaintiff was released based on the developed evidence.  Id.  The plaintiff filed suit against the crime lab technician claiming the technician's failure to turn over the notes originally was a violation of Brady.  Id.  The Court found that no such duty exists for a crime lab technician.  Id. at 980.  The court reasoned that this duty rests on the prosecutor.  The Court held that the plaintiff

> …would extend Brady's absolute liability to any law enforcement officer who was part of the prosecutor's 'team,' including in this case scientists employed by the Highway Patrol Crime Laboratory.  This extension is not needed to secure post-conviction relief for one whose conviction was tainted by a Brady violation, because the prosecutor's duty is absolute.  The extension is simply a device to avoid the impact of the prosecutor's absolute immunity from § 1983 damage liability.  We conclude the extension is unsound.

Id.

Furthermore, there are no cases that have expanded the duty to lab technicians.  See Newsome v. McCabe, 256 F.3d 747 (7th Cir. 2001); McMillan v. Johnson, 88 F.3d 1154 (11th Cir. 1996).  Plaintiff alleges that Defendant Bogdan tested the evidence, and turned his findings over to the prosecutor, Defendant Campo.  It is Defendant Campo's decision, based on the above Brady discussion, to determine what is required to be turned over to the Plaintiff, not Defendant Bogdan's.  Defendant Bogdan is under absolutely no obligation to turn over evidence to the Plaintiff's attorney, as any duty he had clearly ended once he handed the documents to the prosecutor.  Defendant Bogdan is a lab technician, a scientist, not an attorney, and certainly had no way to know what documents should be turned over to the Plaintiff's attorney.  Moreover,

6

Plaintiff does not allege that Defendant Bogdan held onto to information, or failed to disclose information in bad faith.² Accordingly, the Brady obligation does not extend to Defendant Bogdan, and therefore this claim must be dismissed.

> B.  Defendant Bogdan Is Entitled To Qualified Immunity From Suit Because There Was No Clearly Established Crime Lab Technician's Duty To Provide Exculpatory Information In 1980.

Assuming *arguendo* that Defendant Bogdan failed to disclose exculpatory information to Plaintiff's attorney, he would nevertheless be entitled to qualified immunity from suit because in 1980, no clearly-established law required a crime lab technician to provide potentially exculpatory evidence to prosecuting attorneys. Governmental officials and employee performing discretionary functions enjoy qualified immunity from federal civil rights liability where they act in good faith, and where their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. See Stratton v. City of Boston, 731 F.Supp. 42, 48-49 (D.Mass. 1989) citing Maiorana v. MacDonald, 596 F.2d 1072, 1074 (1st Cir.1979).

Because the entitlement is one of *immunity from suit*, rather than merely a defense to liability, the issue of the applicability of the qualified immunity doctrine should be resolved at the earliest possible stage of the litigation. Anderson v. Creighton, 483 U.S. 635, 646, n. 6 (1987); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

"The inquiry for a district court's resolution on a motion [to dismiss] brought by an official seeking qualified immunity is 'whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the

---

² The Court in Villansana also states that some courts have expanded Brady liability where claims have involved intentional conduct or bad faith on the part of the officer. Id. at 980. While there is no indication that this duty would extend to a crime lab technician in such a case, there are no facts alleged which support a finding of bad faith on the part of Defendant Bogdan.

7

time of his allegedly unlawful conduct.'" Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir.1995), *quoting* Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir.1994). A "reasonable, although mistaken, conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." Lowinger, 50 F.3d at 65, *quoting* Cookish v. Powell, 945 F.2d 441, 443 (1st Cir.1991).

A criminal defendant's right to disclosure of potentially exculpatory information stems from Brady v. Maryland, 373 U.S. 83 (1967), and its progeny. The so-called 'Brady duty' has traditionally been formulated as a prosecuting attorney's duty, and not as a police officer's, or police department employee's duty. Although the First Circuit has noted an evolving trend during the 1990's toward a police officer's disclosure duty existing in some circumstances, it is nevertheless a developing area of law which remains undefined, even today. *See e.g.* Reid v. Simmons, 163 F.Supp. 2d 81, 84 (D.Me. 2001) (Describing the issue of police officer liability for Brady violations as "a matter of considerable uncertainty" and as "somewhat ill-defined, particularly in [the First] circuit." Reid, 163 F.Supp.2d at 95).

There currently is no authority for the proposition that a Brady duty exists in the context of a crime lab technician. See Section III.A. *supra.* Because there is no clearly established right currently in 2004, such a duty can hardly be characterized as having been 'clearly-established' in 1980. Therefore, Defendant Bogdan is entitled to qualified immunity from any claim arising out of Bogdan's alleged duty under Brady.

### C. Count III Of The Complaint Fails to State a §1983 Conspiracy Claim Against Defendant Bogdan And Should Be Dismissed.

Plaintiff's complaint fails to allege any facts that Defendant Bogdan was involved in a conspiracy. It is axiomatic that the liability of persons sued in their individual capacities under 42 U.S.C. § 1983 must be gauged in terms of their own actions. Rogan v. Menino, 135 F.3d 75,

8

77 (1st. Cir.1999). While the Defendant concedes that per Swierkiewicz v. Sorema N.A., there is no heightened pleading standard for federal suits, it is not enough if the facts plead do not allege participation in an act alleged to be part of a conspiracy. Ryan v. Mary Immaculate Queen Center, 188 F.3d 857, 859-60 (7th Cir. 1999), See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); see also Accion v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004).   While "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date," that has not been done here as to the allegations against Defendant Bogdan. Walker v. Thompson, et. al., 288 F.3d 1005, 1007 (7th Cir. 2002).

The allegation of conspiracy against Defendant Bogdan is merely a conclusory assertion, unsupported by any alleged facts. The only facts relating to Defendant Bogdan indicated that he collected evidence, tested the evidence, turned his findings over to the prosecutor, and later testified regarding his findings at the trial of the matter. There are absolutely no facts connecting Bogdan to the failure to disclose exculpatory evidence. In the Complaint, Plaintiff alleges that the Defendants "suppressed exculpatory evidence in favor of Mr. Charles and fabricated inculpatory evidence." There are no facts alleged in the Complaint to support these broad legal conclusions, therefore the conspiracy claim against Defendant Bogdan must fail.

    D.    Defendant Bogdan Is Immune From Liability For His Testimony In The Plaintiff's Criminal Trial.

Witnesses, whether public officials or private citizens, are absolutely immune from civil liability based on their own testimony. Briscoe v. LaHue, 460 U.S. 325 (1983). "A plaintiff cannot use a conspiracy claim to short-circuit Briscoe's grant of absolute immunity to testifying witnesses." Mitchell v. City of Boston, et. al., 130 F.Supp. 2d 201, 211-212 (2001). "In order to prevent a back-door route to holding participants in the judicial process liable under a

9

conspiracy theory, absolute immunity should also extend to conduct that is inextricably tied to participation in the judicial process." Id. at 212.

The Plaintiff is impermissibly attempting to circumvent the Briscoe holding and hold Defendant Bogdan liable for his testimony at the Plaintiff's criminal trial. The Plaintiff only alleges that Defendant Bogdan collected evidence, tested the evidence, turned the evidence over to the prosecutor, and testified regarding his findings. Defendant Bogdan did not have a Brady obligation to disclose information and, even if he did, the Plaintiff does not allege that Defendant Bogdan withheld any information from the prosecutor. The Plaintiff cannot get around the holding in Briscoe by alleging that Defendant Bogdan's testimony was false or part of a conspiracy, as Defendant Bogdan has absolute immunity from liability for his testimony at the criminal trial. Accordingly, the Plaintiff's conspiracy claim against Defendant Bogdan must fail as a matter of law.

    E.    Count VII For Malicious Prosecution Must Fail Because Defendant Bogdan Did Not "Initiate Criminal Action" Against The Plaintiff.

The Plaintiff's Complaint fails to state a claim against Defendant Bogdan for malicious prosecution under Massachusetts law. In order to recover for malicious prosecution under Massachusetts law, the Plaintiff must show 1) the Defendant initiated criminal action against him; 2) the criminal prosecution of the Plaintiff ended in Plaintiff's favor, 3) there was no probable cause to initiate the criminal prosecution of the Plaintiff, and 4) the Defendant acted maliciously. Santiago v. Fenton, 891 F.2d 373, 387 (1st Cir. 1989); Foley v. Polaroid Corp., 508 N.E.2d 72, 400 Mass. 82 (1987); Sullivan v. Choquette, 420 F.2d 674, 676 (1st Cir. 1969). The state claim for malicious prosecution against the Defendant must fail, because the Defendant did not initiate a criminal action against the Plaintiff. The warranted arrest of a suspect constitutes the initiation of a criminal action for the purposes of the Massachusetts law claim of malicious

prosecution.  *See* Meehan v. Town of Plymouth, 167 F.3d 85, 90 (1st Cir. 1998) (quoting Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3-4 (1st Cir. 1995));  Santiago v. Fenton, 891 F.2d 373, at 387 (1st Cir. 1989).  The Defendant had no involvement in the initiation of the prosecution against the Plaintiff.  Defendant Bogdan only inspected the crime scene, tested the evidence, and testified at the trial of the matter.  Even if this allegation proves true, it does not constitute the commencement, nor did it cause the commencement of the criminal prosecution of the Plaintiff.  *See* Meehan, 167 F.3d at 90 (quoting Calero-Colon, 68 F.3d at 3-4).

Furthermore, the Plaintiff does not allege that Defendant Bogdan took "an active part in continuing or procuring the continuation of criminal proceedings initiated … by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings.'"  See Mitchell v. City of Boston, 130 F.Supp.2d 201, 215 (D. Mass. 2001) (quoting Restatement (Second) of Torts § 655 (1976)).  Because the Plaintiff's complaint fails to satisfy the first prong of the state claim of malicious prosecution, that Defendant Bogdan initiated criminal action against the Plaintiff, Count VII of the Plaintiff's Complaint must be dismissed.

    F.    Count IV Fails To State A Federal Claim For Malicious Prosecution Under The Fourteenth Amendment Because Such A Claim Is Barred Where The State Tort Law Recognizes A Malicious Prosecution Cause Of Action.

Plaintiff does not present a valid claim under 42 U.S.C. § 1983 and the Fourteenth Amendment.  As to the claim of a substantive due process violation, "[t]he law is settled that a garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail.  There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution."  Roche v. John Hancock Mutual Life Insurance Company, 81 F.3d 249, 256 (1st

11

Cir. 1996); *see* Albright v. Oliver, 510 U.S. 266 (1994); Calero-Colon v. Betancourt-Lebron, 68 F.3d at 3 n.7.

And as for the claim of a violation of procedural due process, "the availability of a plainly adequate remedy under Massachusetts law defeats the possibility of a procedural due process claim." Roche, 81 F.3d at 256; *see* Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 43 (1st Cir. 1994). Clearly there is an adequate remedy available to the Plaintiff under Massachusetts law, therefore a malicious prosecution claim under the guise of procedural due process claim is not valid under federal law. *See* Santiago v. Fenton, 891 F.2d at 387. Because the Court does not recognize malicious prosecution under the Fourteenth Amendment as a valid claim where there is an adequate state law remedy, Count IV of the Complaint, as it is plead under the Fourteenth Amendment, must be dismissed as directed against Defendant Bogdan.

> G.  Count IV Fails To State A Federal Claim For Malicious Prosecution Under The Fourth Amendment Because The Claim Fails to Satisfy the Requirements of the State Law Cause of Action for Malicious Prosecution.

The Plaintiff does not have a valid section 1983 malicious prosecution claim under the Fourth Amendment, because he does not fulfill an essential element of the claim. "To state a claim for malicious prosecution under § 1983, a Plaintiff must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." Grant v. John Hancock Mutual, Life Insurance Co., 183 F.Supp.2d 344 (D. Mass. 2002) (citing Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001); also Sneed v. Rybicki, 146 F.3d 478, 480 (7th Cir. 1998) (quoting Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir. 1996)).

As stated earlier in this Memorandum of Law, the Plaintiff's state law claim of malicious prosecution fails because Plaintiff is unable to show that Defendant Bogdan "initiated" the

criminal action against him.  Plaintiff does not allege Defendant Bogdan was involved in the arrest of the Plaintiff.  Defendant Bogdan only collected evidence, tested it, reported his findings to the prosecutor, and testified regarding those findings.  Because the stated cause of action for malicious prosecution fails, Plaintiff does not have a proper cause of action for malicious prosecution under the Fourth Amendment and § 1983, therefore Count IV of the Plaintiff's Complaint must be dismissed as directed at Defendant Bogdan.

IV.    CONCLUSION

For the reasons stated above, the Defendant, Stanley Bogdan, respectfully requests that all counts of the Plaintiff's Complaint directed against him be dismissed with prejudice.

Respectfully submitted,

DEFENDANT, STANLEY BOGDAN
Merita A. Hopkins
Corporation Counsel

By his attorneys:

/s/ Amy E. Ambarik
Amy E. Ambarik, Esq.
BBO# 637348
Thomas R. Donohue, Esq.
BBO# 643483
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4099 (Ambarik)
(617) 635-4039 (Donohue)