UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ULYSSES RODRIGUEZ CHARLES,<br>                    Plaintiff,<br>v.<br><br>CITY OF BOSTON<br><br>and<br><br>STANLEY BOGDAN, in his individual<br>capacity; and<br><br>JOHN DOE and JANE DOE, supervisors in the<br>Boston Police Department , in their individual<br>capacity,<br><br>                    Defendants. | C.A. No. 04-10986-NG |

**OPPOSITION TO THE DEFENDANTS' MOTION FOR LEAVE
TO AMEND THEIR ANSWERS**

Plaintiff Ulysses R. Charles ("Charles") herewith submits his opposition to the

motion of Defendants City of Boston ("City") and Stanley I. Bogdan ("Bogdan") in

which they ask for leave to amend their answers to add the affirmative defense of statute

of limitations.

The motion should be denied for the following reasons:

- The Defendants have long known of the facts related to this defense;

- A motion to amend may be denied on grounds of futility;

- The proposed amendment would be futile because—

    o As a matter of law, the City and Bogdan are mistaken about when
      the limitations period started; and

    o The limitations period had not run at the time when this action was
      commenced.

For these and the further reasons set forth below, the Court should deny the

motion for leave to amend.

## FACTUAL BACKGROUND[1]

On the evening of December 8, 1980, three women were raped by black man in the Brighton apartment they shared. *See* 5/11/01 Order at 4. Despite the fact that he did not fit the description of the suspect given to police, Charles, who had long been the object of Boston police harassment, was arrested and convicted of the crimes on the basis of faulty identification procedures and prosecutorial misconduct. *See* Complaint ¶¶ 2, 25-57. On February 14, 1984, Charles was sentenced to four 18-20 year consecutive prison terms. *See* 5/11/01 Order at 2.

In the ensuing years, Charles instituted several unsuccessful appeals. Finally, in 1998, he was able to obtain exculpatory DNA test results that he could use as grounds for a new trial. *See* 5/11/01 Order at 6, 7-14. The results shows that the DNA profile of sperm fractions found on two pieces of physical evidence (a bed sheet and a robe) did not match Charles' DNA profile. *See* 5/11/01 Order at 6. In the years after his conviction, Charles also discovered that the Commonwealth had failed to disclose to the defense an exculpatory statement made by one of the victims that her assailant was circumcised, a fact that would exclude Charles as a suspect. *See* 5/11/01 Order at 7, 14-16. When Charles moved for a new trial in early 2001, he adduced these facts as reasons why his motion should be granted. *See* 5/11/01 Order at 1.

On May 11, 2001, Judge Barbara Rouse of the Massachusetts Superior Court vacated Charles' conviction and granted a new trial. *See* 5/11/01 Order at 1; State Docket

---

[1] The facts are drawn from the Complaint, from Judge Rouse's May 11, 2001 decision vacating Charles' conviction and granting a new trial ("5/11/01 Order," attached here as Exhibit A), and from the copy of the state criminal docket ("State Docket") attached to the Defendants' Motion as Exhibit C. *See Kowalski v. Gagne,* 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."); *U.S. v. Mercado,* 412 F.3d 243, 247 (1st Cir. 2005).

at 9.  In doing so, Judge Rouse expressly rested her decision solely on the grounds of the DNA evidence and the failure to disclose the exculpatory statement.  *See* 5/11/01 Order at 1, 19.

On May 14, 2001, Charles was released on bail, pending a new trial.  *See* State Docket at 9.

On May 17, 2001, the Office of the District Attorney for the Suffolk County ("District Attorney") wholly abandoned its prosecution by filing a *nolle prosequi* on all charges relating to the December 8, 1980 crimes.  *See* State Docket at 9.  (A copy of the *nolle prosequi* is attached as Exhibit D to Defendants' Motion.)

On May 17, 2004, Charles commenced this action *pro se*, three years after the *nolle prosequi*, and three years and six days after the decision vacating his conviction. *See* Paper #1 of the present action.

## ARGUMENT

**I.     THE DEFENDANTS HAVE LONG KNOWN
        OF THE FACTS RELATING TO THE STATUTE
        OF LIMITATIONS DEFENSE THEY ONLY NOW SEEK TO ASSERT**

As a preliminary matter, the Defendants have misrepresented to the Court their knowledge of the facts relating to the statute of limitations defense they now wish to assert.  A more accurate picture will make clear that the motion is tardy and prejudicial.

In extenuation of the tardiness of their motion, *see Ringuette v. City of Fall River,* 146 F.3d 1, 4 (1st Cir. 1998) (failing to plead affirmative defense in original answer ordinarily waives it), the Defendants claim that in answering they "relied" on Charles' Complaint for the date of Judge Rouse's decision.  *See* Motion ¶¶ 7-8.  This is extremely disingenuous of the Defendants.  Under Fed. R. Civ. P. 11(b), the Defendants are required to plead "to the best of [their] knowledge, information, and belief, formed after

an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).  In light of the

obvious discrepancy between the dates given in Paragraphs 1 and 66 of the *pro se*

Complaint, the Defendants were obligated to conduct a reasonable investigation of the

allegations before pleading to them.  They did not.  The purpose of responsive pleading is

obviously undermined when a party simply "relie[s] on" the allegations of the adverse

party.  *See* Motion ¶¶ 7-8.

　　　　Moreover, the Defendants fail to disclose to the Court that they had actual notice

of the date of Judge Rouse's decision, and even of the availability of a supposed statute

of limitations defense, as of about <u>October 15, 2004</u>.  On that date they were served with

copies of the motions to dismiss (Docket Papers #7 and #10) filed by their former

co-defendants, Charles Campo, Assistant District Attorney John Zanini, and the Office of

the District Attorney for the Suffolk County.  In the memoranda supporting the motions,

the correct date is given and a supposed statute of limitations argument is set out as

grounds for dismissal.  *See* Memorandum in Support of Motion of Defendant Charles

Campo to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket

Paper #9) at 20-23; Memorandum of Law in Support of The District Attorney

Defendants' Motion to Dismiss (Docket Paper #11) at 20-21.  Hence, it was *not* "[d]uring

the discovery period and subsequent to answering the complaint," Motion at ¶ 8, that

Bogdan and the City first learned of the facts needed to assert a supposed statute of

limitations defense.  A copy of the state court docket on which Bogdan and the City now

rely was attached to Charles Campo's memorandum and was also made part of a

supplemental appendix (Docket Paper #16) filed by the District Attorney defendants.

Thus, the present motion, coming one year after the defense should have been raised by the Defendants, is tardy and has prejudiced Charles by causing further unnecessary delay and expense.

## II.    A MOTION TO AMEND A PLEADING MAY PROPERLY BE DENIED ON GROUNDS OF FUTILITY

A motion for leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "the liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases." *Acosta-Mestre v. Hilton Int'l of P.R., Inc.,* 156 F.3d 49, 51 (1st Cir.1998). Futility of the proposed amendment is a "fully sufficient" reason for denying a motion to amend. *Hatch v. Dep't for Children, Youth and Their Families,* 274 F.3d 12, 19 (1st Cir. 2001). *See also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason-- such as . . . futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'").

As shown below, as a matter of law, the Defendants miscalculate the limitations period in this case, and thus the affirmative defense of statute of limitations that they seek to add to their answers is futile.

## III.    BECAUSE THE MAY 17, 2001 *NOLLE PROSEQUI* TRIGGERS THE ACCRUAL OF CHARLES' SECTION 1983 CLAIMS, NOT JUDGE ROUSE'S MAY 11, 2001 DECISION, THE COMPLAINT IS TIMELY COMMENCED

While the City and Bogdan do not expressly lay out the details of their supposed statute of limitations defense, the gist of it is obvious from their motion. They believe that May 11, 2001 marks the accrual of Charles' claims because that was the date when Judge Rouse vacated his conviction. From that starting point, they would conclude that the present complaint is untimely since it was filed on May 17, 2004, apparently six days

beyond the three-year limitations period given in G.L. c. 260 § 2A. In fact, for the reasons set forth below, Charles' claims accrued only when he was no longer at risk of being convicted by a prosecution tainted with civil rights violations. This occurred only on *May 17, 2004*, when the *nolle prosequi* was filed and the Commonwealth abandoned any further prosecution of Charles for the 1980 crimes. Hence, as a matter of law, this Section 1983 action is not time-barred, and the Defendants' intended statute of limitations defense would be futile.

> **A.    Federal Law Governs Accrual Of The Section 1983 Claim, Which May Be Tolled By The Rule Enunciated In *Heck*.**

While the limitations period of three years for Charles' Section 1983 claim is taken from Massachusetts law, *see Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001); G.L. c. 260 § 2A, federal law determines the date of accrual, *see Rodriguez-Rivera v. Municipality of Caguas*, 354 F.3d 91, 96 (1st Cir. 2004). Under federal law, a Section 1983 claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis for his action. *See id*. 96-97.

However, the limitations period may be tolled. The Supreme Court has held that if, in order to prevail in a case for money damages under Section 1983, a plaintiff would have to prove that his injuries were caused by unlawful conduct that renders his conviction or sentence invalid, then his Section 1983 claim does not accrue "unless and until" his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an appropriate state tribunal, or called into question by issuance of a federal habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 486-487, 489 (1994). The Supreme Court enunciated this rule in order to prevent a civil action

brought under Section 1983 from being used to collaterally attack a existing criminal judgment.  *See id*. at 484-485.

While *Heck* established that the accrual of a Section 1983 claim is tolled in the face of an existing criminal judgment, at least seven federal courts of appeal have held that, consistent with *Heck*, a Section 1983 claim does not accrue when the plaintiff faces *even a potential prosecution* based on civil violations that form the basis of his claim. *See Covington v. New York,* 171 F.3d 117, 124 (2nd Cir. 1999); *Smith v. Holtz,* 87 F.3d 108, 113 (3rd Cir. 1996); *Shamaeizadeh v. Cunigan,* 182 F.3d 391, 398 (6th Cir. 1999); *Washington v. Summerville,* 127 F.3d 552, 555-56 (7th Cir. 1997); *Harvey v. Waldron,* 210 F.3d 1008, 1013-16 (9th Cir. 2000); *Beck v. City of Muskogee Police Dep't,* 195 F.3d 553, 557 (10th Cir. 1999); *Uboh v. Reno,* 141 F.3d 1000, 1006-1007 (11th Cir. 1998).

As the Third Circuit has noted, *Heck's* concerns about a Section 1983 action being used to collaterally attack a subsisting conviction apply with equal force to Section 1983 claims that, if successful, would necessarily imply the invalidity of a *potential* conviction on a criminal charges.

> If such a [Section 1983] claim could proceed while criminal proceedings are ongoing, there would be a potential for inconsistent determinations in the civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit.  In terms of the conflicts which *Heck* sought to avoid, there is no difference between a conviction which is outstanding at the time the civil rights action is instituted and a *potential conviction* on a pending charge that may be entered at some point thereafter.

*Smith,* 87 F.3d at 113 (emphasis added).

As set forth below, the application of *Heck's* principles to the present case reveals Defendants' statute of limitations defense to be futile.

**B.    Charles' Section 1983 Claims Accrued Only Upon The Filing Of The *Nolle Prosequi* On May 17, 2001.**

According to the rationale of *Heck*, Charles' Section 1983 claim could not accrue until he was out of danger of being criminally convicted a second time in a prosecution still filled with civil rights violations.  Only the May 17, 2001 *nolle prosequi* removed, finally and forever, the possibility of criminal prosecution and conviction based on tainted evidence and procedures.  It was on that day that Charles' claims accrued.

In her May 11, 2001 decision, Judge Rouse expressly rested her ruling on only two issues (*i.e.*, the DNA evidence and the withheld exculpatory statement).  *See* 5/11/01 Order at 1, 19.  Thus, at best, her decision left Charles facing a new trial based on a prosecution in which only two out of many civil rights violations had been addressed.  As of May 11, 2001, a prosecution apparently awaited Charles that was still rife with civil rights violations like false testimony, falsified identifications, suppressed or destroyed evidence, *etc.*, much as in the first trial.  The words used by the District Attorney in the *nolle prosequi* confirm that the prosecution still facing Charles after May 11, 2001 would have been as much like the one in 1984 as the District Attorney could make it.  Even when finally abandoning its case against Charles, the District Attorney brushed aside the significance of the DNA evidence as found by Judge Rouse and expressed the belief that the rest of the case against Charles remained "convincing of his guilt":

> The absence of Charles' DNA does not mean he is not the rapist as the facts presented at trial are otherwise convincing of his guilt.

*See Nolle Prosequi* at 1, attached as Exhibit D to Motion.  As discussed above, under the rationale of *Heck* the claims Charles asserts in this action could not have accrued while he faced this kind of potential prosecution in the retrial Judge Rouse granted.  The May

11, 2001 decision vacating his conviction cannot, therefore, provide the accrual date of Charles' Section 1983 claim.

Additional light is shed on the accrual date of Charles' Section 1983 claim by a case decided by the U.S. Court of Appeals for the Tenth Circuit, *Robinson v. Maruffi*, 895 F.2d 649 (10th Cir. 1990).[2]  Robinson brought a Section 1983 action, alleging a conspiracy to frame him for murder by using perjured testimony against him.  *See Robinson*, 895 F.2d at 650-651.  After he had been convicted in his first criminal trial as a result of the prosecution's use of perjured testimony, the conviction was reversed for reasons unrelated to the perjury.  *See id*. at 653.  Robinson was then put on trial a second time.  Again, the case against him relied on perjured testimony, but at trial his attorney was able to expose the fact, and Robinson was acquitted.  *See id*.  Based on these facts, the Tenth Circuit held that Robinson's Section 1983 claims could not have accrued as long as he remained subject to "serious charges" and the prosecution's continued use of perjured testimony against him.  *See id*. at 655.  Since its reversal of his conviction did *not* put an end to the perjury, the Tenth Circuit held that it was only with his acquittal in the second trial that the clock started on his Section 1983 claims.  *See id*. at 654.

On May 11, 2001, Charles found himself in a situation like that of Robinson. After court decisions vacating their convictions and granting a new trial, both Charles and Robinson remained subject to potential prosecutions based on the unlawful evidence and procedures that would form the basis of their later Section 1983 claims.  For this reason the Tenth Circuit declined to find that Robinson's claim accrued automatically when his conviction was invalidated.  As the Third Circuit observed, "In terms of the conflicts

---

[2] Though *Robinson* was decided before *Heck*, the Tenth Circuit has made an express finding that it is consistent with the Supreme Court case.  *See Smith v. Gonsalves*, 222 F.3d 1220, 1223 (10th 2000).

which *Heck* sought to avoid, there is no difference between a conviction which is outstanding at the time the civil rights action is instituted and a *potential conviction* on a pending charge that may be entered at some point thereafter." *Smith,* 87 F.3d at 113 (emphasis added). For exactly the same reasons, this Court should now reject the position that Charles' claim accrued on May 11, 2001, when the state court vacated his conviction and granted him a new trial. Instead, the Court should find that it was only on *May 17, 2001*, when the District Attorney filed the *nolle prosequi* and abandoned all prosecution of Charles based on improper evidence and procedures, that the Section 1983 claims accrued.

If, as demonstrated here, the clock started running on Charles' Section 1983 claims on May 17, 2001, then the claims were timely under G.L. c. 260 § 2A when they were filed on May 17, 2004. The Defendants' proposed addition of a statute of limitations defense must therefore be deemed futile as a matter of law, and leave to amend should therefore be denied.

## IV.  ALL OF CHARLES' CLAIMS ACCRUED NO EARLIER THAN MAY 17, 2001

What is true of the Section 1983 claim is also true for the other claims in the Complaint. They, too, accrued no earlier than upon the filing of the *nolle prosequi*, and they are all timely.

Charles' case falls under an exception carved out by the First Circuit for conspiracy claims where the "malicious prosecution conspiracy began before the victim's arrest and encompassed it." *See Nieves*, 241 F.3d at 52, *citing Robinson v. Maruffi*, 895 F.2d 649 (10th Cir. 1990). The allegations of the Complaint clearly support the application of this exception here.

>   Mr. Charles wrongful conviction was not accidental but resulted directly
>   from unconstitutional and tortuous efforts by the defendants police
>   officers, police criminalist, and their respective supervisors; . . . .
>
>   ****
>
>   [Defendants Keough, Mulligan, Hanley Johnson, Zanini and Campo]
>   targeted Mr. Charles before the actual crime occurred and conducted the
>   initial photo array by showing [the victims] photographs Defendant
>   Keough had in his possession before the crime that looked nothing like
>   Mr. Charles['] appearance in 1980 when the crimes were committed.

Complaint ¶¶ 2, 78A; *see also* ¶¶ 25-32, 89-92 (conspiracy count).  As an exceptional

case like *Robinson*, *all* of the claims in Charles' Complaint fall under the *Heck* rule.  *See*

*Nieves*, 241 F.3d at 52 (for *Robinson* type of case, statute of limitations runs on all acts

only when criminal proceeding terminated in plaintiff's favor).  Thus, all of his claims are

timely.  For this additional reason, leave to amend should be denied as futile.

## CONCLUSION

For the reasons set forth above, the Court should deny the motion on grounds of

futility.

ULYSSES RODRIGUEZ
CHARLES,

By his attorneys,


  /s/ Kevin J. O'Connor
Kevin J. O'Connor (BBO# 555250)
Mayeti Gametchu (BBO# 647787)
John Pagliaro (BBO# 634483)
PARAGON LAW GROUP, LLP
184 High Street
Boston, MA 02110
DATED: October 14, 2005        Tel. (617) 399-7950

11

## <u>CERTIFICATE OF SERVICE</u>

   I, Mayeti Gametchu, hereby certify that, on October 14, 2005, I caused a true and correct copy of the foregoing document to be served by first class mail upon Thomas Donohue, Assistant Corporation Counsel, City of Boston Law Dept., City Hall, 615, Boston, MA 02201, counsel for Defendants the City of Boston and Stanley Bogdan.

           _/s/ Mayeti Gametchu
           Mayeti Gametchu

0038-002-102186.doc