Opposition To The Defendants' Motion For Leave To Amend Their Answers
*Charles v. City of Boston et al.*, C.A. No. 04-10986-NG

# EXHIBIT A

EXHIBIT ●

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CRIMINAL ACTION
NOS. 035492-45
035181-84

COMMONWEALTH

vs.

RODRIGUEZ CHARLES

## MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANT'S MOTION FOR NEW TRIAL

The defendant, Rodriguez Charles, was convicted in 1984 of entering a dwelling, while armed, with intent to commit a felony; three counts of unlawful confinement; four counts of aggravated rape; and robbery.  The defendant now moves for a new trial pursuant to Mass. R. Crim. P. 30(b) on several grounds, including newly discovered DNA evidence, unavailable at the time of his trial, which excludes him as the donor of any biological evidence found at the scene. For the reasons set forth herein, specifically, the newly discovered DNA evidence and the Commonwealth's failure to disclose a potentially exculpatory statement by one of the victims, the defendant's motion is ALLOWED.

## PROCEDURAL HISTORY

Following his conviction on February 14, 1984, the defendant was sentenced to four consecutive terms of eighteen to twenty years at the Massachusetts Correctional Institute at Walpole for the aggravated rapes.  In addition, the defendant was sentenced to eighteen to twenty years for robbery, and eighteen to twenty years for entering a dwelling armed and making an assault with intent to commit a felony, both terms to run concurrently with his first sentence for aggravated rape. Finally, for each conviction of unlawful confinement, the defendant was sentenced to a term of nine to ten years to run concurrently with the first sentence for aggravated rape.

The defendant appealed his conviction on the grounds of improper denial of his motion to suppress, improper admission of certain evidence, improper jury instructions, failure to conduct a voir dire or give a curative instruction regarding the fact that jurors had seen the defendant in shackles, prosecutorial misconduct, and ineffective assistance of counsel.[1]  The Supreme Judicial Court affirmed the defendant's convictions in <u>Commonwealth v. Charles</u>, 397 Mass. 1 (1986). Of relevance to this motion, the defendant argued on appeal that the trial judge erred in failing to

---

[1]The defendant was represented by different counsel on appeal.

2

give a requested jury instruction which highlighted the difficulty of an individual identifying members of a race different from his own. Id. at 8 & n. 10. The Supreme Judicial Court held that the judge's instruction on identification was proper and it was within the trial judge's discretion to deny the defendant's request. Id. at 8.

Subsequently, the defendant filed his first motion for a new trial alleging prosecutorial misconduct, loss or destruction of potentially exculpatory evidence, prejudicial error in the Commonwealth's closing argument, and ineffective assistance of counsel.[2]  This court (Connolly, J.) denied the motion on April 17, 1996. The defendant argued that he was entitled to a new trial because the Commonwealth lost or destroyed potentially exculpatory evidence which included vaginal swabs that contained sperm samples found in the victims. The court disagreed, concluding that there was no evidence that the Commonwealth ever had the sperm samples in its possession and, therefore, could not be charged with failing to preserve the samples for testing.

The defendant appealed the court's denial of his motion for a new trial to the Appeals Court. The Appeals Court has stayed that appeal pending the outcome of the current motion for new trial.

---

[2]The defendant was represented by the same counsel who represented him on the direct appeal.

3

## BACKGROUND

The facts of the case are set out in detail in <u>Commonwealth</u> v. <u>Charles</u>, 397 Mass. 1, 3-5 (1986). Here, the court will recite only those facts necessary to decide this motion. On December 8, 1980, three roommates, Karen, Shannon, and Valerie,[3] were raped in their apartment in Brighton by a single assailant described as a thin black man, five feet nine inches tall, with "scruffy" black hair and a beard, wearing a tan trench coat. The assailant raped Karen and Shannon on Shannon's bed. Shannon, who was wearing a maroon bathrobe at the time, was raped vaginally, and Karen was raped both vaginally and anally. The assailant raped Valerie orally.

The sheet from Shannon's bed and the robe worn by Shannon during the assault were tested for physical evidence, and stains were found on each. At trial, the Commonwealth's expert, Stanley Bogdan (Bogdan), a senior criminalist qualified as an expert in the field of serology, testified that microscopic tests performed on these stains did not detect the presence of any sperm cells. An absorption-inhibition test performed by Bogdan indicated that the stains were from a Group O secretor. The jury heard evidence that the defendant was a Group B secretor, Shannon was a Group O secretor, and Karen was a Group O non-secretor. In addition, Shannon testified that the stain found on her bathrobe and a stain

---

[3]These are the names by which the Supreme Judicial Court referred to the victims. See <u>Commonwealth</u> v. <u>Charles</u>, <u>supra</u> at 3.

4

on her bed sheet existed prior to the rape.

Forensic serologist John Cope Abbott (Abbott) also testified that he performed forensic tests on the sheet and robe, and that these tests did not indicate the presence of spermatozoa on any of the areas of the sheet and robe he examined. Abbott testified that the stains on the robe and the sheet were not seminal fluid or not consistent with seminal fluid.

Shannon and Valerie testified that the rapist did not ejaculate, while Karen testified that she did not know whether or not he had ejaculated. Vaginal swabs had been taken from Shannon and Karen at Beth Israel Deaconess Hospital on the day of the assault, but the swabs were apparently misplaced. The Commonwealth and defense counsel entered into a stipulation that the vaginal swabs taken from Shannon and Karen were examined microscopically and tests indicated that no sperm was found.

The jury also heard evidence that the day following the assaults, Shannon and Karen identified the defendant after viewing approximately one hundred and fifty photographs of black males between the ages of twenty and thirty. Valerie was not able to select any photograph as the assailant. At the probable cause hearing on June 1, 1981, Karen and Shannon testified that the assailant had a distinctive accent. The defendant is from Trinidad, West Indies. On November 3, 1983, all three victims attended a

lineup at the Boston police headquarters.[4]    Shannon and Valerie were unable to identify the assailant.    Karen did not make an identification during the lineup, stating that it had been too long since the incident.    However, immediately after the lineup, Karen told the prosecutor that she thought the assailant was No. 4 (the defendant).    Finally, Karen identified the defendant, who was seated among the spectators, at trial.

Subsequent to the defendant's trial, the defendant learned that Shannon and Karen's medical records revealed that spermatozoa was detected on the vaginal swabs. In addition, the medical records revealed that at least two of the complainants had had consensual sexual intercourse anywhere from three days to two months before the incident.    To this date, the vaginal swabs taken from Shannon and Karen have not been located by the Beth Israel Deaconess Hospital.

In 1998, after the court's denial of the defendant's first motion for a new trial,    the defendant arranged, with the cooperation of the Commonwealth, to have cuttings of evidence found at the crime scene analyzed for the presence of DNA by Cellmark Diagnostics (Cellmark).    Cellmark analyzed the cuttings and found the presence of two sperm fractions, one found on the robe and one found on the sheet.    The two sperm fractions did not match each

---

[4]The defendant did not appear at his arraignment and was not arrested on a default warrant until 1983.

other and thus were donated by two different men. Cellmark compared the DNA of the sperm fractions to DNA obtained from the defendant and determined that they did not match. The defendant was thus excluded as the source of the sperm fractions.

In addition, as a result of this court's order, the defendant was granted access to the Commonwealth's files in this case. Notes taken by the district attorney revealed that Valerie, who was orally raped, stated that she believed that the assailant was circumcised. The defendant is not circumcised. This potentially exculpatory evidence had not been previously disclosed to the defendant.

## DISCUSSION

A motion for a new trial pursuant to Mass. R. Crim. P. 30(b) may be granted if it appears that justice may not have been done. Commonwealth v. Pike, 431 Mass. 212, 218 (2000); Commonwealth v. Stewart, 383 Mass. 253, 257 (1981). The granting of a motion for a new trial is addressed to the sound discretion of the judge. Commonwealth v. Moore, 408 Mass. 117, 125 (1990); Commonwealth v. Stewart, supra at 257.

## I. Newly Discovered DNA Evidence

The defendant first contends that the sperm found on the robe and sheet and the DNA tests excluding him as the source of that

sperm constitutes newly discovered evidence entitling him to a new trial.    The Commonwealth argues that this court should not even consider the DNA evidence in its determination of whether the defendant is entitled to a new trial because such evidence is precluded at trial under the rape-shield statute, which makes inadmissible specific instances of a victim's sexual conduct, except "evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim" which may be admissible. G.L. c. 233, § 21B (1998).

The Commonwealth argues that the DNA evidence is inadmissible under G.L. c. 233, § 21B because it reveals the sperm of two different men and is thus evidence of the victim's sexual conduct. However, the defendant is not offering the DNA evidence to show the victims' sexual behavior; rather, he seeks to show that someone else, not he, assaulted the victims.    "No positive of law other than normal considerations of relevancy stands in the way of the admission of misidentification evidence." Commonwealth v. Cardoza, 29 Mass. App. Ct. 645, 649 (1990), rev. den., 409 Mass. 1103 (1991).    "When a defendant offers exculpatory evidence regarding misidentification, prejudice ceases to be a factor, and relevance should function as the admissibility standard."    Id. (concluding that the defendant's proffer of a pubic hair found on the victim that was not from the defendant, to show that another person

8

attacked the victim, did not fall under the rape shield statute and was admissible). Compare <u>Commonwealth</u> v. <u>Martin</u>, 424 Mass. 301, 313 (1997) (concluding that it was within the judge's discretion to exclude under G.L. c. 233, § 21B evidence of semen stains not belonging to the defendant on the victim's bedspread, where identity was not an issue because the defendant was the victim's former lover). Therefore, the defendant may properly offer and this court may consider the DNA evidence as part of the motion for new trial.

A defendant seeking a new trial on the basis of newly discovered evidence must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction. <u>Commonwealth</u> v. <u>Pike</u>, <u>supra</u> at 218; <u>Commonwealth</u> v. <u>Truong</u>, 34 Mass. App. Ct. 668, 673, rev. den.; 416 Mass. 1104 (1993). Newly discovered evidence is evidence that was unavailable at the time of trial and could not have been discovered with reasonable diligence. <u>Commonwealth</u> v. <u>LeFave</u>, 430 Mass. 169, 176 (1999). In addition, the newly discovered evidence must be credible. <u>Commonwealth</u> v. <u>Pike</u>, <u>supra</u> at 218.

The issue in this case is not whether the DNA evidence was available at the time of the defendant's trial or whether the DNA evidence is credible. It is undisputed that DNA analysis was not available at the time of the defendant's trial. Massachusetts did not accept as reliable the PCR-based method of DNA analysis until

9

1997. See Commonwealth v. Vao Sok, 425 Mass. 787, 799-802 (1997).
Further, the Commonwealth does not challenge the credibility of
the test results. Cellmark is a reputable facility which has been
used by the Commonwealth in other cases. See Commonwealth v.
Rosier, 425 Mass. 807, 809 (1997). Rather, the pivotal issue is
the probative value of the new DNA evidence.

To warrant a new trial, newly discovered evidence must be
material and carry a measure of strength in support of the
defendant's position. Commonwealth v. Pike, supra at 218;
Commonwealth v. Moore, supra at 126. Thus, newly discovered
evidence that is cumulative of evidence admitted at trial tends to
carry less weight than new evidence that is different in kind.
Commonwealth v. Moore, supra at 126; Commonwealth v. Grace, 397
Mass. 303, 306 (1986). The judge must find that there is a
substantial risk that the jury would have reached a different
conclusion had the evidence been admitted at trial. Commonwealth v.
Lo, 428 Mass. 45, 53 (1998); Commonwealth v. Truong, supra at 673.
The judge need not conclude that the verdict would have been
different; rather, the issue is whether the new evidence would
probably have been a real factor in the jury's deliberations.
Commonwealth v. Moore, supra at 126; Commonwealth v. Ramirez, 46
Mass. App. Ct. 925, 926 (1999).

The Commonwealth argues that the DNA evidence at issue here is
merely cumulative and corroborative of Bogdan's testimony that

microscopic testing revealed that the defendant was not the donor of the stains found on the robe and sheet. However, the newly discovered DNA evidence is different in kind from the microscopic evidence presented at trial for two reasons. First, PCR-based DNA evidence is highly reliable and is likely to be more persuasive to a jury than the microscopic evidence. See Commonwealth v. Vao Sok, supra at 799-803.

More importantly, the DNA evidence not only corroborates the microscopic evidence that the defendant was not the source of the stains on the robe and sheet but also rebuts the Commonwealth's theory at trial that the assailant left no physical evidence at the crime scene. This theory, bolstered by Bogdan's testimony that no sperm was detected on the robe and sheet, the victims' testimony that the assailant did not ejaculate, and the parties' stipulation that vaginal and anal swabs taken from the victims did not reveal the presence of sperm, was critical in reconciling the victims' identification of the defendant as the assailant with the fact that scientific tests excluded the defendant as the source of the biological stains at the scene. Thus, the newly discovered DNA evidence, which casts doubt upon the Commonwealth's theory at trial, is not merely cumulative of the evidence at trial. Compare Commonwealth v. LeFave, supra at 181 (concluding that an expert's proposed testimony, based on recent research, on the unreliability of child witnesses in sexual abuse cases was merely corroborative

of expert testimony that was or could have been presented at the time of trial, and therefore, was not remarkably different in kind); Commonwealth v. Lo, supra at 52-53 (denying a motion for a new trial where newly discovered evidence of an expert witness's bias was cumulative of other evidence of bias, and that witness was not the only expert who testified that the defendant was sane).

The presence at the crime scene of sperm from two different men, neither of which was the defendant, is exculpatory and would probably have been a real factor in the jury's deliberations. Compare Commonwealth v. Fitzgerald, 402 Mass. 517, 521 (1988) (granting a new trial in a rape case based on a newly discovered billing record that established that the defendant had undergone a vasectomy and thus could not have produced the sperm cells found at the scene, despite the victim's identification of him as the rapist).

In reaching this conclusion, this court notes that the probative value of newly discovered evidence depends largely on the strength of the case against the defendant. Commonwealth v. Moore, supra at 126; Commonwealth v. Truong, supra at 675. The case against the defendant was not particularly strong, with only one victim consistently able to identify him as the assailant, another able to identify him immediately after the crime but not at the time of trial, and the third never able to identify him. Our courts have recognized that studies tend to demonstrate that

12

people's identification of others of the same race  is more reliable than people's identification of others of a different race. See Commonwealth v. Jean-Jacques, 47 Mass. App. Ct. 909, 910, rev. den., 430 Mass. 1105 (1999) (noting that whether to give an instruction on cross-racial identification rests in the discretion of the judge). Further, no physical or other circumstantial evidence tied the defendant to the crime.

Given the relatively weak case against the defendant, newly discovered DNA evidence which excludes him as the source of the biological stains on the victim's robe and sheet would likely have been a real factor in the jury's deliberations.  Further, because the new evidence casts doubt upon the Commonwealth's theory that the assailant did not ejaculate and left no physical evidence at the scene, and establishes the presence of the sperm of two different men on the robe and sheet, there is a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial. See Commonwealth v. Truong, supra at 674-675 (concluding that newly discovered evidence identifying a fingerprint which did not match the co-defendant's as that of a woman alleged to have been involved in the crime was material, where the case against the defendant was not a powerful one). Compare Commonwealth v. Davis, 410 Mass. 680, 682 (1991) (noting, in the context of a defendant's post-conviction request for funds for scientific testing, that DNA evidence which showed that hairs in

the victim's hand did not belong to the defendant was merely cumulative of other evidence showing that the hair was not the defendant's, in a case where the Commonwealth's evidence included a confession by the defendant[5]); Commonwealth v. Moore, supra at 127 (denying a new trial based on newly discovered evidence supporting the defendant's theory that someone else committed the crime where the evidence against the defendant at trial was powerful).    Thus, this court concludes that the newly discovered DNA evidence is material and carries a measure of strength in support of the defendant's position, entitling him to a new trial.

## II. Failure to Disclose Valerie's Statement

The defendant further contends that he is entitled to a new trial because the Commonwealth failed to disclose Valerie's statement that she believed the assailant was circumcised.  Due process of law requires that the government disclose to a criminal defendant favorable evidence in its possession that could materially aid the defense against the pending charges. Commonwealth v. Hill, 432 Mass. 704, 715 (2000); Commonwealth v. Tucceri, 412 Mass. 401, 404-405 (1992).  Moreover, this duty to disclose exculpatory evidence exists regardless of any ineffective assistance of defense counsel with respect to obtaining the evidence. Commonwealth v. Tucceri, supra at 410.  The failure of

---

[5]See Commonwealth v. Davis, 403 Mass. 575, 579-581 (1988).

14

the prosecutor to furnish exculpatory evidence in his possession
requires a new trial if the evidence was material, i.e., there is
a substantial risk that the jury would have reached a different
conclusion if the evidence had been admitted at trial. Id. at 409-
413; Commonwealth v. Bennett, 43 Mass. App. Ct. 154, 158 (1997).
Where the prosecutor has denied the defendant specifically
requested exculpatory evidence, the defendant need only demonstrate
that a substantial basis exists for claiming prejudice from the
non-disclosure. Commonwealth v. Simmons, 417 Mass. 60, 73 (1994).

In order to prevail, the defendant must establish that the
evidence existed, that it tended to exculpate him, that the
prosecution failed to disclose the evidence, and that it was
material. Commonwealth v. Schand, 420 Mass. 783, 787 (1995). Prior
to trial, the defendant specifically requested that the prosecution
furnish all statements of the Commonwealth's witnesses. It is
undisputed that the prosecutor's note concerning Valerie's
statement existed at the time of trial, yet the statement was not
disclosed. Valerie's statement that she believed her assailant to
be circumcised tends to negate the guilt of the defendant, who is
not circumcised, and is thus exculpatory. See Commonwealth v.
Gallarelli, 399 Mass. 17, 20 (1987).

Given that the defendant's sole defense was misidentification
and the only evidence against him was the victims' identification
of him as the assailant, the non-disclosure of Valerie's statement

15

constitutes a substantial basis for claiming prejudice. See Commonwealth v. Tucceri, supra at 410 (granting a new trial based on the commonwealth's failure to disclose a photograph showing that the defendant had a beard when arrested minutes after a rape, where the only contested issue at trial was the identity of the assailant, and the victim testified that the assailant was clean-shaven). Evidence that goes directly to the defendant's participation in the crime is clearly material. Commonwealth v. Vaughn, 32 Mass. App. Ct. 435, 439, rev. den., 413 Mass. 1104 (1992). Further, even under the more stringent standard applied to non-specific requests for exculpatory evidence, Valerie's statement would have been a real factor in the jury's deliberations and there is a substantial risk that the jury would have reached a different conclusion if the evidence had been admitted at trial. Consequently, the defendant is entitled to a new trial.

III. **Issues Relating to the Lost Vaginal Swabs**

Finally, the defendant argues that the newly discovered DNA evidence makes it apparent that the vaginal swabs were potentially exculpatory and material to his defense. The defendant thus argues that the charges must be dismissed because he was prejudiced by the loss or destruction of the swabs. This is precisely the same argument that was considered and rejected by the court in the defendant's prior motion for a new trial. Judge Connolly reasoned that "there is no indication that the Commonwealth ever had such

16

samples in their possession and, therefore, the Commonwealth cannot
be charged with failing to preserve the samples for testing."
Generally, the defendant cannot raise issues in a motion for a new
trial that have already been raised and addressed, or could have
been raised, on direct appeal or in an earlier motion for a new
trial. Commonwealth v. Watson, 409 Mass. 110, 112 (1991), citing
Commonwealth v. Harrington, 379 Mass. 446, 449 (1980). This court
declines to revisit the issue of whether the Commonwealth was
culpable for the loss of the vaginal swabs.

However, the defendant's supplemental motion further contends
that the prosecutor's failure to disclose the medical records
indicating the presence of sperm on the vaginal swabs requires a
new trial. Judge Connolly touched briefly on this issue in the
prior motion for a new trial, stating that because there was no
indication that the Commonwealth was ever in possession of the
sperm samples, the prosecutor had no duty to disclose them to
defense counsel. He further concluded that "[e]ven assuming that
the Commonwealth possessed these records, their non-disclosure is
not a sufficient basis to grant a new trial."

The court has discretion to rehear an issue that has already
been raised and addressed in an earlier motion for a new trial, but
such discretion should only be exercised in those extraordinary
cases where, upon sober reflection, it appears that a miscarriage
of justice might otherwise result. Commonwealth v. Gagliardi, 418

17

Mass. 562, 565 (1994); Commonwealth v. Watson, 409 Mass. 110, 112
(1991). Here, the defendant contends that the prosecutor's failure
to disclose the existence of the medical records indicating the
presence of sperm on the vaginal swabs takes on a new significance
in light of the newly discovered DNA evidence. This court agrees,
and therefore will consider whether the failure to disclose the
medical records warrants a new trial.

In order to prevail on a motion for a new trial on this basis,
the defendant must establish that the evidence existed, that it
tended to exculpate him, that the prosecution failed to disclose
the evidence, and that it was material. Commonwealth v. Schand,
supra at 787. It is undisputed that the medical records, which are
dated December 8, 1980, existed at the time of trial.    Further,
the presence of sperm on the vaginal swabs is exculpatory in that
it casts doubt on the Commonwealth's theory at trial that the
assailant did not ejaculate and left no physical evidence at the
crime scene, a theory which was critical in reconciling the
victims' identification of the defendant with the fact that
scientific tests excluded him as the source of the biological
stains at the scene.

On the record before this court, however, it is unclear
whether the prosecution was in fact aware of the medical records
yet failed to disclose them to the defendant. If the defendant
could establish this to be the case, it would furnish yet another

ground for a new trial, as there is a substantial risk that the jury would have reached a different conclusion if the presence of sperm on the vaginal swabs taken from the victims had been in evidence at trial. See <u>Commonwealth</u> v. <u>Moore</u>, <u>supra</u> at 126; <u>Commonwealth</u> v. <u>Truong</u>, <u>supra</u> at 675 (both noting that the importance of newly discovered evidence depends on the strength of the case against the defendant). Given that the defendant has failed to meet his burden of showing that the prosecution failed to disclose the evidence, this court does not rely on the vaginal swab evidence as an independent basis for granting the motion for a new trial.

Therefore, because the newly discovered DNA evidence is exculpatory and would likely have been a real factor in the jury's deliberations, and because the Commonwealth failed to disclose Valerie's potentially exculpatory statement that she believed the rapist was circumcised, this court is persuaded that justice may not have been done in this case.[6] Consequently, the court in its discretion concludes that the defendant is entitled to a new trial.

---

[6]Given this court's resolution of these issues, it is not necessary to address the defendant's remaining arguments with respect to ineffective assistance of counsel for failure to appeal the sufficiency of the evidence, the prosecutor's failure to disclose a prior inconsistent statement by Shannon concerning the stains, and the recent discovery that Shannon filed a civil lawsuit prior to the criminal trial. Finally, this court will not revisit the trial judge's failure to give a cross-racial identification instruction, as that issue was squarely addressed in the defendant's direct appeal.

19

<u>ORDER</u>

For the foregoing reasons, it is hereby <u>ORDERED</u> that the defendant's motion for new trial be <u>ALLOWED</u>.

_Barbara J. Rouse_
Barbara J. Rouse
Justice of the Superior Court

DATED: May 11, 2001

Stephen Hrones and
Julie Boyden for the
defendant, Jack Zanini,
and Amanda Lovell for
the Commonwealth (Suffo.

20