UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ULYSSES RODRIGUEZ CHARLES,<br>          Plaintiff,<br>v.<br>CITY OF BOSTON<br>and<br>STANLEY BOGDAN, in his individual capacity; and<br>JOHN DOE and JANE DOE, supervisors in the Boston Police Department , in their individual capacity,<br>          Defendants. | C.A. No. 04-10986-NG |

## OPPOSITION TO THE DEFENDANTS' MOTION
## FOR JUDGMENT ON THE PLEADINGS

Plaintiff Ulysses R. Charles ("Charles") herewith submits his opposition to the motion of Defendants City of Boston ("City") and Stanley I. Bogdan ("Bogdan") made under Fed.R.Civ.P. 12(c) for judgment on the pleadings.

The Defendants' motion hinges entirely on one issue, *i.e.*, whether Charles' claims against the City and Bogdan accrued on May 11, 2001 or on May 17, 2001. If they accrued on May 17, 2001, they are timely.

The motion should be denied for the following reasons:

- Charles' conspiracy and *Brady* claims against Bogdan were tolled under *Heck v. Humphrey*, 512 U.S. 477 (1994), until May 17, 2001;
- The Defendants' arguments rest on a misreading or disregard of relevant precedent; and
- The Defendants offer no argument why the City is entitled to judgment.

For these reasons and the reasons set forth below, the Court should deny the motion in its entirety.

**STIPULATED FACTS**

On February 14, 1984, Charles was convicted of aggravated rape and other crimes.

On May 11, 2001, Charles' conviction was vacated and he was granted a new trial by the Suffolk Superior Court (Rouse, J.). The Superior Court's Order was filed on May 11, 2001, and Charles' attorneys were notified of the Court's order that same day. The Memorandum of Decision and Order is attached as Exhibit A.

On May 17, 2001, the Suffolk County District Attorney's Office filed a *nolle prosequi* dismissing the indictments.

On May 17, 2004, Charles filed this civil action.

**STANDARD FOR REVIEWING A MOTION UNDER FED.R.CIV.P. 12(c)**

The standard for evaluating a motion for judgment on the pleadings is the same as the standard for evaluating a Rule 12(b)(6) motion to dismiss. *See Aventis Pharma Deutschland GmbH v. Cobalt Pharmaceuticals, Inc*., 355 F.Supp.2d 586, 591 (D. Mass. 2005). A motion for judgment on the pleadings may be granted only if it appears beyond doubt that the plaintiff can prove no facts in support of his claim for relief. *See id*. A court may consider only the information and materials contained in the pleadings, accepting as true all well-pleaded facts in the complaint and drawing all reasonable inferences in favor of plaintiff. *See id.*

**ARGUMENT**

I.  **A SECTION 1983 CLAIM MAY BE TOLLED BY THE RULE ENUNCIATED IN *HECK***

While the limitations period of three years for Charles' Section 1983 claim is taken from Massachusetts law, *see Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001),

2

federal law determines the date of accrual, *see Rodriguez-Rivera v. Municipality of Caguas*, 354 F.3d 91, 96 (1st Cir. 2004). Under federal law, a Section 1983 claim generally accrues when the plaintiff knows or has reason to know of the injury which forms the basis for his action. *See id*. at 96-97.

However, the limitations period may be tolled. The Supreme Court has held that if, in order to prevail in a case for money damages under Section 1983, a plaintiff would have to prove that his injuries were caused by unlawful conduct that renders his conviction or sentence invalid, then his Section 1983 claim does not accrue "unless and until" his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an appropriate state tribunal, or called into question by issuance of a federal habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 486-487, 489 (1994). The Supreme Court enunciated this rule in order to prevent a civil action brought under Section 1983 from being used to collaterally attack an existing criminal judgment. *See id*. at 484-485.[1]

While *Heck* established that the accrual of a Section 1983 claim is tolled in the face of an existing criminal judgment, at least *seven* Courts of Appeals have held in published decisions that, consistent with *Heck*, a Section 1983 claim does not accrue while the plaintiff faces *even a potential prosecution* based on civil rights violations that would be part of his Section 1983 claim. *See Covington v. New York,* 171 F.3d 117, 124

---

[1] Since *Heck* deals entirely with the question of the accrual of Section 1983 claims, it is inexplicable that the Defendants say that the Supreme Court "declined to address the effect its holding would have on calculating the commencement of the statute of limitations of § 1983 actions." Memorandum of Law in Support of Defendants Stanley Bogdan and The City of Boston's Motion for Judgment on the Pleadings ("Mem.") at 4, citing *Heck*, 512 U.S. at 489-490. What the relevant passage in *Heck* actually says is that the Supreme Court's holding there obviates the need to address a *particular* statute of limitations issue "wrestled with by the Court of Appeals," *i.e*., whether a claim tolls pending exhaustion of state remedies. *See Heck*, 512 U.S. at 489.

3

(2nd Cir. 1999); *Smith v. Holtz,* 87 F.3d 108, 113 (3rd Cir. 1996); *Shamaeizadeh v. Cunigan,* 182 F.3d 391, 398 (6th Cir. 1999); *Washington v. Summerville,* 127 F.3d 552, 555-56 (7th Cir. 1997); *Harvey v. Waldron,* 210 F.3d 1008, 1013-16 (9th Cir. 2000); *Beck v. City of Muskogee Police Dep't,* 195 F.3d 553, 557 (10th Cir. 1999); *Uboh v. Reno*, 141 F.3d 1000, 1006-1007 (11th Cir. 1998). This position has been adopted in at least one district court decision in this circuit, *see Rodriguez v. Ellis*, Civil No. 01-90-P-C, 2001 U.S. Dist. Lexis 11031, at *8-9 (D. Me. May 16, 2001), attached as Exhibit B, and the First Circuit, in an unpublished *per curiam* opinion, has cited *Smith*, *supra*, for this very proposition, *see Chevere-Rodriguez v. Pagan,* No. 04-1491, 114 Fed. Appx. 412, 414, 2004 U.S. App. Lexis 24191, at *3 (1st Cir. November 19, 2004), attached as Exhibit C.[2]

As the Third Circuit has noted, *Heck's* concerns about a Section 1983 action being used to collaterally attack an existing conviction apply with equal force to claims that, if successful, would necessarily imply the invalidity of a *potential* conviction on criminal charges.

> If such a [Section 1983] claim could proceed while criminal proceedings are ongoing, there would be a potential for inconsistent determinations in the civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. In terms of the conflicts which *Heck* sought to avoid, there is no difference between a conviction which is outstanding at the time the civil rights action is instituted and a *potential conviction* on a pending charge that may be entered at some point thereafter.

*Smith,* 87 F.3d at 113 (emphasis added).

---

[2] Since the Defendants are unable to muster this kind of legal authority for their position, they are reduced to referring dismissively to the published opinions of seven federal appellate courts as "*seven cases* that *purportedly* stand for the proposition that section 1983 claims do not accrue when a plaintiff faces even a potential prosecution." Mem. at 6 (emphasis added).

4

As demonstrated below, the application of *Heck's* principles to the present case makes it clear that the Defendants' motion should be denied.

## II.  THE CONSPIRACY CLAIM AGAINST BOGDAN WAS TOLLED UNTIL MAY 17, 2001

Charles' Section 1983 conspiracy claim against Bogdan (Count III), if successful, would imply the invalidity of any existing conviction of Charles for the crimes as well as of any potential prosecution of him for them.  For that reason, under the holdings of the cases cited above, Charles' conspiracy claim could not have accrued until all prospect of a tainted prosecution disappeared, and that only occurred when the *nolle prosequi* was filed by the District Attorney on May 17, 2001.

### A.  Charles' Conspiracy Claim Was Tolled Until May 17, 2001 Because, Before That Date, It Would Have Called Into Question The Validity of Existing Criminal Proceedings Against Him.

The Complaint pleads a conspiracy undertaken by Bogdan and others to frame Charles, and it details a series of actions undertaken by law enforcement officials -- beginning *before* Charles' arrest -- that culminated in his wrongful conviction in 1984. *See* Complaint ¶¶2-3, 90.  *See also Charles v. City of Boston*, 365 F. Supp. 2d 82, 85, 89-90 (D. Mass. 2005).  Throughout the Complaint, Charles sets forth an abundance of facts about the overt actions taken against him, (*e.g.,* ¶¶ 46, 50-51, 91), the roles of various individuals in framing him (*e.g.,* ¶¶ 37, 79), the dates of the acts (*e.g.,* ¶¶ 45, 52), and the common goal of the conspirators (*e.g.,* ¶¶ 2, 78).

This Court has previously reviewed these allegations when denying Bogdan's motion to dismiss.  Since the standards for a Rule 12(b)(6) motion and a Rule 12(c) motion are the same in this regard, the Court's summary remains relevant.  As  this Court explained:

5

> According to Charles, BPD officers began harassing him in the mid-1970's, harassment which took the form of unjustified stops, searches, threats and false accusations of criminal wrongdoing.
>
> ***
>
> Following that decision, Charles claims that former BPD Officer John Mulligan went after him, targeting him and his family and friends for stops, searches, harassment and threats. Significantly, Charles alleges that defendant William Keogh, also a BPD officer at the time, harassed Charles only days before the 1980 crime occurred.
>
> ***
>
> In Count III of the Complaint, Charles alleges that all of the named defendants conspired, reached a mutual understanding and acted in concert to violate his civil rights. Bogdan is implicated in this conspiracy through the withholding of exculpatory physical evidence, which culminated in his false testimony at trial.
>
> ***
>
> But Charles' complaint-even as drafted by a layman-sets forth over seventy paragraphs of factual allegations, several of which specifically describe actions by Bogdan, detailing a series of mutually reinforcing actions undertaken by law enforcement before, during and after Charles' prosecution.

*Charles*, 365 F. Supp. 2d at 85, 89-90. Also relevant to the nature of the conspiracy alleged by Charles alleges are the following passages from the Complaint:

> Mr. Charles' wrongful conviction was not accidental but resulted directly from unconstitutional and tortious efforts by the defendants police officers, police criminalist [Bogdan], and their respective supervisors; and municipal policies, customs, and practices deliberately indifferent to civil rights.
>
> ***
>
> [Defendants Keough, Mulligan, Hanley Johnson, Zanini and Campo] targeted Mr. Charles *before* the actual crime occurred and conducted the initial photo array by showing [the victims] photographs Defendant Keough had in his possession before the crime that looked nothing like Mr. Charles['] appearance in 1980 when the crimes were committed.

Complaint ¶¶ 2, 78A (emphasis added); *see also* ¶¶ 25-32, 89-92 (conspiracy count).

Taken altogether, these allegations depict a broad conspiracy that antedates the particular civil rights violations that give rise to Charles' claims.

It is important to note that even after Judge Rouse's May 11, 2001 order vacating the conviction, Charles continued to face a prosecution tainted by this conspiracy. In her May 11, 2001 decision, Judge Rouse expressly rested her ruling on only two issues (*i.e.*, DNA evidence and an exculpatory statement that had been withheld from the defense). *See* Exhibit A at 1, 19. The words used by the District Attorney in the *nolle prosequi* confirm that the prosecution still facing Charles between May 11, 2001 and May 17, 2001 would have been as much like the 1984 prosecution as the District Attorney could make it. Grudgingly abandoning its case against Charles, the District Attorney brushed aside the significance of the DNA evidence as found by Judge Rouse, and emphasized its belief that the rest of the 1984 case against Charles remained "convincing of his guilt": "The absence of Charles' DNA does not mean he is not the rapist *as the facts presented at trial* are otherwise convincing of his guilt." *Nolle Prosequi* at 1 (emphasis added), attached as Exhibit D to Docket Paper #9.

Clearly, a Section 1983 claim based on the conspiracy Charles alleges could *not* have accrued as long as he faced a potential prosecution that, avowedly, would be a replay of the 1984 prosecution. The reason is simply that Charles' claim is predicated on his *innocence* and thus necessarily calls into question the validity of any prosecution or conviction of him for the crimes.

Under circumstances like these, a Section 1983 conspiracy claim is tolled under *Heck*. *See Rodriguez v. Carhart*, No. 95-1345, 1996 U.S. App. Lexis 304, at *2, 5 (1st Cir. January 10, 1996) (under *Heck*, conspiracy to procure conviction challenges underlying conviction), attached as Exhibit D; *Mitchell v. City of Boston*, 130 F. Supp. 2d 201, 208-209 (D. Mass. 2001) (§ 1983 conspiracy claim if successful would attack

validity of conviction; tolled under *Heck*); *Amaker v. Weiner*, 179 F.3d 48, 51-52 (2nd Cir. 1999) ("Each of plaintiff's causes of action here turns on the asserted existence of a conspiracy to frame plaintiff for murder, and thus deciding in his favor on any of them plainly would call into question the validity of his conviction."); *Simpson v. Rowan*, 73 F.3d 134, 135, 136 (7th Cir. 1995) (§ 1983 claim for conspiracy to secure conviction by unlawful acts necessarily would invalidate conviction, under *Heck*), *cert. denied*, 519 U.S. 833 (1996); *Guerrero v. Gates*, 357 F.3d 911, 916-917 (9th Cir. 2004) (§1983 claims of wrongful arrest, malicious prosecution, and conspiracy among city officials to bring false charges challenge validity of conviction under *Heck* because predicated on plaintiff's innocence); *Stocker v. Hood*, 927 F.Supp. 871, 873 (E.D. Pa. 1996) (§ 1983 claim of conspiracy to obtain wrongful conviction implies invalidity of conviction, under *Heck*).[3]

Thus, the conspiracy claim accrued only on May 17, 2001 when all criminal proceedings against Charles terminated, and the claim is timely asserted here.

### B.    Bogdan Misstates The Law Applicable To The Conspiracy Claim.

Bogdan's position is that Charles' conspiracy claim accrued at the time of his conviction in 1984 because that was when the "last overt act" of the alleged conspiracy occurred. From this supposed fact, he concludes that the claim expired three years later, in 1987. *See* Mem. at 7. Bogdan purports to find support for his position in *Nieves*, *see supra*, but his discussion represents a serious misreading of the case.

---

[3] Courts also hold that other types of civil rights conspiracy claims are subject to *Heck*. *See, e.g., McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1098 n. 4 (9th Cir. 2004) (agreeing with 2nd Cir. and 6th Cir. that *Heck* applies equally to claims for civil rights conspiracy made under § 1985); *Hazel v. Reno*, 20 F.Supp.2d 21, 24 (D.D.C. 1998.) (*Bivens* claim for extra-judicial conspiracy to suppress exculpatory evidence subject to *Heck* because centers around validity of conviction).

The plaintiffs in *Nieves* tried to salvage two Section 1983 claims (false arrest and use of excessive force) that the district court had dismissed as time-barred. They argued on appeal that "the entire panoply of events that began on the evening of the arrest and ended with the completion of their criminal trial constituted a single, ongoing conspiracy." *Nieves*, 241 F.3d at 49. They claimed that the limitations period did not start until "*the last overt act* incident to that conspiracy—the officers' allegedly false testimony at the criminal trial." *Id*. (emphasis added).

In rejecting the argument, the First Circuit could not have been clearer: "In [*Hernandez Jimenez v. Calero Toledo*, 576 F.2d 402, 404 (1st Cir.1978)], we *explicitly repudiated* the notion, loudly bruited by the appellants in this case, that the statute of limitations for civil conspiracy should run from the date of *the last overt act* that causes damage to the plaintiff." *Id.* at 51 (emphasis added). Yet, in his argument Bogdan represents the First Circuit as endorsing precisely the view it "explicitly repudiated." *See* Mem. at 7 ("In [*Nieves*], the First Circuit held that the statute of limitations on a Section 1983 claim for conspiracy runs from the date of the last overt act that causes damage to the plaintiff."), citing *Nieves*, 241 F.3d at 51. Take away his misstatement of the law and Bogdan's argument evaporates.

Bogdan also gets *Nieves* crucially wrong with respect to the issue of tolling. He says that the *Nieves* court "specifically rejected the argument that under *Heck*, the conspiracy claim did not accrue until the criminal proceedings were resolved in [the plaintiffs'] favor." Mem. at 7, citing *Nieves*, 241 F.3d at 52. In fact, the First Circuit said something quite different. It said that pleading the "mere fact" of a conspiracy does not toll the limitations period for "earlier" civil rights claims, *Nieves*, 241 F.3d at 51, where

9

"the conspiracy is distinct from the events that triggered the need for it," *id*. at 52. Instead, under such circumstances, the statute of limitations runs separately from the occurrence of each civil rights violation. *See id.* at 51. Thus, the First Circuit did *not* "specifically," Mem. at 7, enunciate a rule that a conspiracy claim cannot be tolled under *Heck*. It merely rejected the argument that allegations of a *limited* conspiracy preserve the timeliness of other, otherwise time-barred claims. As illustrated by the numerous cases cited above, courts regularly recognize that a Section 1983 conspiracy claim like Charles' *does* necessarily attack the validity of the underlying criminal proceedings and is therefore tolled under *Heck*. *See supra* at 7-8.

Charles' conspiracy claim obviously cuts to the heart of the 1984 case against him. Equally it implies the invalidity of the potential prosecution he faced between May 11, 2001 and May 17, 2001. For that reason, the claim was tolled until the District Attorney filed the May 17, 2001 *nolle prosequi*, and it is timely asserted here.

### III. THE *BRADY* CLAIM AGAINST BOGDAN WAS TOLLED UNTIL MAY 17, 2001

As this Court has already found, under Count II "Charles alleges that Bogdan failed to disclose to ADA Campo material information that was favorable to Charles, including the serological evidence." *Charles*, 365 F. Supp. 2d at 88. On the basis of the fact that the exculpatory information he allegedly withheld had become known to Charles by May 11, 2001, Bogdan seeks to persuade the Court that Charles' *Brady* claim accrued on the same day. He claims that, once it was revealed, the *Brady* violation would have ceased to play a role in any criminal conviction of Charles, and the claim must therefore have accrued by May 11, 2001 because the claim, if successful, would no longer have invalidated any possible prosecution of Charles. *See* Mem. at 6-7.

The Court should reject Bogdan's facile analysis for two independent reasons: (A) the conspiracy allegations toll the accrual of the *Brady* claim; and (B) even considered by itself, the Section 1983 *Brady* claim implicated the validity of Charles' conviction and any second prosecution of him, and was tolled.

**A.    Because the *Brady* Claim Against Bogdan Is "Encompassed" By The Conspiracy Claim, It Accrued At The Same Time.**

The first problem with Bogdan's argument is that he makes it in a legal and factual vacuum. In particular, he ignores the significance of the conspiracy allegations.

The general rule is that the "mere fact" of an alleged conspiracy does not toll the statute of limitations for "earlier" civil rights violations. *Nieves*, 241 F.2d at 51. Even when a plaintiff alleges a continuing conspiracy to violate his civil rights, the statute of limitations ordinarily runs *separately* for each violation. *See id*. This is precisely how Bogdan views the accrual of the *Brady* claim. However, an important *exception* to the general rule exists. Bogdan fails to mention it, although it is discussed at length in the only case that he cites on the subject. *Compare* Mem. at 7 with *Nieves*, 241 F.3d at 51-52. Under this exception, when a plaintiff alleges an ongoing conspiracy that *encompasses* the other civil rights violations alleged, "the statute of limitations therefore beg[i]n[s] to run on *all* acts . . . only when the criminal proceedings [are] terminated in [the plaintiff's] favor." *Nieves*, 241 F.3d at 52 (emphasis added), *citing Robinson v. Maruffi*, 895 F.2d 649 (10th Cir. 1990).

In *Robinson,* the plaintiff had been convicted in June 1981 as a result of the prosecution's use of perjured testimony. The conviction was reversed for reasons unrelated to the perjury. *See Robinson*, 895 F.2d at 653. Robinson was then put on trial a second time. Again, the case against him relied on perjured testimony, but at trial his

11

attorney was able to expose the fact, and Robinson was acquitted in October 1983. *See id*. In August 1984 he brought a Section 1983 action, asserting claims for conspiracy, false arrest and false imprisonment. *See id.* at 653-654. The defendants argued that the three year limitations period applied to bar the claims because they had accrued by the time of his first trial. *See id.* at 654, 655. The Tenth Circuit found that the false imprisonment and arrest claims were *not* time-barred because the conspiratorial agreement arose *before* those other wrongs and *encompassed* them. *See Nieves*, 241 F.3d at 52, discussing *Robinson.* In finding that these claims did *not* accrue separately from, and earlier than, the conspiracy claim, but only with Robinson's acquittal, the *Robinson* court was applying the same principles as would be enunciated later in *Heck*. *See Smith v. Gonzales*, 223 F.3d 1220, 1223 (10th Cir. 2000) (*Robinson* consistent with *Heck*). *See also Nieves*, 241 F.3d at 52 (*Robinson* court was "Applying this rule [set forth in *Heck*]").

Charles' case falls squarely within this exception because he alleges the same kind of encompassing conspiracy as found in *Robinson*. Taken altogether, the allegations set out in the Complaint depict a conspiracy that antedates the particular civil rights violations on which Charles bases his claims, and in particular the alleged *Brady* violation. *See* Complaint ¶¶ 25-32, 52 (alleging pattern of police harassment from the 1970s and Bogdan's role dating only from 1980). For this reason, *all* of Charles' Section 1983 claims accrued *at the same time* -- when there was no outstanding conviction or prosecution to challenge. *See Nieves*, 241 F.3d at 52. *See also Amaker*, *supra,* ("Each of plaintiff's causes of action here turns on the asserted existence of a conspiracy to frame plaintiff for murder, and thus deciding in his favor on any of them plainly would call into question the validity of his conviction.").

In striking contrast to Charles' allegations, the First Circuit found that the plaintiffs in *Nieves* could *not* get the benefit of a delayed accrual for non-conspiracy claims because they had *not* alleged a *Robinson* type of conspiracy. The First Circuit found that it was "undisputed that the officers and the appellants were strangers to each other until the date of the arrest." *Nieves*, 241 F.3d at 52. *See also Veale v. Griffin*, No. 99-1231, 2000 WL 739709, at *2 (1st Cir. June 6, 2000) (finding false arrest claim time-barred where Section 1983 plaintiff could not allege antecedent conspiracy, citing *Robinson*), attached as Exhibit E. As the First Circuit noted, the allegations in *Nieves* were "vastly different" from those found in *Robinson*, *id*., and, one may now add, from those found in the present case, *see* Complaint ¶¶ 25-32.

As the First Circuit recognized in *Nieves*, it makes no sense to find that a *Brady* claim like Charles' accrued *before* the claim for the overarching conspiracy of which the *Brady* claim was an integral part. Bogdan can only argue the issue by mischaracterizing what the First Circuit said. For these reasons, the Court should find that the *Brady* claim, like the conspiracy claim, accrued only after the Commonwealth abandoned prosecution of Charles on May 17, 2001.

### B.     Bogdan Misreads His Principal Legal Authority

Besides misreading *Nieves*, Bogdan's argument rests on a superficial reading of *Smith v. Gonzales*, 222 F.3d 1220 (10th Cir. 2000), a case which is readily distinguishable on the facts from the present action.[4] In fact, the Tenth Circuit itself noted the crucial factual differences between *Smith* and cases of the *Robinson* type like Charles'.

---

[4] This case is not to be confused with the Third Circuit case *Smith v. Holtz, see supra* at 4.

13

Smith was convicted of murder by a prosecution that had failed to disclose *Brady* evidence. *See Smith*, 222 F.3d at 1121. He later learned of the evidence, but failed to win relief in the state courts on that basis. *See id*. He filed a *habeas corpus* petition with the federal district court, but the petition was dismissed. *See id*. On appeal, the Tenth Circuit vacated the conviction because of the *Brady* violations and ordered the state to either retry Smith or release him. *See id*. After the second jury was unable to reach a verdict, a mistrial was declared, and the state filed a *nolle prosequi*. *See id*. In Smith's subsequent Section 1983 action, the question arose whether his claim accrued in 1995, when the Tenth Circuit vacated the conviction, or in 1996, when the *nolle prosequi* was filed. *See id*. The Tenth Circuit held that the claim accrued when it vacated the conviction. It reasoned that, from that time on, "the prosecution was effectively prevented from withholding the same exculpatory evidence if the State decided to retry Smith" and, as a result, a successful Section 1983 action based on the *Brady* claim "would not have rendered invalid any outstanding criminal judgment against Smith." *Id*. at 1222.

Bogdan's reliance on the apparent similarities between *Smith* and Charles' case is entirely misplaced. In *Smith*, the *Brady* violation was the *sole* conspiratorial act that tainted the prosecution against Smith. When the *Brady* violation was exposed, the conspiracy came to an end. When Smith himself sought to liken his case to *Robinson*, the Tenth Circuit distinguished the two sets of facts on precisely this basis, stating, "Our 1995 judgment [vacating Smith's conviction] *ended the conspiracy*." *Id.* at 1223 (emphasis added). By contrast, after Robinson's conviction was vacated on grounds unrelated to the perjury, he continued to face a "false case" founded on the conspiracy

14

against him. *See id.* (distinguishing *Robinson*). Similarly in Charles' case, the District Attorney was at pains to put on record that, during the interval between Judge Rouse's order for a retrial and the filing of the *nolle prosequi*, the prosecution that faced Charles in a new trial would be as much like the original 1984 "false case" against him as possible.

Thus, like the overarching conspiracy alleged in *Robinson*, the conspiracy alleged here *antedated* the other wrongs alleged and "encompassed" them. *Nieves*, 241 F.3d at 52. Excising a single wrong from the prosecution cannot start the clock running on that one claim in complete disregard of the conspiracy of which it is an integral part. Under such circumstances, "the statute of limitations therefore beg[i]n[s] to run on *all* acts . . . only when the criminal proceedings [are] terminated in [the plaintiff's] favor." *Id*. at 52 (emphasis added). For all of these reasons, the Court should find that this claim, like the conspiracy claim, was tolled until May 17, 2001, when the *nolle prosequi* was filed.

**C. Even When Considered Apart From The Conspiracy Allegations, The *Brady* Claim Was Tolled Until May 17, 2001 Because It Calls Into Question The Validity Of A Prosecution Or Conviction of Charles.**

Aside from the determinative fact that it was an integral part of the conspiracy against Charles, the *Brady* claim against Bogdan was tolled until May 17, 2001 because, until then, it obviously would have called into question the validity of underlying criminal proceedings. Exculpatory evidence is evidence the suppression of which would "undermine confidence in the verdict, " *Kyles v. Whitley*, 514 U.S. 419, 435 (1995), and therefore a Section 1983 *Brady* claim necessarily implies the invalidity of the criminal proceedings against the plaintiff. The courts have repeatedly held this to be the case, a fact Bogdan wholly fails to address.

The Third Circuit reached this conclusion in *Smith v. Holtz*, *supra*.[5]  Smith was convicted of murder in 1986.  *See Smith*, 87 F.3d at 110.  In July 1988, the government disclosed that police investigators had withheld *Brady* material.  *See id.*  In 1989, his conviction was vacated on appeal on grounds unrelated to the *Brady* violation.  *See id.*  Smith remained in prison awaiting a re-trial.  *See id.*  In September 1992, the Pennsylvania Supreme Court ordered him released based on the double jeopardy clause of the state constitution.  *See id.*  Smith filed his Section 1983 action in September of 1993, asserting, *inter alia*, a *Brady* claim.  *See id.* at 111.  The defendants argued that the claims accrued in 1989, when the conviction was vacated, and were untimely under the state's two-year statute of limitations.  *See id*. at 110.  The Third Circuit rejected the argument, reasoning that "[i]f [Smith] had brought these claims before September 18, 1992, when the Pennsylvania Supreme Court ordered the charges against him dismissed, success on these claims would have *necessarily implied the invalidity of any future conviction on the still pending criminal charges*." *Id.* at 112 (emphasis added).  Significantly, the Third Circuit reached this conclusion despite the fact that Smith knew of the *Brady* evidence *four years* before the state high court's 1992 decision and despite the fact that Smith could not have been put in jeopardy again, at any time after 1988, by the withholding of the evidence in a retrial.

In *Amaker*, 179 F.3d at 51, the plaintiff was precluded by *Heck* from bringing Section 1983 claims because he was under conviction.  He argued, however, that his *Brady* claim, at least, was *not* precluded from going forward.  *See id.*  The Second Circuit disagreed, holding that "this claim sounds under *Brady* . . . and therefore does indeed call into question the validity of his conviction.  Accordingly, it is barred by *Heck*." *Id.*

---

[5] Not to be confused with the Tenth Circuit case *Smith v. Gonzales*, discussed above at 13.

16

In *Johnson v. Evans*, 223 F. Supp. 2d 357 (D. Mass. 2002), the City of Boston failed to persuade the court (Lasker, J.) when it made essentially the same argument it offers now. Donnell Johnson was arrested for murder and tried by a judge as a juvenile. *See Johnson*, 223 F.3d at 359. After conviction, he exercised his right to a *de novo* jury trial on November 27, 1996. *See id*. at 360. Just before the start of trial that day, the Commonwealth disclosed *Brady* material that had been withheld at the bench trial. *See id*. at 359. In the jury trial, Johnson was found guilty, but in 2000 the District Attorney filed a *nolle prosequi* and Johnson was released. *See id*. at 360-361. He brought a Section 1983 action against the City and its officials, alleging that, *inter alia*, they had conspired to withhold exculpatory evidence. *See id*. at 358. The City argued that the *Brady* claim was time-barred because Johnson knew of it by November 27, 1996, more than three years before he commenced his civil action. *See id*. at 360. The court invoked *Heck* in holding that Johnson's claim accrued only in "March 2000, when the D.A. entered a *nolle prosequi* as to Johnson. The Supreme Court dealt squarely with the issue in *Heck*." *Id.* at 360-361 (citation omitted).[6]

As these cases demonstrate, a *Brady* claim like Charles' implicates the validity of any outstanding conviction or potential prosecution, and therefore is subject to tolling. Since Charles stood convicted until May 11, 2001 and thereafter faced renewed prosecution until May 17, 2001, the Court should find that his *Brady* claim did not accrue until May 17, 2001. His May 17, 2004 action on the claim is therefore timely.

---

[6] Other courts have reached the same conclusion. In *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001), the Seventh Circuit held that the plaintiff's *Brady* claim was "postponed by *Heck* until pardon," although the plaintiff had learned of the *Brady* violation more than *ten years* before the vacating of his conviction and the granting of his pardon, *see People v. Newsome*, 443 N.E.2d 634, 636 (Ill. App. Ct. 1982) (giving date Newsome learned of *Brady* evidence). *See also Howard v. City of Chicago*, No. 03-C-8481, 2004 WL 2397281, at *8 (N.D. Ill. October 25, 2004) ("The *Heck* ruling supports Howard's allegations that … withheld evidence undermine[s] the validity of his conviction. Thus, the accrual of Plaintiff's claim under due process was postponed by *Heck* until Howard was pardoned."), attached as Exhibit F.

17

## IV.   JUDGMENT FOR THE CITY SHOULD BE DENIED FOR THE REASONS SET FORTH ABOVE

It is not at all clear from the motion why the Defendants believe that the City is entitled to relief. Nothing in the argument presented by the Defendants expressly justifies the Court's granting the City judgment on the *Monell* claim (Count V). The Court should therefore deny the City relief.

The basis for Section 1983 municipal liability is that a city official violates the constitutional rights of the plaintiff as a result of the policies and practices of the municipality. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Thus, to the extent that Bogdan's actions may be shown to have flowed from the policies and practices of the City and to have caused a violation of Charles' constitutional rights, the City would be liable under *Monell*. Moreover, as alleged in the Complaint, the City's policies and practices were the cause not only of the unconstitutional violations committed by Bogdan, but also of those committed by Keough, Rufo, and other members of the Boston Police Department. *See, e.g.,* Complaint ¶¶ 46, 50-51, 67-74, 100-103. For *all* of these acts, the City is liable under *Monell*.[7]

The Defendants make no separate argument on the *Monell* claim, and they do not take a position on the accrual dates pertinent to the actions of other members of the police department, for *all* of which the City has *Monell* liability. The narrow limitations defense set forth by the Defendants, therefore, is only as valid for the City as it is for Bogdan. As

---

[7] The City's liability does not depend on whether *any* of its officials is held liable. Oftentimes, because of qualified immunity or other personal defenses, they cannot be. *See Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir.1985) (" Monell . . . and its progeny do not require that a jury must first find an individual defendant liable before imposing liability on local government"); *Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988) ("there is no inherent inconsistency in allowing a suit alleging an unconstitutional policy or custom to proceed against the city when the individuals charged with executing the challenged policy to injure the plaintiff have been relieved from individual liability" as by qualified immunity). It is only necessary that an official be found to have caused a constitutional injury as a result of the City's policies and practices.

18

demonstrated above, the defense founders on well-established case law, principally *Heck v. Humphrey*. *See supra* at 5-17. Thus, the City, like Bogdan, has no right to judgment on any claim against it.

## CONCLUSION

For all of the foregoing reasons, the Court should find that the claims asserted against Bogdan are timely. The Court should also find that the City has failed to demonstrate its right to judgment on the *Monell* claim. The Court should therefore deny the Defendants' motion in its entirety.

Dated: January 10, 2006                                              Respectfully Submitted,

/s/ Kevin J. O'Connor
Kevin J. O'Connor (BBO# 555250)
Mayeti Gametchu (BBO# 647787)
John Pagliaro (BBO# 634483)
PARAGON LAW GROUP, LLP
184 High Street
Boston, MA 02110
(617) 399-7950

Attorneys for Plaintiff
ULYSSES RODRIGUEZ CHARLES

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that on January 10, 2006 paper copies will be sent to those indicated as not registered participants.

/s/ John Pagliaro
John Pagliaro (BBO# 634483)

0038-002-102353