Case 1:04-cv-10986-NG   Document 45-3   Filed 01/10/2006   Page 1 of 8

Page 1
2001 U.S. Dist. LEXIS 11031, *

LUIS M. RODRIGUEZ, Plaintiff v. BUD ELLIS, et al., Defendants

Civil No. 01-90-P-C

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE

*2001 U.S. Dist. LEXIS 11031*

**May 16, 2001, Decided**

**DISPOSITION:** [*1] Recommended that this Rodriguez's § 1983 complaint be DISMISSED in its totality WITHOUT PREJUDICE.

**COUNSEL:** LUIS M RODRIGUEZ, plaintiff, Pro se, SO. WINDHAM, ME.

**JUDGES:** Margaret J. Kravchuk, U.S. Magistrate Judge.

**OPINIONBY:** Margaret J. Kravchuk

**OPINION:**

**RECOMMENDED DECISION DISMISSING COMPLAINT**

Plaintiff, Luis Rodriguez, is an inmate at the Cumberland County Jail, Portland, Maine. He has filed a *42 U.S.C. § 1983* civil rights complaint. (Docket No. 1.) He was granted leave to proceed *in forma pauperis* (Docket No. 3) and has expressed his intent to proceed with his suit (Docket No. 4). Rodriguez's complaint names five defendants: District Attorney Bud Ellis, District Attorney Matt Tice, District Attorney Mitan Elam, Gorham Police Officer Dana Thompson, and Maine State Police Laboratory Analyst Jennifer Hamill. n1 For the reasons stated below I recommend that the complaint be **DISMISSED** in its entirety.

> n1 The court is not sure that these names are correctly spelled.

*Allegations* [*2]

Rodriguez's allegations spring from his arrest on August 25, 2000. On that date Defendant Dana Thompson and an officer not named in this action stopped Rodriguez in the town of Ogunquit in York County, Maine. They questioned Rodriguez about a crime committed in Cumberland County. n2 The officers stopped Rodriguez based on a crime victim's August 23, 2000, description of her attacker as a "thin Puerto Rican male." n3 They did not read Rodriguez his rights. In response to Rodriguez's question as to why he was being stopped, Thompson quipped, while he looked at his partner and laughed, "Do you see any other Ricans around?" Rodriguez claims that his arrest was motivated and animated by racism, in violation of his rights to equal protection and due process.

> n2 Rodriguez contends that the officers were out of their jurisdiction. This is not an allegation that has any independent buoyancy in a § 1983 action.

> n3 Rodriguez asserts that the arrest was made at the height of the tourist season and that as far as the arresting officers knew he could have been a professional baseball player.

[*3]

At his arraignment on August 29, 2000, Defendant Elam stated to the judge that during the crime Rodriguez was wielding a switchblade at the victim. As to this representation, Rodriguez states, "Now as far as anyone is concerned that is a very stereotypical statement[.] A Puerto Rican with a switchblade[,] can it get worse?" Rodriguez contends that this statement caused the judge to deny him bail of any sort. He asserts that the only knife he had on him at the time of an arrest was a legal-sized pocketknife, in no way comparable to a switchblade.

During the criminal investigation the Gorham police utilized a suspect description form that classified Rodriguez as "Black African American" and with respect to his physical description used the term "Black." This contradicts the arrest report that Dana used to justify his stop in which the suspect was described as Puerto Rican. Rodriguez argues that this mischaracterization violated his right to equal protection. n4

> n4 He states: "After all my family name is Rodriguez, which came from Spain. I don't feel

Case 1:04-cv-10986-NG    Document 45-3    Filed 01/10/2006    Page 2 of 8

Page 2
2001 U.S. Dist. LEXIS 11031, *

that there is anything at all wrong with Black people. But, I am not Black. I am a swarthy Hispanic male. There are many differences in the cultural sense and that point is in regards to all races. Spanish is the only language spoken at my parent's home. I am so amazed at the lack of diversity I have been subjected to in such a beautiful state. It is sad when a trained official detective doesn't care enough about a human being and their common rights to retain their heritage. It is a total outrage and a complete violation of our civil rights (Equal Protection)."

 [*4]

To these statements made by the district attorney's office and the Gorham police Rodriguez attributes his wrongful pre-trial detention and a denial of reasonable bail on charges of gross sexual assault. He asserts that the two entities have in this fashion oppressed him, denying him any form of due process and equal protection.

With respect to Defendants Bud Ellis and Matt Tice, Rodriguez complains of the conduct of their prosecution. He asserts that Ellis and Tice have pursued this action with improper motive. They "have more than condoned this kind of action. They happen to be more interested in obtaining a conviction then they are with human rights." He states that Ellis and Tice have done their best to indirectly lump Rodriguez's case with a recent, high notoriety case in which the defendant (Rodriguez does not state his race) brutally beat and raped a white victim. He asserts that Ellis "has set the stage and has managed to in some way create a portrait of Black and Latino 'men' as being abusive." He observes "that the general public happens to be a 'booming' 98[] percent White, of which the majority has never experienced any contact with Black or Latino people except for [*5]  what they read in the newspapers." "Needless to say," Rodriguez contends, "the District Attorney does not[]have very far to look for a conviction. They have certainly succeeded in the most part in helping to form a public opinion that all us Black and Latino men accused of rape are always guilty. Basically the general public has been lead to believe this is our true nature." n5

n5 Rodriguez stresses that he has no criminal history.

Rodriguez alleges further that Tice and Ellis allowed to be used in discovery a laboratory report from the State Police Laboratory that was "nonsense." Rodriguez quotes the report: "A mixture of DNA profiles was obtained from the vaginal swab. The minor two locus DNA-profile matches the DNA profile of Luis Rodriguez. Male and female DNA was confirmed in this item. The estimated probability of selecting an unrelated individual at random from the Maine Caucasian population having a DNA profile matching Luis Rodriguez['s] two locus DNA profile using Profiler Plus and Cofiler is 1 [*6]  in 194." Rodriguez identifies bias and prejudice in this report: "Now if that wasn't meant[]t to be totally incriminating then I have no idea what would be. That is such a prejudicial statement. Now this is coming from a state laboratory who[]se job is to examine evidence not help convict me with such a biased report. Let[']s take the fact that we happen to be in Maine which happens to be 98 [] percent white, what chance in a realistic point of view do you really think I stand of being found innocent after a jury reads this report[?] I can't believe that his lab report was written by someone in the medical field [of] forensic[s] or otherwise. Why couldn't they just use in reference the Martian -- population estimated 1 in 194. I would stand about the same chance. As I said before, the district attorney's office is so bent on conviction they have lost all concept of the meaning of due process. 'Reasonable doubt'!" This line of allegation is the only allegation that could implicate Defendant Hamill, though Rodriguez does not name Hamill or directly link her to the challenged report.

*Discussion*

Congress has provided that it is appropriate to review Rodriguez's [*7]  § 1983 complaint at this stage to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint" "is frivolous malicious, or fails to state a claim upon which relief can be granted" or "seeks monetary relief from a defendant who is immune from such relief." *28 U.S.C. § 1915A*(b). See also id. § 1915(e)(2)(B).

In conducting this review I accept the allegations of Rodriguez's complaint as true. I have scrutinized Rodriguez's factual allegations to "identify the specific constitutional right [or rights] allegedly infringed." *Albright v. Oliver, 510 U.S. 266, 271, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994)* (noting that § 1983 is not an independent source of substantive rights, but an avenue to vindicate federal rights conferred elsewhere). Viewing his allegation generously, Rodriguez asserts claims for false arrest, false imprisonment, and malicious prosecution, all of which have formed the predicate for § 1983 complaints under certain circumstance. Because Rodriguez alleges that his arrest and prosecution were motivated by racial animus, he is also attempting to state a claim for violation of his [*8]  right to equal protection.

Rodriguez has launched this § 1983 action while his state prosecution is still pending. In *Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994)* the Supreme Court held that "in order to recover dam-

Case 1:04-cv-10986-NG    Document 45-3    Filed 01/10/2006    Page 3 of 8

Page 3
2001 U.S. Dist. LEXIS 11031, *

ages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *512 U.S. at 486-87* (footnote omitted). The Court directed that a district court confronted with a state prisoner § 1983 complaint for damages "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id. at 487.*

The rationale of Heck [*9] applies to § 1983 complaints that are (or might have been) filed while the criminal charges are still pending. n6 The Third Circuit gave a cogent explanation for this conclusion:

> We find that [the Heck] concerns apply equally to claims that, if successful, would necessarily imply the invalidity of a future conviction on a pending criminal charge. A claim by a defendant in an ongoing criminal prosecution which necessarily challenges the legality of a future conviction on a pending criminal charge lies at the intersection of the federal habeas corpus statute and the Civil Rights Act of 1871. If such a claim could proceed while criminal proceedings are ongoing, there would be a potential for inconsistent determinations in the civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. In terms of the conflicts which Heck sought to avoid, there is no difference between a conviction which is outstanding at the time the civil rights action is instituted and a potential conviction on a pending charge that may be entered at some point thereafter.

*Smith v. Holtz, 87 F.3d 108, 113 (3rd Cir.1996).* [*10]

n6 No fewer than five courts of appeal have wrestled with the principles underlying Heck when looking back at when the criminal proceedings were pending to address statute of limitations concerns arising in § 1983 actions. See *Harvey v. Waldron, 210 F.3d 1008, 1013-16 (9th Cir. 2000)* (analyzing claims relating to a warrantless search and seizure concluding that Heck applies to pending criminal charges as well as convictions); *Beck v. Muskogee Police Dep't, 195 F.3d 553, 556-59 (10th Cir. 1999)* (concluding that Heck applies to pending charges); *Shamaeizadeh v. Cunigan, 182 F.3d 391, 394-99 (6th Cir. 1999)* (concluding that the Heck rule applies pre-conviction as it does post-conviction, addressing a challenge to the constitutionality of a search and seizure); *Covington v. New York, 171 F.3d 117, 121-24 (2nd Cir. 1999)* (analyzing § 1983 false arrest claim, stating that under Heck and prior Second Circuit precedent, "a federal Section 1983 claim grounded in false arrest simply does not accrue so long as a recovery would impugn a criminal conviction"); *Washington v. Summerville, 127 F.3d 552, 555-56 (7th Cir. 1997)* (addressing § 1983 plaintiff's false arrest and excessive force claims in light of Heck); *Smith v. Holtz, 87 F.3d 108, 111-13 (3rd Cir.1996)* (analyzing § 1983 plaintiff's claims that prosecutors suppressed exculpatory evidence and contrived inculpatory evidence, concluding that the rule of Heck applies to cases where there is the potential for conviction on pending criminal charges). Only the Fifth Circuit seems to have applied Heck in a published opinion when treating a § 1983 unreasonable search and seizure claim filed while the criminal proceedings were pending. *Mackey v. Dickson, 47 F.3d 744, 746 (5th Cir.1995).*

The First Circuit has applied Heck after the fact, when determining the point at which the § 1983 cause of action -- alleging conspiracy and malicious prosecution -- accrued for statute of limitations purposes. See *Nieves v. McSweeney, 241 F.3d 46, 51-53 (1st Cir. 2001)* (applying Heck to malicious prosecution allegations). See also *Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3-4 (1st Cir. 1995)* (applying Heck to determine accrual of false arrest/malicious prosecution claims). But in these cases the First Circuit has not placed emphasis on the portion of the Heck decision addressing the impropriety of utilizing § 1983 to collaterally attack state criminal proceedings.

[*11]

In Nieves v. McSweeney the First Circuit paid close attention to accrual concerns arising with a malicious prosecution type of § 1983 claim. It stated: "[A] federal

court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period governing personal injury causes of action." *241 F.3d 46, 51 (1st Cir. 2001).* Traditionally, a claim starts accruing when the plaintiff knew or had reason to know of the injury underlying his claim. *Id. at 52.* Section 1983 claims are a "species of tort liability," and the common law cause of action most closely resembling the constitutional right asserted guides the accrual determination. *Heck, 512 U.S. at 483-84.*

In sum, my review of Rodriguez's complaint must not ignore the Heck prohibition against allowing the plaintiff to use § 1983 to collaterally attack his pending and un-impugned state criminal proceedings. The court must also heed the rules that determine whether Rodriguez's § 1983 claims have accrued, that is, when he knew or had reason to know he had a cognizable injury. This requires some dissection of his claims.

**1. Claims relating** [*12] **to Rodriguez's Prosecution**

Whether analyzed as a Fourteenth Amendment Due Process claim premised on common law tort of malicious prosecution or as a straightforward Fourth Amendment claim for unreasonable seizure, see generally *Albright, 510 U.S. 266, 127 L. Ed. 2d 114, 114 S. Ct. 807* (split Supreme Court decision analyzing proper constitutional analysis for a malicious prosecution claim); *Nieves, 241 F.3d 46* (First Circuit analyzing proper constitutional characterization of claim for malicious prosecution), Heck bars this court from passing any judgment on the claims in Rodriguez's complaint that relate to his prosecution.

This proscription applies to Rodriguez's allegations regarding the statements made by the defendant Elam characterizing his knife, any post-arrest investigation reports, and the attempts to draw similarities between this case and another high-profile case. It also comprehends the allegations concerning the DNA report. See *Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1996)* (alteration of material evidence is a due process claim subject to the Heck bar). Certainly, Rodriguez's suggestion that the defendants [*13] conspired to deprive him of his constitutional rights in their prosecution of him, fall under the Heck umbrella. See *42 U.S.C. § 1985;* Griffin v. Breckenridge, 403 U.S.88, 29 *L. Ed. 2d 338, 91 S. Ct. 1790 (1971).*

These are issues common to the criminal action, *Shamaeizadeh, 182 F.3d at 398,* and success in this court would undermine the integrity of Rodriguez's conviction in state court. *Covington, 171 F.3d at 123.* Permitting Rodriguez to pursue these claims at this juncture would certainly be "in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck, 512 U.S. at 484* (quotation and citation omitted). n7

> n7 If this recommended disposition of these claims is not accepted, and the court reaches the merits of the action, it is apparent that the prosecutorial defendants are entitled to absolute immunity for their prosecutorial decisions and the complaint ought to be promptly dismissed as to these defendants. See *Burns v. Reed, 500 U.S. 478, 487-92, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991).* Furthermore, the absence of allegations implicating Defendant Hammill would support dismissal of the action as to her.

[*14]

**2. The False Arrest Claim**

Rodriguez has one allegation that relates only to his arrest. The First Circuit is somewhat of two minds as to the accrual of false arrest type claims when there are also malicious prosecution claims in the complaint. In Nieves the First Circuit concluded that where, as here, the allegations set forth a continuing conspiracy, "the statute of limitations runs separately from the occurrence of each civil rights violation that causes actual damage to the plaintiff (as long as the plaintiff knows or should have known of the injury.)" *Nieves, 241 F.3d at 51.* The court refused to address the plaintiff's claims relating to the arrest because they were barred by the statute of limitations, though the claims that related to the prosecution were not barred because they accrued from the date the criminal proceedings terminated. *241 F.3d at 52 --53.*

However, in *Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3-4 (1st Cir. 1995),* the First Circuit construed a claim that also challenged the arrest as part and parcel of a malicious prosecution claim for statute of limitations purposes. The court reasoned:

> As [*15] a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution. An arrest warrant constitutes legal process, and it is the tort of malicious prosecution that permits damages for confinement pursuant to legal process. On the other hand, wrongful warrantless arrests typically resemble the tort of false arrest.

Case 1:04-cv-10986-NG    Document 45-3    Filed 01/10/2006    Page 5 of 8

Page 5
2001 U.S. Dist. LEXIS 11031, *

*Id. at 4.* The panel concluded that the § 1983 cause of action, that included allegations relating to the arrest, did not accrue until the plaintiff's acquittal on the state criminal charges. Id.

With respect to this dividing line between the arrest and the prosecution, the seventh footnote of the Heck decision has created some dissension among courts considering the statute of limitations concern as to whether certain challenges to arrest could have gone forward while the criminal charges were pending. In the footnote the Supreme Court offered an example of a challenge to a search issue that might not imply the invalidity of the conviction:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence [*16] that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

*Heck, 512 U.S. at 487 n.7* (citations omitted). The Court clearly had the expectation that the district court would, if it was to allow the action to proceed, need to make the determination that "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff." *Id. at 487.* n8 Treating Rodriguez's complaint at this juncture the court does not yet have the benefit of hindsight by which to make a determination of whether his challenge to the arrest would, given the evidence before the state court, imply the invalidity of his conviction.

> n8 Some circuits seem to read footnote seven as a fiat: unreasonable search and seizure claims do not trigger the Heck prohibition. Some have concluded that challenges to arrest must be treated in the same fashion. For instance, the Tenth Circuit addressed a § 1983 challenge alleging an illegal arrest and an unreasonable search and seizure. See *Beck, 195 F.3d 553.* Without analyzing the nature of the plaintiff's challenge to his arrest and the search or what part the arrest and search played in the revocation of his probation it concluded: "Heck does not affect the time these claims arose because ultimate success on them would not necessarily question the validity of a conviction resulting from the rape charge or his probation revocation." *Id. at 558.* And the Seventh Circuit has also made it clear that no matter what issues are implicated, false arrest and unreasonable search claims accrue immediately after the arrest. Recently it stated: "We have applied this principal categorically to all § 1983 claims for false arrest, ruling that Fourth Amendment claims for unlawful searches or arrests do not necessarily imply a conviction is invalid, so in all cases these claims can go forward." *Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892, 897 (7th Cir. 2001)*(citations and quotations omitted). See also *id. at 898-900 & n.7* (rejecting argument that this analysis should include a "fact-sensitive" inquiry).

The Second and Sixth Circuits have concluded that Heck requires a factual inquiry addressing the overlap between the state criminal proceeding and the § 1983 false arrest and unreasonable search and seizure claims. The Sixth Circuit made such an inquiry in analyzing a § 1983 challenge to an allegedly unconstitutional search in terms of how it might overlap and impact pending criminal proceedings. *Shamaeizadeh, 182 F.3d at 396-99.* Likewise did the Second Circuit when analyzing a false arrest claim, describing the inquiry as "inherently a factual one." *Covington, 171 F.3d at 122-24* (remanding to the district court to make the factual inquiry, over a strong dissent that consider the inquiry "impossible and totally unrealistic"). I found no case in which the First Circuit wrestled with Footnote 7.

[*17]

Regarding Rodriguez's complaint from this look-out vantage point, the best view of his false arrest claim is that it should not be severed for accrual purposes from his claims relating to his prosecution. Though his characterization of his plaint is not necessarily determinative, Rodriguez describes his complaint as an integrated whole, stating, in a rather conclusory manner, that the defendants joined "in a conspiracy to deprive [him] of his rights." See *Robinson v. Maruffi, 895 F.2d 649, 654-55 (10th Cir. 1990)* (concluding that a challenge to a prosecution, styled as a conspiracy claim, did not accrue until the § 1983 plaintiff's acquittal, rejecting a severance of false arrest and false imprisonment claims as time-barred because they could be viewed as discreet from the malicious prosecution conspiracy). n9 Rodriguez sets forth the actions relating to the arrest as tied-in with subsequent steps taken by the police and prosecutors during the investigation and, in a sense, he is com-

Case 1:04-cv-10986-NG   Document 45-3   Filed 01/10/2006   Page 6 of 8

Page 6
2001 U.S. Dist. LEXIS 11031, *

plaining of a continuing seizure. See *Albright, 510 U.S. at 280-81* (J. Ginsburg concurring) (questioning the view of the district court that the statute of limitation [*18] started to run at the time of the arrest, suggesting that the § 1983 plaintiff was seized within the meaning of the Fourth Amendment while the prosecution remained pending, and thus his cause of action did not accrue until dismissal of the criminal action); *Calero-Colon, 68 F.3d at 4-5* (J. Lynch concurring)(stressing that a Fourth Amendment claim arising out of a warrantless arrest "does not necessarily" accrue at the time of the arrest, observing that "the arrest may trigger a chain of events leading to a different characterization of the entire constitutional injury and so a different accrual date," citing Robinson). As were the plaintiffs in Calero-Colon, Rodriguez is in essence seeking relief for his confinement pursuant to a legal process that he alleges is constitutionally unsound. *68 F.3d 1.*

> n9 The First Circuit distinguished Robinson in Nieves, stating that while Robinson addressed allegations of a conspiracy that germinated before the arrest, the Nieves plaintiff alleged a conspiracy that commenced after the arrest in an attempt to cover-up excessive force used at the time of the arrest. See *Nieves, 241 F.3d at 51-52*. Rodriguez's allegations linking the arrest to a conspiracy come closer to Robinson, in that his theory seems to be that there was some sort of undulating racism that animated the defendants' actions towards him commencing with the arrest.

[*19]

Moreover, if this court were to sever the arrest-related claim and treat it at this time, there is a palpable chance that it would run afoul of the Heck edict. Rodriguez is asserting his innocence as to the state criminal charge on which his arrest and prosecution are predicated. It can be assumed that the arrest-related issues that Rodriguez will or has raised in attacking his arrest and prosecution in the state criminal proceedings mirror the challenges to his arrest in this § 1983 complaint. See cf. *Mackey, 47 F.3d at 746* (concluding that it could not determine if Heck would bar arrest-related claims while state prosecution is pending because the determination would depend on what if any evidence concerning the arrest was adduced at trial). The allegations relating to his arrest do not suggest a discreet constitutional injury, such as the use of excessive force in an otherwise constitutionally-sound arrest that could be addressed in a § 1983 action without casting aspersions on any subsequent state conviction for the charged offense. See *Nieves, 241 F.3d at 52* ("It is pellucid that all claims based on the officers' physical abuse or arrest [*20] ...accrued at the time that those events occurred ... because the [§ 1983 plaintiffs] had ample reason to know of the injury then and there.") If the federal court were to conclude that the arrest was flawed for the reasons asserted by Rodriguez, he could use that determination to collaterally attack the state court proceedings. See, e.g., *Cabrera v. City of Huntington Park, 159 F.3d 374, 380* (concluding that the lack of probable cause grounded in disturbance of the peace would necessarily imply that a conviction for disturbance of the peace was invalid, applying Heck's bar). What is more, if the court were to dismiss the arrest-related claim at this juncture for failure to state a claim, Rodriguez could find himself constrained, if not hand-cuffed, in his attempts to challenge his arrest in the state court prosecution as a result of issue-preclusion.

And though Nieves could be read in such a literal manner as to warrant the contrary conclusion, the First Circuit has recently rejected literal application of language lifted from its past decisions when it runs counter to the reasoning of its precedent. *Perez v. Volvo Car Corp., 247 F.3d 303, 2001 WL 432414,* [*21] *7 (1st Cir. 2001). It observed: "Statements of law should be taken in context and applied in a practical, commonsense manner." Id. Concluding that Rodriguez's arrest related claims have not yet accrued is both practical and in accord with commonsense.

With respect to the appropriate disposition of this unripe complaint, the First Circuit has stated that a district court should dismiss a § 1983 complaint without prejudice, as premature, if it determines that conviction was not invalidated as required by Heck. *Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 6 (1st Cir. 1994).* See also *Morrison v. Brinkley, 2000 U.S. Dist. LEXIS 6946, 2000 WL 679899 (N.D. Miss. 2000)* (dismissing a § 1983 complaint without prejudice, identifying the need for the plaintiff to seek relief from his conviction in state court); *Gray v. Ukiah City Police Dep't, 1995 U.S. Dist. LEXIS 8053, 1995 WL 352961 (N.D. Cal. 1995)* (dismissing without prejudice a § 1983 complaint filed before the plaintiff had his parole revocation invalidated in the state court).

### RECOMMENDED DISPOSITION

For the forgoing reasons I recommend that Rodriguez's § 1983 complaint be **DISMISSED** in its totality **WITHOUT PREJUDICE** [*22] .

NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to *28 U.S.C. § 636*(b)(1)(B) (1993) for which

2001 U.S. Dist. LEXIS 11031, *

*de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 16, 2001.

    Margaret J. Kravchuk

    U.S. Magistrate Judge

2001 U.S. Dist. LEXIS 11031, *

119N08

********** Print Completed **********

Time of Request:   December 21, 2005   02:57 PM EST

Print Number:      1861:76112128
Number of Lines:   317
Number of Pages:

Send To:  GAMETCHU, MAYETI
          PARAGON LAW GROUP
          184 HIGH ST
          BOSTON, MA 02110-3001