UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ULYSSES RODRIGUEZ CHARLES,<br><br>              Plaintiff,<br>v.<br>CITY OF BOSTON, STANLEY I. BOGDAN, in his individual capacity; and JOHN DOE and JANE DOE, supervisors in the Boston Police Department, in their individual capacities,<br><br>              Defendants. | C.A. No. 04-10986-NG |

**PARTIAL OPPOSITION TO DEFENDANTS CITY OF BOSTON
AND STANLEY BOGDAN'S MOTION FOR A PROTECTIVE ORDER**

Plaintiff Ulysses R. Charles ("Mr. Charles") submits his partial opposition to the motion of Defendants City of Boston and Stanley I. Bogdan (collectively "Defendants") made under Fed.R.Civ.P. 26(c), for a protective order to govern the disclosure of certain categories of discovery materials.

For the reasons set forth below, the Court should deny the motion in part.

**INTRODUCTION**

As the Court is aware, Mr. Charles has alleged that Defendants conspired to, *inter alia*, prevent the disclosure of certain exculpatory evidence that would have prevented his imprisonment from 1982 to 2001 for a crime he did not commit. It was that secrecy between law enforcement officials, amongst other things, that led to Mr. Charles's wrongful conviction. Ironically, Defendants now move to place limits on the openness of these proceedings by offering a proposed protective order that would simultaneously place a significant burden on Mr. Charles's ability to present his case. Mr. Charles's right to access and make use of the materials in question is guarded by a presumption against a protective order, the entry of which would obstruct his interests. Defendants

have not shown good cause to overcome that presumption. Furthermore, the public interest into events that led to Mr. Charles's false imprisonment, including police and prosecutorial misconduct, is of the highest order, and Defendants' have not offered a counter-interest sufficient to defeat it.

Broadly at issue in this litigation is the awful consequence of a failure to disclose investigatory and prosecutorial misconduct. Mr. Charles has already endured one trial in which the principle of open proceedings was offended; he now deserves one free from a veil of secrecy.

## ARGUMENT

**I.     Standard For Entry Of Protective Order Of Pre-Trial Discovery[1]**

"[T]he governing standard for entry of a Rule 26(c)[2] protective order is good cause . . . ." Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 790 (1st Cir. 1988). "It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." San Jose Mercury News, Inc. v. U.S. Dist. Court--Northern Dist. (San Jose), 187 F.3d 1096, 1103 (9th Cir. 1999). "***Outside the area of trade secrets, research etc. the contemplation is that discovery proceedings are public proceedings and there is a heavy burden placed on a party seeking protection against disclosure***." 4 Moore's Federal Practice, p. 26.75 at n. 3 (1977-1978 Supp.) (emphasis added). "The party seeking to overcome the presumption ***bears the burden of showing some significant interest that outweighs the presumption***." Rushford v. New Yorker

---

[1] Defendants' Motion does not contest that the discovery requests are relevant to the subject matter in this litigation and does not contest that they should be discoverable or are otherwise protected from discovery by virtue of any privilege. Their sole argument is that certain materials should be subject to the protective order they propose.
[2] See Fed.R.Civ.P. 26(c) ("Upon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .").

Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) (emphasis added). "In assessing whether to issue a protective order, courts generally balance the harm to defendant against the relevance of and the necessity for the information." 8 C. Wright & A. Miller, Federal Practice and Procedure § 2043 (1970).

Additionally, the federal rules and federal policy -- not state law, as suggested by Defendants -- determine the balancing of interests in weighing a motion for protective order. Application of state rules "would often frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988).

This concern is particularly acute where, as here, allegations of violations of civil rights are made against state actors:

> Moreover, state rules protecting state officers must always be viewed with caution because they may be parochially designed to thwart federal interests: ***It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities***. If state law controlled, ***state authorities could effectively insulate themselves*** from constitutional norms simply ***by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims***. King v. Conde, 121 F.R.D. 180, 187-188 (E.D.N.Y. 1988) (emphasis added).

**II.    Defendants Have Neither Identified
        With Particularity The Materials That Require
        A Protective Order Nor Their Interests That Require Protection**

Defendants have not sufficiently identified in their motion the reason that they are seeking a protective order or the materials that they seek to be subject to it. "To establish 'good cause' for a protective order under [Federal Rule of Civil Procedure] 26(c), '[t]he courts have insisted on a ***particular and specific demonstration of fact, as distinguished***

3

*from stereotyped and conclusory statements*. . . ." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102, 101 S.Ct. 2193, 2201 (1981) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, p. 265 (1970)) (emphasis added).

Defendants have not met this standard. They merely identify general and broad categories of confidentiality, and ask the Court to sanction their discretion in deciding which documents fall under those categories. See Defs. Motion at p. 1. Indeed, amongst the categories are "[o]ther personal and private information of the victims" and "[c]onfidential, personal and private information of third parties and suspects." See Defs. Motion at p. 1. Such open-ended categories would inevitably lead to the over-designation of items as "confidential."

Defendants also have not adequately defined the scope of the privacy right that is at stake so that the Court can weigh it against Mr. Charles's discovery needs. Rather, relying largely on state law, they seek a protective order based on generalized assertions of privacy with respect to information related to law enforcement, other public officials and the complainants. Defendants neither demonstrate the particular interests at stake nor do they specify the burdens that would allegedly befall them if the order is not entered. As the court in King v. Conde explained, "Unless the government, through competent declarations, shows the court *what interests* [of law enforcement or privacy] would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be, the court cannot conduct a meaningful balancing analysis. If the police make no such showing, the court has no choice but to order disclosure." King v. Conde, 121 F.R.D. 180, 189 (E.D.N.Y. 1988) (internal citations and quotations ommitted) (emphasis added).

4

Defendants' motion is cursory and makes assertions of theoretical harm. Plaintiff, as well as the Court, is ill-positioned to evaluate whether or not the motion for protective order is made for "good cause." On this ground alone, the motion is deficient and should be denied.

### III. A Protective Order Is Not Appropriate In Light Of The Compelling Interests Of Mr. Charles, The Court And The Public

In addition to Defendants' failure to demonstrate their need for a protective order, the motion should be denied in light of the substantial interests of Mr. Charles, the public, and this Court in maintaining the openness of these proceedings and not incurring the burden of a protective order.

The openness of the instant proceedings is critical to Mr. Charles's ability to candidly present his case to this Court and to getting to the truth of why and how Mr. Charles's was arrested, convicted, and imprisoned. "*Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system*." Huminski v. Corsones, 396 F.3d 53, 81 (2nd Cir. 2005) (emphasis added).

As has been stated above, Mr. Charles was denied full disclosure at his criminal trial and the later-revealed exculpatory evidence eventually led to the vacating of his convictions and his early release from prison. The criminal proceedings against Charles utterly failed him because law enforcement officials did not abide by their constitutional and other duties, resulting in the deprivation of Mr. Charles's liberty for almost 20 years. During those years, Mr. Charles lived within the walls of a prison, the profound

consequences of which will be explored at trial. But suffice it to say, his life was permanently altered for the worse by the lack of openness at this criminal trial.[3]

In order to, *inter alia*, prevent a similar miscarriage of justice in these proceedings, to ensure the likelihood that any and all witnesses now come forward, and to uncover any additional evidence of Defendants' wrongful acts, this action should remain accessible to public.

The public interest also cuts against restricting these proceedings. "[T]he operation of the court system is a matter of utmost public concern, and society has an understandable interest ... in law enforcement systems and how well they work." Virginia Dept. of State Police v. Washington Post, 386 F.3d 567, 574 (4th Cir. 2004) (citations and quotations omitted). In such instances the public interest is greater than that of an ordinary civil trial. See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 788 (3rd Cir. 1994) ("A factor which a court should consider in conducting the good cause balancing test is whether a party benefiting from the order of confidentiality is a public entity or official."). Section 1983 is intended to facilitate litigation by civil rights plaintiffs, for "[c]ivil rights plaintiffs with meritorious claims 'appear before the court cloaked in a mantle of public interest.'" Hensley v. Eckerhart, 461 U.S. 424, 444 n.2, 103 S.Ct. 1933, 1945 n.2 (1983) (Brennan, J., concurring in part and dissenting in part) (quoting H.R.Rep. No. 94-1558, 94th Cong., 2d Sess., 6 (1976)).

This Court also has its own particular interest in maintaining open proceedings for the sake of its independence and authority:

---

[3] See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 556, 100 S.Ct. 2814, 2816-2817 (1980) ("unbroken, uncontradicted history, supported by reasons as valid today as in centuries past, it must be concluded that a presumption of openness inheres in the very nature of a criminal trial under this Nation's system of justice").

6

"A result considered untoward may undermine public confidence, and where the trial has been concealed from public view an unexpected outcome can cause a reaction that the system at best has failed and at worst has been corrupted.  To work effectively, it is important that society's [judicial] process satisfy the appearance of justice, and the appearance of justice can best be provided by allowing people to observe it." Huminski v. Corsones, 396 F.3d 53, 82 (2nd Cir. 2005).

The substantial interests of Mr. Charles, the public and the Court, none of which are outweighed by the generalized interests and nondescript harms claimed by Defendants, would be impeded by the entry of the proposed order.

### A. Personnel Records, Complaints and Disciplinary Information Should Not Be Subject to A Protective Order

Without demonstrating the requisite need, Defendants seek to make personnel records, complaints and disciplinary information of law enforcement officials subject to the proposed protective order.[4] Such information is critical to Mr. Charles's claims -- all of which involve allegations of wrongdoing by law enforcement and other public officials -- and is consistently subject to open discovery in civil rights cases. See, e.g., Scouler v. Craig, 116 F.R.D. 494, 496 (D.N.J. 1987) (recognizing that "weightiest factor is the importance of the information to the plaintiff's case" and ordering discovery of police officer's personnel files); Skibo v. City of New York, 109 F.R.D. 58, 61 (E.D.N.Y. 1985) (ordering disclosure of files of civilian complaint review board concerning

---

[4] Defendants argue that "personnel records, complaints and disciplinary information should only be produced under a protective order" because "government officials have reasonable expectation of privacy." It is unclear why defendants quote a doctrine of 4th Amendment law, See California v. Ciraolo, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811 (1986) (citing Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 516 (1967)) ("The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'").  It is equally unclear why they cite Wakefield Teachers Association, 431 Mass. 792, 796-799, 731 N.E.2d 63 (2000), for the proposition that "disciplinary reports" are "absolutely exempt from disclosure pursuant to Mass.Gen.L. c. 4, §7."  That case involved the question of disclosure of a public school teacher's disciplinary records under the ***public records law***, G.L. c. 66, § 10, not discovery in a civil action.  It does not serve as precedent here.  As stated above, see supra at § I., Wakefield Teachers Association addresses a state statute, and reliance on it would vitiate the federal interests at stake here.

7

complaints against officers); Welsh v. City and County of San Francisco, 887 F.Supp. 1293, 1302 (N.D.Cal. 1995) (denying motion for protective order, in sex discrimination action against police and police chief, to prevent disclosure to public of transcripts of witnesses interviewed during police commission's investigation of charges); Garrett v. City of San Francisco, 818 F.2d 1515, 1519 n.6 (9th Cir.1987) (personnel files are discoverable in federal questions cases despite claims of privilege).

As discussed above, Mr. Charles maintains an interest against the entry of a protective order so that these proceeding may progress openly and in manner conducive to his ability to bring to light evidence of Defendants' wrongdoing. See e.g., Huminski v. Corsones, 396 F.3d at 81; Ceramic Corp. of America v. Inka Maritime Corp. Inc., 163 F.R.D. 584, 589 (C.D. Cal. 1995) ("Public disclosure, in the end, is not only natural and generally unavoidable but also necessary and healthy to a process so dependant on accuracy and truth."). Indeed, the individuals that deprived Charles of an open and thus fair criminal trial are the very ones for whom Defendants now seek confidentiality. Charles's wrongful arrest, trial and conviction were public affairs. Defendants have articulated no reason whatsoever why the actions of the law enforcement officials who are alleged to have perpetrated those events should be kept private. If anything, cloaking their acts in secrecy will only threaten the full vindication of Charles and the Court's ability to redress the wrongs done him.

For all of the forgoing reasons, the personnel records, complaints and disciplinary information of city employees -- in particular those whose actions form the basis of Charles's civil rights claims -- should not be subject to the proposed protective order.[5]

---

[5] Insofar as Defendants argue that certain documents should be produced subject to a protective order by virtue of that fact that they might affect the privacy of non-litigant third parties, the motion should also be

8

**B.    Charles Does Not Oppose Keeping The Identities And Current Addresses Of The Claimants Confidential, And Will Follow Local Rule 5.3 And The Requirements Of The E-Government Act Of 2002**

Mr. Charles, who obviously is already aware of the claimants' names, stipulates to Defendants' motion insofar as it seeks to keep the last names and current addresses of the claimants confidential. The appellate decision affirming Mr. Charles conviction refers to the Claimants by their first names. Because this information is publicly available through the Supreme Judicial Court's published opinion, Mr. Charles should be permitted to refer to the Claimants individually as "Karen," "Shannon," and "Valerie," however he will redact the Claimants' last names in any documents submitted to the court and will otherwise maintain the confidentiality of that information.[6]

Furthermore, any filings made with this Court by Mr. Charles shall fully respect the mandate of Local Rule 5.3 and the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002). That rule requires the redaction of social security numbers,

---

denied. The City of Boston is a defendant in this action. Amongst the claims asserted against it is a Monell claim. Such a claim is intended to test the practices of municipalities generally, as opposed to the individuals acting under the color of state law. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120-121, 112 S.Ct. 1061, 1066 (1992) ("In Monell, the Court held that Congress intended municipalities and other local government entities to be included among those persons to whom § 1983 applies."). This will necessarily implicate and involve individuals not named in the Complaint. Also, information provided by certain non-public persons led to Mr. Charles conviction. "In recent years, the courts have routinely ordered the production of personnel files of third parties in employment discrimination and police brutality cases." Ceramic Corp. of America v. Inka Maritime Corp. Inc., 163 F.R.D. 584, 589 (C.D.Cal. 1995). See also E.E.O.C. v. University of New Mexico, 504 F.2d 1296 (10th Cir. 1974) (personnel files for faculty members were deemed discoverable in a failure to promote case); Weahkee v. Norton, 621 F.2d 1080 (10th Cir. 1980) (non-party employees' files were discoverable in a discrimination case).

Defendants have neither identified with particularity who these third parties are nor addressed their role in the events leading to this litigation. These unidentified individuals do not enjoy any increased right to confidentiality than that of the named parties or the Claimants, simply by virtue of their status as non-parties. To the extent Defendants claim that information concerning third parties is subject to a protective order, or to increased confidentiality, it should be denied. Mr. Charles submits that the same procedures delineated in Local Rule 5.3 would also be applicable to information concerning third parties.

[6] See Commonwealth v. Charles, 397 Mass. 1, 3, 489 N.E.2d 679, 681 (1986) ("Three women, 'Karen,' 'Shannon,' and 'Valerie,' were roommates in Brighton."); see also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37, 104 S.Ct. 2199, 2209-2210 (1984) ("Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources . . . .").

9

the names of minor children, dates of birth, and financial account numbers from documents filed with the court.  See U.S. Dist. Ct. Rules D. Mass., Rule 5.3.  However, it does not address such information in terms of discoverability and otherwise leaves the presumption of discoverability of relevant information in tact.

    **C.**    **The Statements and Reports of the Claimants And Third Parties Should Not Be Subject To A Protective Order**

This litigation will, out of necessity, inquire into the events of the underlying crime and the investigation that led to Mr. Charles's wrongful conviction.  The statements and reports of the claimants and by other third parties to police and law enforcement officials, which Defendants maintain should remain confidential, are perhaps the most important categories of discovery over which Mr. Charles has an interest in maintaining unfettered usage.  As stated above, Mr. Charles will adhere to the strictures of Local Rule 5.3.  And, he will only publicly filed documents in which the last names of the Claimants and current addresses are redacted.  However, the other information in any statements or reports is critical not just for the facts that they may contain, but it likely will reveal the investigative techniques of law enforcement officials and possibly lead to the identification or emergence of additional witnesses or evidence.  See, e.g., Huminski v. Corsones, 396 F. 3d at 81.  Mr. Charles's litigation interest in maintaining these materials free from the encumbrance of a protective order is therefore high.

The statements in question constituted the biggest piece of the evidence against Mr. Charles at his criminal trial.  Again, these statements go to the heart of Mr. Charles's case. Additionally, those statements occurred some 25 years ago and Defendants have at no point represented that they are part of any ongoing investigation.  Consequently, the

privacy interests in them do not outweigh Mr. Charles's substantial need in accessing and utilizing them in a fashion unhindered by a protective order.

### IV. If The Court Determines That Certain Documents Contain Confidential Information, It Should Order In Camera Review

The proposed order contains a complicated set of procedures that would be burdensome to Charles and the Court. To begin with, Defendants' definition of what constitutes "confidential information" is subjective, open-ended, and hence could lead to over-designation as "confidential" of non-sensitive materials. It thus sets the stage for a series of discovery disputes once documents are classified as "confidential." See Defs. Proposed Order ¶ 1; San Jose Mercury News, Inc. v. U.S. Dist. Court--Northern Dist. (San Jose), 187 F.3d 1096, 1103 (9th Cir. 1999) ("Such blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document.").

Additionally, the procedures that dictate how the materials could be used would impose a burden on the free-exchange and use of discovery materials. For example, the proposed order requires that after an item is designated "confidential," and hence subject to the procedures of the order, a minimum ten-day period must elapse before the controversy can be brought in front of the Court. See Defs. Proposed Order ¶ 3. Similarly, parties are given thirty days to designate portions of any deposition transcript as confidential. Only after this thirty-day period has elapsed can the transcripts be used in this litigation, and the confidential portions must be filed separately from the non-confidential portions of the transcripts under seal. See Defs. Proposed Order ¶5(b). Furthermore, the proposed order limits the use of confidential items during deposition, as the items can only be utilized at deposition "if deponent already knows the confidential

11

information contained therein." See Defs. Proposed Order ¶ 5(a). The deponent must also be required to sign a confidentiality agreement after reading the four-page single-spaced order. See Defs. Proposed Order ¶ 5(a).

The proposed order requires a party filing a document under seal and who wishes that the contents remain private must file "a memorandum addressing the applicable standards for denying public access." See Defs. Proposed Order ¶ 7. Thus, the proposed order essentially would cause the party to author a brief (and the opposite party an opposition brief) each time it claims that materials should not be viewed by the public. This one-piece-at-a-time approach would unnecessarily drive up the amount of paper filed in this case and consume the parties' time and resources.

Mr. Charles therefore requests that the Court, in the event that it finds that Defendants have made the necessary showing of good cause[7], determine the appropriateness of confidentiality after *in camera* review, rather than adopt the Defendants' piecemeal and cumbersome approach embodied in the proposed protective order.

## CONCLUSION

WHEREFORE, Mr. Charles prays that this Court deny Defendants' motion, and order that Defendants provide the requested discovery without entry of protective order, except insofar as the motion requests that reference to the identities and current addresses of the claimants.

---

[7] See, e.g., King v. Conde, 121 F.R.D. 180, 198 (E.D.N.Y. 1988) ("A showing of need must be made by the police before placing the burden of an *in camera* inspection on the [court]"); Crawford v. Dominic, 469 F.Supp. 260 (E.D.Pa. 1979) (supervisory evaluations of, and disciplinary proceedings and citizens' complaints against, defendant officers ordered turned over for *in camera* review).

Dated: January 31, 2006　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　/s/ James W. Bell
　　　　　　　　　　　　　　　　　　　　　　　Kevin J. O'Connor (BBO# 555250)
　　　　　　　　　　　　　　　　　　　　　　　Mayeti Gametchu (BBO# 647787)
　　　　　　　　　　　　　　　　　　　　　　　John Pagliaro (BBO# 634483)
　　　　　　　　　　　　　　　　　　　　　　　James W. Bell (BBO# 658123)
　　　　　　　　　　　　　　　　　　　　　　　PARAGON LAW GROUP, LLP
　　　　　　　　　　　　　　　　　　　　　　　184 High Street
　　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02110
　　　　　　　　　　　　　　　　　　　　　　　(617) 399-7950

　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　　　ULYSSES RODRIGUEZ
　　　　　　　　　　　　　　　　　　　　　　　CHARLES

**CERTIFICATE OF SERVICE**

　　I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that on January 31, 2006 paper copies will be sent to those indicated as not registered participants.

　　　　　　　　　　　　　　　　　　　　　　　/s/ James W. Bell
　　　　　　　　　　　　　　　　　　　　　　　James W. Bell (BBO# 658123)

0038-002-102489