```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
_____
ULYSSES RODRIGUEZ CHARLES,         )
     Plaintiff,                    )
                                   )
     v.                            )    C.A. No. 04-10986-NG
                                   )
CITY OF BOSTON,                    )
     Defendants.                   )
_____)
GERTNER, D.J.:
```

### ORDER RE: DEFENDANTS' MOTION FOR PROTECTIVE ORDER
February 17, 2006

In light of the arguments cited below, I hereby **GRANT** the defendant's motion for a protective order in part and **DENY** in part (document # 46). I grant the motion with respect to the identities and confidential medical information of the rape victims. I deny the motion provisionally with respect to the statements of the victims and "other personal and private information of the victims." For these categories, defendant must show why the redaction of the victims' names is insufficient to protect their privacy interests. I deny defendants' motion with respect to the remaining categories, numbered five through seven. **Within thirty days of the date of this Order, Defendants may re-file for a new protective order** covering these categories, but must include specific mention of the documents they wish to include and a "particular factual demonstration" of the kind and degree of harm that would be caused by allowing the documents to be made public. Absent such a showing, this Court will be unable to perform the necessary balancing test and, as such, unable to

overcome the presumption that such documents be made publicly available.

Defendants filed a motion for a protective order pursuant to Fed. R. Civ. P. 26(c), seeking to keep the following categories of information from becoming public: "1) The identities of the rape victims; 2) Statements of the victims; 3) Confidential medical information regarding the victims; 4) Other personal and private information of the victims; 5) Confidential, personal and private information of third parties and suspects; 6) Information and documents contained in personnel files, complaints and disciplinary information; and 7) Other personal and private information - the public disclosure of which would constitute an unwarranted invasion of personal privacy."  Mot. at 1.

Defendants cite a number of state law cases in their brief. However, "state law does not govern discoverability and confidentiality in federal civil rights actions. . . . Questions of privilege in federal civil rights cases are governed by federal law." King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (Weinstein, J.).  Although "[s]tate rules may illustrate important privacy interests, " and implicate questions of comity between state and federal sovereignties, Id. (quoting Lora v. Bd. of Educ., 74 F.R.D. 565, 576 (E.D.N.Y. 1977)), it is but one aspect of the requisite federal balancing test.

This priority given to federal interests is especially important in the context of federal civil rights cases:

> It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987). See also Aldridge v. Carr, 400 U.S. 1000 (1971) ("special danger" in permitting state governments to shield their own agents with a state-defined privilege); Carr v. Monroe Manufacturing Co., 431 F.2d 384, 389 (5th Cir. 1970), Garner v. Wolfinbarger, 430 F.2d 1093, 1100 (5th Cir. 1970) ("In federal question cases . . . federal substantive rights may be compromised if a stringent state rule of evidence is applied."). Indeed, as plaintiff notes that there is a cruel irony to the fact that plaintiff's alleged injury – his wrongful conviction and subsequent imprisonment for 19 years – stems from the state's withholding of exculpatory information, yet the state now seeks to shield potential evidence of its wrongdoing from the public.

Federal law places considerable emphasis on the importance of public access to discovery materials. As such, "[p]rotective

orders should not be granted without good reason.  They restrict public access to discovery materials and depart from the general proposition [that] pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings."  King, 121 F.R.D. at 190.  See also Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 790 (1st Cir. 1988) (explaining "if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection") (quoting In re "Agent Orange" Product Liability Litigation, 821 F.2d 139 145 (2d Cir. 1987).

To the extent that the public has an interest in the average legal proceeding, its interest in civil rights cases like plaintiff's is much more profound.  When the state has been charged with neglecting the basic constitutional obligations it owes to its citizens, the stakes are elevated for the entire body politic and public scrutiny is essential.  In fact, the presence of such scrutiny is likely to increase accountability by the state and may improve the quality and reliability of the court proceedings themselves.  See, e.g., Huminski v. Corsones, 396 F.3d 53, 81-82 (2d Cir. 2005).

"Good cause" to receive a protective order requires "[a] finding . . . based on a particular factual demonstration of potential harm, not on conclusory statements."  Anderson v.

4

Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986). Unless the party seeking the order makes a showing through competent declarations of how public disclosure of the materials would cause harm and how much harm would be caused, it is not possible for the reviewing court to conduct a meaningful balancing analysis. See King, 121 F.R.D. at 187.

In the present case, defendants' request sweeps broadly to screen from public view information regarding not only the victims, but also of third parties, the plaintiff, deceased police officers and the defendants. Its scope is breathtaking. In addition to the identities of the rape victims, their statements, and their confidential medical information, the protective order would cover: "other" personal and private information of the victim, "confidential, personal and private information" of unnamed third parties and even suspects, any "information and documents contained in personnel files, complaints and other disciplinary information," as well as "other personal and private information – the public disclosure of which would constitute an unwarranted invasion of personal privacy." Mot. at 1.

In effect, through little more than the stroke of a pen, the parties in this case – designating this or that confidential – could keep large swaths of information from public view. These private parties would thereby replace this Court as the arbiter

of confidentiality in a litigation that is, at heart, a fundamentally public affair.

In support, defendants have provided only the most general and vague showing. In fact, the proposed protective order suffers from two specificity-related shortcomings. The categories of information that the defendants want to protect are broad and ill-defined, and the justifications for why these categories ought to be protected are vague.

They cite relevant state law with respect to protecting the identity and confidential information of the rape victims, namely Mass. Gen. Laws ch. 265 § 24C and ch. 41 § 97D, state protective policies which, to a degree, have their analog in federal statutes as well. See generally, 42 U.S.C. § 13981 (1995)(Violence Against Women Act). It is difficult to imagine what additional case-specific justification defendants could offer with respect to rape victims. The rationale for these laws is well-known and well-established.

With respect to employee records, however, while defendants cite to the federal common law under which employee records are privileged, they leave out the rest of the federal common law test: "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." Sanchez v. City of Santa Ana, 936

F.2d 1027, 1033 (9th Cir. 1990).  See also Jepsen v. Florida Bd. of Regents, 610 F.2d 1379, 1384-85 (5th Cir. 1980).  Here the Court has been provided with no assessment of the disadvantages defendants may suffer through disclosure.  Without such a showing, the Court is unwilling to deny the public access to information with which it has a substantial concern.

And on the remaining categories of documents, confidential, personal and private information" of unnamed third parties and even suspects, there is not even a colorable showing of justification.


**SO ORDERED.**

**Dated: February 17, 2006**          **s/ NANCY GERTNER U.S.D.J.**