## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
ULYSSES RODRIGUEZ CHARLES,               )
                                        )
              Plaintiff,                 )
                                        )  **C.A. No. 04-10986-NG**
v.                                       )
CITY OF BOSTON, STANLEY BOGDAN           )
JOHN MULLIGAN, WILLIAM KEOUGH            )
PAUL RUFO, KATHLEEN HANLEY               )
JOHNSON, and JOHN DOE and JANE DOE,      )
supervisors in the Boston Police Department, )
              Defendants.                )
_____)

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
### MOTION FOR AN ORDER COMPELLING THE
### DEPOSITION OF SHANNON S. AND HOLDING HER IN CONTEMPT

Ulysses Rodriguez Charles ("Charles") respectfully requests that the Court grant

Charles's motion to compel non-party witness Shannon S., one of the three sexual assault victims

of the crimes underlying this case, to appear for a deposition on March 19, 2008 (or on some

other date mutually agreed-to by counsel) due to her failure to obey two subpoenas (Ex. 1) duly

served upon her.  In addition, Charles respectfully requests that, in the event Shannon fails to

obey the Court's order, she be fined $500 per day until she appears for a deposition.  (The

[Proposed] Order is attached to Plaintiff's motion at Exhibit 1.)

### <u>INTRODUCTION</u>

Shannon's testimony is critically important because one of the central issues in this case

is the number of consensual sexual partners she had at the time of the assaults -- a question that

Shannon is best able to answer.  This issue is relevant because DNA testing on a robe worn by

Shannon during her assault and a bed sheet from Shannon's bed, where both Shannon and Karen

were raped, reveals the presence of semen from more than one male. Although Charles has been excluded as the source of the semen by DNA testing, the three victims have previously filed affidavits in the now-dismissed criminal case suggesting that the semen came from Shannon's sexual partners, not the rapist. (Notably, hospital records of pap smears and other tests conducted on Shannon and Karen the evening of the rapes, which were not introduced at the underlying criminal trial, demonstrate that the rapist ejaculated during their assaults. Unfortunately, the biological evidence from these tests has been destroyed.)

The initial round of DNA testing indicated that two males had deposited sperm on the robe and bed sheet, but recent, more sophisticated testing indicates the presence of three sperm donors.[1] When Karen and Valerie (who was assaulted orally) believed that there were two sperm depositors, they submitted virtually identical affidavits drafted by Commonwealth attorneys indicating that Shannon had two sexual partners when the assaults occurred, one of whom submitted to DNA testing and was excluded as a possible source. As additional DNA testing has revealed the presence of three men on the bed sheet and robe, the Commonwealth (as well as Karen and Valerie) has taken great pains to portray Shannon as a highly promiscuous woman. Doing exactly what it purports to abhor, the Commonwealth ironically is re-victimizing the victim in a transparent attempt to weaken the DNA evidence. At the October 2007 trial of a related action against the Commonwealth in which Shannon is <u>not</u> participating, the

---

[1] Because there is not conclusive proof that the one DNA profile detected on the sheet is the same as one of the three profiles detected on the robe, it is possible that there are four total sperm depositors. <u>See</u> Ex. 12.

Commonwealth put Karen and Valerie on the witness stand, eliciting testimony that they now remember that Shannon had a continuous parade of men visiting her bedroom.

The thin thread upon which defendants base their defense against Charles's claim of innocence is the "possibility" that none of the semen on the robe and bed sheet came from the rapist. In light of the fact that we know, from Karen and Shannon's hospital records, that the rapist ejaculated while assaulting them on the bed sheet and while Shannon was wearing her robe, there is little question that the rapist is the source of one of the semen stains found on the robe and sheet. Nonetheless, Shannon's testimony concerning the number of sex partners that she had could, in and of itself, provide conclusive and unassailable proof that the rapist's semen is among the three semen profiles detected on the robe and/or bed sheet. For instance, if Shannon had three consensual sex partners at or around the time of the assaults, as opposed to the legions that Karen and Valerie allege, it **must** be the case that the rapist accounts for one of the three sources of semen on the robe and bed sheet. One of Shannon's then boyfriends was previously DNA tested and excluded as a source of the semen, leaving the remaining two sex partners *and* the rapist to account for the three sources of semen samples detected by the DNA testing lab.

Because of the importance of Shannon's testimony on the issue of her sex partners and the likelihood that she is totally unaware of what Karen and Valerie have said about her in testifying inconsistently with her on this point, Charles respectfully requests that the Court issue an order compelling Shannon to appear for a deposition. In the event Shannon fails to do so, Charles requests that the Court fine her $500 per day until she appears for a deposition.

## FACTS RELEVANT TO THIS MOTION

In February 1984, Ulysses Rodriguez Charles ("Charles") was wrongfully convicted in Massachusetts state court and sentenced to 80 years in prison for the sexual assault of three women. His conviction was based solely on the cross-racial eyewitness identification of him by Karen, who admits that her eye-glasses, which she had worn since the first grade, fell off during the 2½ hour assaults. See Ex. 2. (Although Shannon claimed to have identified Charles in a photo array, there are pleadings filed by the Commonwealth stating that she did not make an identification of him. See Ex. 3.) There was no physical evidence whatsoever linking Charles to the crimes and, thus, none was offered at his criminal trial.

Shannon, Valerie, and Karen were living together as roommates at the time of the assaults. See Ex. 4, at ¶1. Karen was assaulted twice, vaginally and anally, and Shannon was assaulted vaginally once. Id., at ¶ 2-3; Ex. 5 12:15-16. Shannon was wearing her robe during her assault. See Ex. 5 (Crim. Tr. Shannon Trans. at 12:1-4). Both Karen and Shannon were assaulted on Shannon's bed, which was covered with a bed sheet. See Ex. 5 (Crim Tr. Shannon Trans. at 12:12-24; 24:10-12); Ex. 4 (Crim. Tr. Karen Trans. at 26:9-27:9). The second assault Karen suffered occurred while she was bent over the rear of the bed, but Karen placed herself on the bed when the assault concluded. See Ex. 4 (Crim. Tr. Karen Trans. at 123:9-25).

In 1999 and 2001 -- approximately 15-17 years into Charles's prison term -- DNA testing of the robe and the bed sheet on which the rapes occurred revealed the presence of sperm cells on multiple fragments. Charles was excluded as a donor of any DNA found on the semen stains. See Ex. 6. At the time, because the DNA testing was not yet sufficiently sophisticated to determine the exact number of sperm depositors, it was thought that there were at least two sperm depositors from the sperm found on the bed sheet and robe (and probably only two). See

Ex. 7 at 13.  In any event, because Charles did not match the DNA profiles of any of the individuals detected on the robe and sheet, he was granted a new trial and promptly released from prison after the prosecutor's swift decision not to re-try him.  <u>See</u> Exs. 6, 7.

Before Mr. Charles was released, but after the 1999/2001 DNA testing results became known, all three of the victims filed affidavits in an attempt to "explain" the sperm found on Shannon's robe and bed sheet.  Shannon's affidavit states that during the period of time surrounding the assaults, she engaged in consensual relations, including sexual intercourse, with **two** men who were not Charles.  <u>See</u> Ex. 8, at ¶2.  Both Karen and Valerie's April 2000 affidavits indicate that, in the three months before the rape, Shannon had consensual sexual relations with at least two different men.  <u>See</u> Ex. 9, at ¶ 3; Ex. 10, ¶ 2.  At no point did Shannon, Karen, or Valerie ever identify, or claim that there existed, more than two or three sex partners.

Due to the possibility that the sources of the sperm detected by the DNA testing lab were the two sex partners identified by Shannon, and not the rapist, the Court ordered the Commonwealth to locate and test the DNA of Shannon's two sex partners.  The Commonwealth located one of these individuals and tested his DNA.  <u>See</u> Ex. 11.  The DNA report concludes that this man is excluded from being the possible source of the DNA present on the bed sheet or the robe.  <u>Id.</u>

In connection with a related state action commenced by Charles against the Commonwealth of Massachusetts, additional DNA tests were conduct in September 2007 in order to identify the number of men who had deposited sperm on the bed sheet and robe.  See Ex. 12.[2]  These tests indicated that there was semen from three different males on the robe and DNA from one male on the bed sheet.  Id.  The report concludes that it is possible that source of the sperm on the sheet is the same as the source of one of the three DNA samples on the robe.  Id.  Consequently, the DNA samples from both the sheet and the robe are from three, possibly four, different individuals.  Id.

In October 2007, the state action was tried.[3]  Karen and Valerie, but not Shannon, appeared and testified.  Contrary to their earlier affidavits -- submitted at a time when they believed that there were two sperm depositors on the sheet and robe -- Karen and Valerie's testimony at the 2007 trial was laced with innuendos and outright allegations that Shannon was highly promiscuous.  See Ex. 13 (2007 Tr. Valerie Trans. at 7-10); Ex. 14 (2007 Tr. Karen Trans. at 46-47).  Both women testified that Shannon regularly entertained men in her bedroom.  Id.  Karen testified that she "assum[ed]" "[Shannon] was sleeping with them," see Ex. 14 at 47:1-2, and Valerie claimed to have observed males spending the night at the apartment with Shannon "*pretty much every weekend*."  See Ex. 13 at 8:6-1 (emphasis added).  After explaining that

---

[2]  The related action was brought pursuant to a state statute providing compensation of no more than $500,000 to individuals convicted of crimes who can prove "by clear and convincing evidence" that they are innocent of the crimes for which they were convicted.

[3]  The trial ended in a mistrial due to a hung jury.  There is a status conference scheduled in late February 2008.

Shannon "was very out-going; so, you know, ***she liked boys***," <u>see</u> Ex. 13 at 7:20-24; 8:1-5

(emphasis added), Valerie estimated that, in the three or four weeks preceding the rapes,

Shannon was having sexual relations with "***at least four***" men.  <u>See</u> Ex. 13 (2007 Tr. Valerie

Trans. at 8:22-24; 9:1-2) (emphasis added).  Notably, Valerie doubled the number she gave in

her prior affidavit, in which she purported to be estimating the number of Shannon's sex partners

over a period of <u>three month<i>s</i></u>, not weeks.

Shannon, of course, was not present to respond to these allegations and presumably has

no knowledge of them.

## <u>ARGUMENT</u>

Shannon's failure to obey two subpoenas, served in hand on September 25, 2006 and May

8, 2007, suggests that she will continue in this conduct unless she is coerced into compliance.  If

Shannon does not comply with the proposed order compelling her deposition, it will be the third

time she has ignored a directive of this Court.  Given her past victimization, Shannon's desire to

avoid these proceedings is understandable.  And Charles has, as a result, shown restraint and

patience over the past approximately 1½ years he has been attempting to depose her.  However,

Shannon's desire to retreat from this case must be balanced against Charles's interest in justice,

vindication, and redress of his almost two decades of wrongful incarceration.  Shannon willingly

participated in the deeply flawed trial that resulted in Charles's erroneous conviction, and she

should be compelled to participate in the legal action seeking to undo some of the damage caused

by his conviction.  Under these circumstances, the Court is entirely warranted in compelling

Shannon's deposition and, if she persists in refusing to comply, imposing sanctions to end her

contumacious conduct.

Rule 45(e) of the Federal Rules of Civil Procedure provides that "failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." F.R.C.P. 45(e). Shannon does not have an adequate excuse for ignoring the two deposition subpoenas. An adequate excuse exists, under Rule 45(e), where the person upon whom the subpoena is served files a timely motion to quash or modify the subpoena. Id. Shannon plainly ignored both subpoenas without filing any motions to quash or modify. Furthermore, Shannon is a proper non-party witness to be compelled to be deposed under Rule 45(c)(3)(A)(ii) because she resides within 100 miles of Boston, the location to which she was required to travel under the terms of the subpoenas. See Ex. 1.

"When a witness, litigant or attorney refuses to appear for a deposition or other necessary proceeding, the court must act in order to maintain not only its control over the proceedings, but also to effectuate a subsequent resolve of the entire matter." In re Subpoena of Barnicle, 800 F. Supp. 1021, 1023-24 (D.N.H. 1992). In addition, "civil contempt is imposed to coerce present or future compliance with an order of the court" and the goal of a civil contempt judgment is to "induce the purging of contemptuous conduct." Id. (citing In Re Kave, 760 F.2d 343 (1st Cir. 1985)). Finally, the sanctions for civil contempt may be entered in order to effectuate compliance with court orders, or to compensate parties bringing the contempt action for injuries resulting from the contempt, or for both reasons. Id. (citing General Signal Corp. v. Donallco, Inc., 787 F.2d. 1376 (9th Cir. 1986)).

As noted above, Shannon's testimony is critically important to give context to the DNA evidence in this case. The original DNA tests indicated that the bed sheet and robe together contained the sperm of two males. After these results became known but prior to Charles's release from prison, both Valerie and Karen filed affidavits in 2000 indicating that during the

three months before the rapes, Shannon had consensual relations with two different men. Neither woman ever alleged that Shannon had such relations with more than two men. Their attempt to account for the semen as having been from sources other than the rapist became even more transparent when -- after additional testing this past fall revealed the presence of three sperm donors -- Karen and Valerie "remembered" that Shannon had men in her bedroom "every weekend."

Charles's DNA exclusion and the knowledge that the rapist twice ejaculated while committing sexual assaults on the materials where the semen was detected are powerful pieces of evidence, regardless of the number of men with whom Shannon was sexually active. The bottom line is that none of the DNA samples match Charles, and the chances that the rapist's sperm is not on the robe and/or bed sheet after having twice ejaculated while assaulting Karen and Shannon on those materials is slim. However, Shannon's testimony alone could decisively end the "debate" over whether the rapist's sperm was on the bed sheet and robe and, thus, prove beyond any doubt that Charles's DNA exclusion means he is not the rapist.

In light of the fact that the sex conduct alleged to have occurred took place between Shannon and males behind the closed doors of her bedroom, Shannon is, of course, in the best position to speak to this issue. At the moment, it appears that Shannon has no idea that Valerie and Karen recently emerged to testify that she was highly promiscuous and was having sex with more than twice as many men as Shannon herself has previously attested to. Shannon's absence has left her vulnerable to slanderous allegations of promiscuity -- which we know are contrary to her own prior sworn statements -- and provided a means by which defendants can attempt to weaken the exonerative effect of the DNA test results. Charles, as well as Shannon, should be afforded the opportunity to confront these allegations and shed greater light on the truth.

## CONCLUSION

For the foregoing reasons, Charles respectfully requests that the Court issue an order compelling Shannon's deposition to occur on March 19, 2008 or some other date mutually convenient to Shannon and the parties.  In addition, Charles respectfully requests that the Court impose monetary sanctions upon Shannon, in the event that she does not attend her deposition, commencing on the date of her scheduled deposition and continuing until Shannon sits for a deposition.  (The Proposed Order is attached to Plaintiff's Motion at Exhibit 1).

DATED: February 20, 2008                  Respectfully submitted,
Boston, MA

                                          /s/  Mayeti Gametchu
                                          Kevin J. O'Connor (BBO# 555250)
                                          Mayeti Gametchu (BBO# 647787)
                                          WolfBlock, LLP
                                          One Boston Place, Floor 40
                                          Boston, MA 02108
                                          Tel. (617) 226-4000

                                          Attorneys for Plaintiff

                                          ULYSSES RODRIGUEZ CHARLES

## CERTIFICATE OF SERVICE

I, Mayeti Gametchu, hereby certify that, on February 20, 2008, this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                          /s/  Mayeti Gametchu

BOS:48264.1                       - 10 -